1 | **ERNSTER LAW OFFICES, P.C.**
**Marilyn J. Bacon, Esq., State Bar No. 146839**

2 | **John H. Ernster, Esq., State Bar No. 59338**
**Ryan K. Marden, Esq., State Bar No. 217709**

3 | 70 South Lake Avenue, Suite 750
Pasadena, California 91101

4 | Telephone: (626) 844-8800
Facsimile: (626) 844-8944

5 | Email:    Bacon@ernsterlaw.com

6 | Attorneys for Plaintiff, SOUTHERN CALIFORNIA REGIONAL RAIL AUTHORITY

7 | dba METROLINK (Government Entity - Exempt from Filing Fee Pursuant to Government Code §6103)

FILED

2008 OCT 21 PM 4:22

8 | **UNITED STATES DISTRICT COURT**

9 | **CENTRAL DISTRICT OF CALIFORNIA**

10 |

11 | SOUTHERN CALIFORNIA
REGIONAL RAIL AUTHORITY

12 | DBA METROLINK,

CASE NO. **CV08-06987 GW** (JCx)

13 | Plaintiff,

**SOUTHERN CALIFORNIA REGIONAL RAIL AUTHORITY DBA METROLINK'S COMPLAINT**

14 | v.

**FOR DECLARATORY RELIEF; AND**

15 | CONNEX RAILROAD, LLC,

**DEMAND FOR JURY TRIAL**

16 | Defendants.

17 |

18 | **COMES NOW PLAINTIFF SOUTHERN CALIFORNIA REGIONAL**

19 | **RAIL AUTHORITY DBA METROLINK** and alleges as follows:

20 | **PARTIES**

21 | 1.    Southern California Regional Rail Authority dba Metrolink

22 | (hereinafter "SCRRA") is, and at all times mentioned herein was, a joint powers

23 | authority organized under California *Government Code §6500 et. seq.* and

24 | California *Public Utilities Code §130255*, which operates a commuter rail service

25 | in Southern California.

26 | / / /

27 | / / /

28 | / / /

COPY

2.     Connex Railroad, LLC (hereinafter "Connex") is a Delaware limited liability company, with its principal place of business in Massachusetts, who was and is under contract with SCRRA to provide operator services at all times relevant herein.  A copy of the Contract ("the Contract" between SCRRA and Connex) is attached hereto as Exhibit "1."

3.     Plaintiff is informed and believes and thereon alleges that at all times herein mentioned, each of the Defendants herein are principals, agents, and/or employees of the other(s), acting at all time herein mentioned within the course and scope of their agency and employment and with the consent and permission of the other co-defendants.

## JURISDICTION

4.     This Court has jurisdiction over this action pursuant to *28 U.S.C. §1332* as Plaintiff is a California joint powers authority and Defendant Connex is a Delaware limited liability company, with its principal place of business in Massachusetts.

5.     The amount in controversy in this action exceeds $75,000.00.

## VENUE

6.     Venue is appropriate in this district as the contract which is the subject to this action was entered into in this District, Defendant Connex does business in this district and the events giving rise to this action occurred in this District.  The Contract provides for application of California law.

## GENERAL ALLEGATIONS

7.     On or about December 7, 2004 SCRRA and Connex entered into a contract whereby Connex agreed to provide operator services for SCRRA ("the Contract") for the operation of SCRRA's trains.

8.     The Contract contains provisions regarding defense and indemnification for liabilities arising out of the Contract.

9.     On September 12, 2008, an SCRRA train, operated by an employee of

1    Connex, collided with a Union Pacific train in Chatsworth, California.

2        10.    As a result of this September 12, 2008 collision, twenty-five (25)

3    people were killed and numerous other people suffered injury.

4        11.    SCRRA has tendered to Connex and Connex has tendered to SCRRA

5    the defense of claims made as a result of the September 12, 2008 collision.

6        12.    SCRRA and Connex disagree with respect to the application of the

7    Contract , and the defense and indemnity obligations of the parties under the

8    Contract, as related to the September 12, 2008 collision.

9        13.    Therefore, an actual controversy exists within the subject matter

10   jurisdiction of this Court.

## FIRST CLAIM FOR RELIEF

### (For Declaratory Relief against All Defendants)

13       14.    SCRRA realleges and incorporates herein by reference each and

14   every allegation contained in Paragraphs 1 through 13 of this Complaint.

15       15.    An actual controversy has arisen and now exists between SCRRA and

16   Connex.

17       16.    It would be fair, just and appropriate for this Court to determine the

18   rights and obligations of the parties to this matter, and declaratory relief is

19   necessary and appropriate at this time so that SCRRA may ascertain its rights and

20   duties and have ascertained defendant's contractual obligations.

21       17.    SCRRA therefore seeks a declaratory judgment establishing

22   defendant Connex's obligation under the Contract as it relates to the September

23   12, 2008 collision.

24       **WHEREFORE**, SCRRA prays for judgment against defendants as follows:

25       1.    For a declaration of the rights of SCRRA and the obligations of

26   Connex under the Contract with regard to the September 12, 2008 train collision;

27       2.    For costs of suit including attorneys' fees;

28

**SCRRA's COMPLAINT FOR DECLARATORY RELIEF AND DEMAND FOR JURY TRIAL**

3.      For such other and further relief as this court deems just and proper.

Dated: October 22, 2008                              **ERNSTER LAW OFFICES, P.C.**

By: _____
JOHN H. ERNSTER, ESQ.
Attorneys for Plaintiff
Southern California Regional Rail
Authority dba Metrolink

---

**SCRRA's COMPLAINT FOR DECLARATORY RELIEF AND DEMAND FOR JURY TRIAL**

1  ## DEMAND FOR JURY TRIAL, PURSUANT TO *Fiv. R.Civ. P.* RULE 38

2       Plaintiff hereby demands a jury trial.

3

4  Dated: October 22, 2008                    **ERNSTER LAW OFFICES, P.C.**

5

6                                    By: _____

7                                         JOHN H. ERNSTER, ESQ.
                                          Attorneys for Plaintiff
8                                         Southern California Regional Rail
                                          Authority dba Metrolink

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT "1"

Page 6

# Southern California Regional Rail Authority

**METROLINK.**

CONFORMED CONTRACT

CONTRACT NO. OP123-05

METROLINK OPERATOR SERVICES

BOOK 1 OF 2



**CONTRACT BETWEEN**

**SOUTHERN CALIFORNIA REGIONAL RAIL AUTHORITY**

**AND**

**CONNEX RAILROAD LLC**

**FOR METROLINK OPERATOR SERVICES**

**AWARDED: NOVEMBER 12, 2004**

## TABLE OF CONTENTS

RECITALS..................................................................................................................1

A.      DEFINITIONS ...............................................................................................2

B.      SCOPE OF SERVICES PROVIDED ............................................................6

   1.     Train Operations General Management .............................................6

   2.     Train Operations.................................................................................8

   3.     Materials Management ........................................................................9

   4.     Service Disruptions...........................................................................10

   5.     Special Trains...................................................................................10

   6.     Verification of Fares .........................................................................11

   7.     Standard of Performance ..................................................................12

   8.     Mobilization Planning........................................................................13

   9.     Relationship to Equipment Maintenance Function and Contractor....14

   10.    Hiring of Employees to Provide the Services....................................16

   11.    Additional Meetings ..........................................................................18

   12.    Reports..............................................................................................18

   13.    Safety ...............................................................................................19

   14.    Training of Employees ......................................................................20

   15.    Drug and Alcohol Testing..................................................................23

   16.    Labor Agreements.............................................................................23

   17.    Relationships with Other Carriers.....................................................25

   18.    Selection of Subcontractors ..............................................................25

   19.    Use of Equipment, Materials and Services .......................................26

   20.    Assistance in Distribution of Public Information ................................27

Page 9.

21.  Accounting Standards ................................................................................28

22.  Communications on Behalf of SCRRA ....................................................28

23.  Response to Request for Assurances ....................................................28

24.  Notice of Regulatory Violations..............................................................29

25.  Payment of Employee Incentives ...........................................................29

26.  Employee Discipline and Removal..........................................................29

C.  GENERAL CONDITIONS ...................................................................................33

1.  Period of Performance .............................................................................33

2.  Access to Equipment and Property ........................................................33

3.  Changes in Equipment Provided..............................................................34

4.  Fares, Timetables and Ticket Sales ........................................................35

5.  Operations and Management Supervision ..............................................35

6.  SCRRA's Right to Information ..................................................................36

7.  Planning for Modifications to the Services ............................................36

8.  Other Contracting Rights..........................................................................37

9.  Rights in Property .....................................................................................37

10.  Rights in Technical Data ..........................................................................38

11.  Public Information Responsibilities ........................................................39

12.  Advertising .................................................................................................39

13.  Labor Protection........................................................................................39

14.  Railroad Retirement ..................................................................................42

15.  Limitations on Covenants Not to Compete.............................................42

16.  Access to Service Property by Third Parties..........................................43

17.  Inspection and Audit .................................................................................44

18.  Emergencies...............................................................................................45

Page 10.

19.  Liability and Indemnification ................................................................46

20.  Insurance .............................................................................................49

21.  Claims Handling and Defense .............................................................52

22.  Dispute Resolution...............................................................................53

23.  Termination...........................................................................................55

24.  Use of Metrolink Logo..........................................................................59

25.  Use of SCRRA's Name by the Contractor..........................................59

26.  Governing Law .....................................................................................60

27.  Compliance with Rules and Regulations ...........................................60

28.  Compliance with Lobbying Policies.....................................................60

29.  Public Records Act ..............................................................................61

30.  Prohibited Interests.............................................................................62

31.  Whistleblower Requirements ..............................................................63

32.  Notification of Employment of SCRRA Board Members/Alternates and
     Employees............................................................................................63

33.  Severability ..........................................................................................63

34.  Waiver ..................................................................................................64

35.  Entire Contract ....................................................................................64

36.  Notices and Contact Information .........................................................64

37.  Transportation of Contractor Employees ...........................................66

38.  Transition Process ..............................................................................66

D.    COSTS, BUDGETING, AND COMPENSATION ................................70

1.   Costs ....................................................................................................70

2.   Annual Budget Process .......................................................................72

3.   Monitoring Adherence to the Approved Budget ..................................74

4.      **Budget Amendment for Unforeseen Events** ........................................... 75

5.      **Budget Amendment for Added Services** ................................................ 75

6.      **Budget Revisions for Cost Overruns** ................................................... 75

7.      **Budget Revisions Required Due to Excessive Cost Overruns** ............................ 76

8.      **Procedure for Changes in Services or Service Levels** ................................ 77

9.      **Cost Control** ....................................................................... 79

10.     **Adjustment of Direct Labor Costs** .................................................. 81

11.     **Liquidated Damages** ................................................................ 82

12.     **Payment** ........................................................................... 85

13.     **Letter of Credit** .................................................................. 90

**Appendix 1** - Service Property ...............................................................................1-1

**Appendix 2** - General Code of Operating Rules ..............................................2-1

**Appendix 3** - Timetable and Special Instructions for Metrolink Operating Territories..3-1

**Appendix 4**   Not Used

**Appendix 5** - SCRRA's Supplemental Instructions.........................................5-1

**Appendix 6** - Commuter Rail Operator -Train Operation Duties and Responsibilities .6-1

**Appendix 7** - Equipment Cycles ..................................................................7-1

**Appendix 8** - SMP Forms .............................................................................8-1

**Appendix 9** - Commuter Rail Operating Employee Training Requirements.................9-1

**Appendix 10** - Required Reports...................................................................10-1

**Appendix 11** - SCRRA's System Safety Plan ...............................................11-1

**Appendix 12** - SCRRA's Drug and Alcohol Testing Program & Policy...........12-1

**Appendix 13** - Not Used

**Appendix 14** - Not Used

**Appendix 15** - Not Used

**Appendix 16** - Direct Costs Billable to SCRRA ..........................................16-1

**Appendix 17** - General and Administrative and Overhead Costs ..................17-1

**Appendix 18** - Not Used

**Appendix 19** -Track Charts ..........................................................................19-1

**Appendix 20** -Not Used

**Appendix 21** -Not Used

**Appendix 22** -Connex Authority Delegation Letter.......................................22-1

**CONTRACT BETWEEN**
**SOUTHERN CALIFORNIA REGIONAL RAIL AUTHORITY**
**AND**
**CONTRACTOR (TBD)**
**FOR METROLINK OPERATOR SERVICES**
**AWARDED: November 12, 2004**

This Contract, dated December 6, 2004, is entered into by and between the Southern California Regional Rail Authority ("SCRRA") and Connex Railroad LLC ("Contractor").

## RECITALS

WHEREAS, SCRRA is a joint powers authority organized under §6500 *et seq.* of the California Government Code and §130255 of the California Public Utilities Code, with power to contract for the Services described in this Contract,

WHEREAS, SCRRA desires to hire a Contractor to perform the Operation of Commuter Services,

WHEREAS, Contractor warrants and represents that it has the necessary professional capabilities, qualifications, licenses, skilled personnel, experience, expertise and financial resources, and that it will provide the necessary tools and materials, not provided by SCRRA, to perform the Services in an efficient, professional and timely manner in accordance with the terms and conditions of this Contract,

NOW, THEREFORE, for the consideration hereinafter stated, the parties agree to the following terms and conditions.

## A.  DEFINITIONS

**Approved Budget** means the budget agreed upon by the parties pursuant to the process described in Section D.2. of this Contract, including any amendments to such budget.

**Asset** means an item with a unit cost of Five Thousand Dollars ($5,000) or more and a useful life of more than one (1) year.

**CEO** means the Chief Executive Officer of the SCRRA.

**Contractor** means the entity responsible for operation of Metrolink Commuter Rail Trains.

**Controllable Item** means an item of any value with a manufacturer's serial number marked with an SCRRA asset number in SCRRA's property management system which allows the item to be tracked, assigned and controlled, and includes (but is not limited to) computer hardware or software, office equipment and communications equipment.

**Cost Proposal** means the Second Best and Final Offer Cost Proposal submitted by the Contractor to SCRRA in response to Request for Proposal No. OP123-04 and dated October 26, 2004.

**Covered Employee** means an employee of the Contractor who is covered by or subject to any term or terms of a collectively bargained agreement between the Contractor and any group of its employees or that group's duly designated representative.

**CPUC** means the California Public Utilities Commission.

**Days** mean calendar days, unless specifically stated otherwise.

**Direct Cost(s)** shall have the meaning stated in Section D.1.a. of this Contract.

**Exempt Employee** means an employee of Contractor who is not in any way covered by or subject to the terms of a collectively bargained agreement between Contractor and any group of its employees or that group's duly designated representative.

**Fiscal Year** is the fiscal year used by SCRRA, which is July 1 through June 30.

**FRA** means the Federal Railroad Administration.

**General and Administrative (G&A) and Overhead** shall have the meaning stated in Section D.1.c. .

**Hours of Service Employee** means employees who meet the definition set forth in 49 CFR §228.5(c).

**Markup** means the two and three-quarters percent (2.75%) added to the cost of parts, materials, subcontracts, and non-labor costs billed for provision of the Services.

**Member Agencies** means Los Angeles County Metropolitan Transportation Authority (LACMTA); Orange County Transportation Authority (OCTA); Riverside County Transportation Commission (RCTC); San Bernardino Associated Governments (SANBAG); and Ventura County Transportation Commission (VCTC).

**MF** means Mechanical Facilities, including all SCRRA-designated mechanical, maintenance, and layover facilities.

**MOC** means the Metrolink Operations Center located in Pomona, California.

**Modified Services** means any additional Services or other changes to existing Services, of the kind currently provided, on existing or new routes.

**MOE Contractor** means the person, corporation or other entity that contracts with SCRRA to provide services related to maintenance of the rolling stock used in the SCRRA Commuter Railroad Operations.

**MOW Contractor** means the person, corporation or other entity that contracts with SCRRA to provide services related to the maintenance of rail, track and structures.

**Notice to Proceed** means the written authorization from SCRRA to Contractor specifying the date on which the Contractor can begin mobilization activities.

**Operating Plan** shall mean the detailed description of the operation of the Services in a Fiscal Year, and shall reflect specific routes on which the Contractor is to provide Services, employee counts and job assignments, and other related services, all as agreed upon by the parties, prior

to the start of each Fiscal Year, or as amended by agreement of the parties during the course of the Fiscal Year.

**Operator** when used in this Contract or the Appendices to it shall mean the Contractor.

**Profit** shall have the meaning stated in D.1.d.

**Qualified** means that a person has satisfied the training requirements for a position and possesses the background, skills and experience necessary to fulfill the duties of a job included in the provision of services.

**SCRRA** means the Southern California Regional Rail Authority, a joint powers authority created pursuant to Cal. Public Utilities Code § 130255 and Cal. Govt. Code §6500 et seq. and pursuant to an agreement among the Member Agencies.

**SCRRA Commuter Railroad Operations** means the railroad passenger services to be provided under the auspices of SCRRA, and all related or ancillary functions that are part of the provision of those services.

**Service(s)** means those train operations and related functions that are to be performed by the Contractor for SCRRA pursuant to this Contract.

**Service Plan** means the detailed description of the Services SCRRA expects the Contractor to perform in the following Fiscal Year as described in Section D.2.a.

**Service Property** means tracks, land, structures and other facilities (including stations) that are located on or adjacent to the rail lines and at the yards listed on Appendix 1, that are to be used by the Contractor in provision of the Services under this Contract. The "Service Property" does not include any structures, land or other facilities owned or controlled by SCRRA and located on or adjacent to the property listed in Appendix 1, which the Contractor does not require to provide the Services. SCRRA may supplement the list of rail lines and yard facilities in Appendix 1 to be included in the Service Property by including a description of any such additional rail lines and yards in the Operating Plan.

**SMP** means the Standard Maintenance Procedures form.

**Start Date** means July 1, 2005, the date upon which the Contractor completes the Mobilization Period and is responsible for the provision of all Services required under this contract.

**Subcontractor** means a party or parties who takes from the Contractor a specific part of the Services undertaken by the Contractor, pursuant to an agreement with the Contractor, and who, by the terms of that agreement agrees to comply in all respects with the terms of this Contract.

**Supplemental Instructions** means the SCRRA-provided rules and instructions for Train and Engine crews.

**Supplier** means a person or entity that provides equipment, tools, consumables or other goods to the Contractor, which are to be used in the provision of the Services

**System Safety Program Plan (SSPP)** means SCRRA's established plan outlining the safety practices that SCCRA has developed for operating a safe and efficient commuter rail service.

**Third Party Contractor** means contractors who provide, under separate contracts to SCRRA, services other than the Services specified under this Contract.  In addition, the Maintenance of Equipment Contractor, the maintenance of way services contractor and the communications and signal maintenance service contractor are not considered Third Party Contractors under this Contract.

**Third Party Railroad** means the Burlington Northern and Santa Fe Railway Company (BNSF), National Railroad Passenger Corporation (Amtrak), and Union Pacific Railroad Company (UP), or their successors operating trains on the SCRRA Service Property.

**Train and Engine (T&E) Crews** means conductors and locomotive engineers.

**Work Stoppage** means an occasion when employees do not report for work as a result of a dispute under the terms and conditions of a collectively bargained agreement, or about the formation of such an agreement, and either the employer has, or the employees have, elected to exercise any self-help rights that may be available to them under the applicable law.

**B.**   **SCOPE OF SERVICES PROVIDED**

**1.**   **Train Operations General Management**

a.   General Management

(1)   The Contractor agrees that it will provide the Services on the terms and conditions described in this Contract. The Contractor shall make available to SCRRA a staff of Qualified management personnel who shall manage the provision of the Services using good business practices in a manner that is consistent with both parties' objective of providing the highest quality service to the public, and consistent with the policies of and in the best interests of the SCRRA Commuter Railroad Operations and the Contractor.

(2)   The Contractor's management assigned to the Services shall have experience and knowledge in the area of railroad passenger operations and shall have authority to make decisions concerning the daily operations and management of the Services consistent with this Contract. The Contractor shall administer and manage all functions involved in providing the Services as set forth and described more fully in this Contract in a manner which is consistent with SCRRA's goal of providing a safe and well-maintained facility and on-time train operations, and will be in compliance with all applicable local, state and federal requirements. Absent specific SCRRA policies, procedures and practices, the Contractor shall adhere to its corporate policies, procedures and practices in the day-to-day operation of the Services to the extent that these are beneficial to SCRRA. Corporate policies applicable to the performance of the Services, including but not limited to, those on Equal Employment Opportunity/Affirmative Action and sexual harassment, must be reviewed and acceptable to SCRRA.

(3)   All personnel provided by Contractor and Contractor's Subcontractors involved in any aspect of providing the Services shall be employees or contractors of the Contractor or its Subcontractors, and not of SCRRA,

and shall be fully trained and Qualified to perform the Services prior to starting work on the SCRRA Services and shall be subject to the direction, supervision and control of the Contractor and not of SCRRA. All personnel who work on providing the Services, except as provided specifically in this Contract or by mutual agreement of the parties, shall be assigned exclusively to the Services. The Contractor shall provide an organization chart showing all positions for provision of the Services and clearly indicating reporting relationships to the General Manager, Commuter Operations, which is subject to the approval of SCRRA.

b.  <u>General Manager, Commuter Operations</u>.   The Contractor will operate the Services under the direction of a full time General Manager, Commuter Operations, who will have overall responsibility for all aspects of the Services and who must be located at an SCRRA owned or provided facility within the five county SCRRA service area throughout the term of this Contract. SCRRA may request a revision to the organizational reporting relationship, and the Contractor shall not unreasonably withhold its approval of the requested change. The Contractor shall select a General Manager subject to SCRRA's prior approval.  If SCRRA is dissatisfied with the performance of the General Manager, and following consultation with the Contractor and SCRRA's Operations Director, the Contractor will replace him or her on ninety (90) days notice. The Contractor will not otherwise transfer or reassign a General Manager until a replacement approved by SCRRA has accepted the position and is available to begin work in that position. The General Manager will be available to attend service meetings with SCRRA staff.

c.  <u>Other Management Personnel</u>. The Contractor shall select other management personnel subject to SCRRA's prior approval.  If SCRRA is dissatisfied with the performance of the other management personnel, and following consultation with the Contractor and SCRRA's Operations Director, the Contractor will replace him or her on ninety (90) days notice.  The Contractor will not transfer the General Manager or any of his or her direct reports away from that assignment for at least one (1) year from the date the employee begins work in that assignment, except as required by applicable law, regulation or any provision of this Contract, or with

the consent or at the request of SCRRA. SCRRA will have the opportunity to have a representative sit on an interview panel for any management vacancies.. All management personnel assigned full-time to SCRRA's operations must be located at an SCRRA owned or provided facility within the five county SCRRA service area.

**2.** **Train Operations**

a.      Operations. During the term of the Contract, the Contractor shall manage, operate, maintain and provide staff for the Services. Subject to any applicable rules or regulations of the FRA, the following operating policies and procedures, which are in effect as of July 1, 2005, and as they may be amended from time to time, shall guide the Contractor's operation of the Services: the current General Code of Operating Rules (Appendix 2); timetable and special instructions for all Metrolink operating territories (Appendix 3), SCRRA's Supplemental Instructions (Appendix 5); the Contractor's air brake and train handling rules until such time as SCRRA adopts its own rules; the Contractor or SCRRA rules and instructions issued in the ordinary course of business for its employees and any additional standards or procedures as the parties may agree upon from time to time; and the procedures which are set forth in Appendix 6. SCRRA shall be entitled to review and approve changes in any of the documents listed above that affect SCRRA Commuter Railroad Operations and apply only to the Contractor, provided that such approval shall not be unreasonably withheld. These policies and procedures shall be amended from time to time, upon request of either party, as the needs of the operations change, and the other party's consent to any such requested change shall not unreasonably be withheld. The Contractor shall operate the commuter trains of SCRRA on schedules, which shall be determined by SCRRA based on consultations with the Contractor's staff. The Contractor shall propose crew run schedules and such proposed crew runs shall become effective after approval by SCRRA. The Contractor shall not change any such schedule of crew runs except in an emergency without first securing the approval of SCRRA. The Contractor will provide train movements into, out of and through the MF subject to Section B.9.c. SCRRA may request the MOE or MOW contractors to move equipment for non-revenue generating purposes on lines or

facilities included in the Service Property, as part of the provision of MOE or MOW services. Such moves may include moves to reposition and/or place equipment for revenue service.

b.    Delays. The Contractor will provide immediate notice to the SCRRA MOC by telephone or radio of any situation which would significantly affect the on-time operation of the SCRRA Commuter Railroad Operations and cooperate with SCRRA in notifying the passengers affected by the resultant delays.

c.    Rule Violations. Any allegations of a violation of the General Code of Operating Rules, or any rule pertaining to the safe movement of trains, by a Contractor employee must be reported immediately to the SCRRA MOC.

3.    **Materials Management**

a.    The cost of materials the Contractor is required to purchase in order to perform the Services under this Contract shall be reimbursed as a Direct Cost. All materials or equipment purchased by the Contractor pursuant to this Contract for the provision of the Services shall be used solely for the purpose of providing the Services to SCRRA and shall be the property of SCRRA.

b.    In emergency circumstances where parts or supplies needed for provision of the Services are not available from SCRRA's supplies but are available in the inventory maintained by the Contractor, the Contractor may use such parts or supplies to provide the Services. SCRRA shall reimburse the Contractor for any Direct Costs incurred to replace any such parts or supplies.

c.    In making purchasing decisions, the Contractor shall purchase, where prudent and cost-effective, from local vendors, but shall in all circumstances take into account and give full consideration to factors to include, but not be limited to, price, delivery schedule and freight charges and to applicable local, state and federal regulations.

d.    SCRRA approval is required to purchase a Controllable Item that costs in excess of $5,000 or to purchase any trucks, automobiles, personal computers, printers,

software, cellular phones, hand radios, cameras, personal data assistants (PDAs), and office machines. Such approval shall be deemed to have been given if an item is included and itemized in the current year's Approved Budget (including back-up documents showing detail of items included in the current year's Approved Budget), and the purchase price does not exceed the budgeted amount specified therein. The Contractor shall provide reasonable backup documentation of purchases of Controllable Items as agreed to by the parties.

4.    **Service Disruptions**

Upon request from SCRRA, the Contractor will cooperate with and support SCRRA in clearing wrecks, which involve SCRRA trains. Where a wreck involves a Third Party Railroad operating on SCRRA property and the Contractor is called upon to assist in clearing the property, the Contractor shall support SCRRA's efforts to obtain reimbursement from the Third Party Railroad for expenses incurred in clearing the wreck. The Contractor acknowledges that SCRRA will coordinate the Contractor's activities required to fulfill its obligations under this subsection. The respective rights and obligations of the Third Party Railroad and SCRRA shall be governed by the terms and conditions of agreements, if any, between SCRRA and that railroad. SCRRA shall reimburse the Contractor for Direct Costs incurred in clearing wrecks. Such Direct Costs are not included in the Approved Budget and, as a result shall be excluded from the sum of actual Direct Costs used to determine employee performance incentive compensation as stated in Section D.12.j. Notwithstanding any other provision of this Contract, SCRRA shall not pay a fee on the amount of Direct Costs paid for clearing of wrecks caused by a failure of the Contractor or one of its subcontractors to follow rules governing train operations set forth in Section B.2.a., and the amount of such Direct Costs shall be excluded from the total compensation against which employee performance incentive payments in Section D.12.j. are measured.

5.    **Special Trains**

The cost of operation of any special trains shall not be included in the budget proposal submitted pursuant to Section D.2. or in the Approved Budget. No less

than seven (7) calendar days prior to any event for which SCRRA anticipates providing special train service, it shall submit to the General Manager a notice in writing to operate such service. The Contractor shall, not less than five (5) working days after the receipt of written notice, inform SCRRA in writing of the estimated cost of providing such service in accordance with the cost provisions of Section D.1., and the Contractor shall operate the service as requested, subject to operational feasibility and availability of equipment, unless SCRRA has withdrawn its notice requesting the service. SCRRA shall reimburse the Contractor for the actual Direct Costs incurred in operating such special trains. SCRRA shall pay G&A and Overhead and Profit based on the Direct Costs of all special trains; provided, however, that SCRRA shall not pay G&A and Overhead and Profit on the Direct Costs incurred to run special trains for the purpose of training the Contractor's employees unless the special trains are run to train employees when SCRRA adds new routes or extends existing routes to lines not currently served. If SCRRA provides shorter notice of the intended special service, the Contractor shall respond to SCRRA's request as soon as possible, and the Contractor shall use its best efforts to supply crews and other necessary personnel to operate the special train service, subject to applicable labor agreements.

6.    **Verification of Fares**

a.    Subject to SCRRA's right to hire or provide on-board personnel for other than operating functions, the Contractor personnel shall conduct fare verification inspections, and shall perform all other related functions (including issuance of citations pursuant to Cal. Penal Code §830.14 and in compliance with SCRRA's Supplemental Instructions (Appendix 5), and attending any resulting court hearings), except for ticket sales.

b.    As required in Section D.2.c., the Contractor shall make employees available for court attendance or other functions related to verification of fares and enforcement of violations.  SCRRA shall reimburse the Contractor for Direct Costs incurred in performing such ancillary functions, including reasonable

personal expense incurred.  SCRRA shall pay the Contractor G&A and Overhead and Profit on the Direct Cost of performing such ancillary functions.

7.     **Standard of Performance**

a.     Contractor warrants and represents that it has the professional capabilities, qualifications, licenses, skilled personnel, experience, expertise and financial resources, and will provide  the necessary tools and materials not provided by SCRRA, to perform the Services in an efficient, professional and timely manner.

b.     The Contractor shall perform and require its Subcontractors to perform the Services in accordance with the requirements of this Contract and in accordance with professional standards of skill, care, and diligence adhered to by firms recognized for their expertise, experience and knowledge in performing services of a similar nature. The Contractor shall be responsible for the professional quality, technical accuracy, completeness and coordination of the Services, it being understood that SCRRA will be relying upon such professional quality, accuracy, completeness and coordination in utilizing the Services. The foregoing obligations and standards shall constitute the "Standard of Performance" for purposes of this Contract.

c.     The Contractor shall promptly notify SCRRA of all errors, inconsistencies, omissions, and/or non-conformities that it discovers; and, in instances where such errors, inconsistencies, omissions and/or non-conformities are discovered, shall obtain specific instructions in writing from SCRRA before the Contractor proceeds with the affected Services. Any Services affected, which are performed prior to SCRRA's decision, shall be at the Contractor's risk. The Contractor shall not take advantage of any apparent error, inconsistency, omission, and/or non-conformity that may be found in this Contract. SCRRA shall be entitled to make such corrections therein and interpretations thereof as it may deem necessary for the fulfillment of the intent of this Contract. Omissions or misdescriptions of any Services that are manifestly necessary to carry out the intent of this Contract, or that are customarily performed, shall not relieve the Contractor from performing

such Services and such Services shall be performed as if fully and correctly set forth in this Contract.

**8.** **Mobilization Planning**

a.    This section of the Contract shall be performed, upon receipt of SCRRA's Notice to Proceed, if mobilization is required. The Contractor shall provide a mobilization plan subject to SCRRA approval, which describes in detail, all activities planned for the mobilization period in preparation for its provision of the Services.

b.    The mobilization plan shall, at a minimum, include:

    (1)    Staffing plans and organization plans;

    (2)    Employee hiring plans, associated start dates for each employee, and Contractor's plan for complying with the requirements of Section C.13.a., Section 13(c) Compliance;

    (3)    Training program, including course descriptions, training schedules, training manuals, competency tests, territory qualification plans, Subcontractor training plans and schedules, and requalification plans;

    (4)    Transition and service continuity plans;

    (5)    Identification of temporary physical location and logistics;

    (6)    Specifics regarding any access required to SCRRA's Service Property;

    (7)    Specifics regarding support required from SCRRA staff and/or contractors;

    (8)    Installation and connectivity plan for computer systems;

    (9)    Quality Assurance Plan; and

    (10)   Schedule for delivery of the System Safety Plan, a Disaster and Emergency Response Plan, all government-compliance programs, and budget for Services.

c.   Contractor shall mobilize and train sufficient personnel to adequately provide Services outlined in SCRRA's anticipated Year 1 model, and shall deliver to SCRRA a mobilization plan within thirty (30) days of the later of (1) the Effective Date of this Contract, or (2) delivery of SCRRA's Service Plan. SCRRA shall review the mobilization plan and subject to modification required by SCRRA, approve the plan no later than thirty (30) days from its receipt of the plan. Mobilization costs incurred by the Contractor prior to July 1, 2005 must be billed to the SCRRA on or after July 1, 2005.  Payment of mobilization costs will be made in 36 equal monthly installments beginning thirty (30) days after the Start Date.  SCRRA will not pay interest, G&A and Overhead or Profit on the mobilization costs. If Contractor is terminated by SCRRA prior to full reimbursement of mobilization costs, SCRRA will continue to pay the remaining monthly reimbursement amount to the Contractor on the same schedule as if the Contract were still in force.

**9.**   **Relationship to Equipment Maintenance Function and Contractor**

a.   Regular Communication.  The Contractor and the MOE Contractor shall communicate with each other and with SCRRA regularly and as required to ensure the ability of each contractor to deliver the services required by their respective Contracts. The Contractor shall be knowledgeable of the MOE Contractor's requirements to meet service demands and shall advise the MOE Contractor of any operating anomaly or equipment deficiency that may affect the service. SCRRA shall require the MOE Contractor to take on reciprocal obligations.

b.   Equipment Familiarization Requirement. Crew members must have completed and passed equipment familiarization training prior to entering into Metrolink train service under this Contract. Should a train crew member who has not successfully completed this training be used in Metrolink service, liquidated damages shall be assessed consistent with Section D.11.d. of the Contract. The Contractor shall provide this training, and shall develop a training program subject to SCRRA review and approval.

c.   **Train Placement for Service at the MF.** The MOE Contractor shall determine the movement and placement of trains in the MF for servicing, and shall coordinate such movement with the Contractor. The Contractor shall deliver trains to tracks as directed by the MOE Contractor (or as close thereto as possible if the identified tracks are not available). The Contractor shall pick up trains from tracks as directed by the MOE Contractor.  SCRRA may request the MOE or MOW contractors to move equipment for non-revenue generating purposes on lines or facilities included in the Service Property, as part of the provision of MOE or MOW services. Such moves may include moves to reposition and/or place equipment for revenue service.

d.   **Train Number Assignments and Location in the MF.** The MOE Contractor shall be responsible for notifying the Contractor of train number assignments and locations in the MF prior to dispatch time. In general, such assignments of train locations shall remain constant and be made according to a plan designed to support the train schedule.

e.   **Equipment and Defect Reporting.** The Contractor shall ensure that train crews clearly and legibly record all equipment defects and/or operating anomalies that are discovered in the course of train operation. Such items shall be recorded on the appropriate SMP forms (Appendix 8) located on each car or locomotive. Failure to legibly record a defect and provide information on the SMP form about the cause of the defect, if known, shall result in assessment of the liquidated damages described in Section D.11.c.(4).

f.   **Notifications of Unscheduled Inspection Requirements.** In the event of an over-the-road incident or operating anomaly (which may include but is not limited to incidents of passenger injury, debris strike, or placement of train into emergency braking), the train crew shall notify the SCRRA MOC as soon as possible. The crew member reporting the incident shall use his or her best efforts to describe the nature of the incident and extent of damage, if any, to the equipment in order to assist the MOE Contractor in its response.

g.   <u>Time of Dispatch from Yard</u>. The Contractor shall notify the MOE Contractor in writing of the required train departure times from the MF. Such times shall be related to the train schedules and be subject to change upon initiation of a new train schedule. However, every effort shall be made to ensure that the MOE Contractor has adequate time to perform required maintenance tasks.

h.   <u>Joint Use of Facilities</u>. The Contractor shall jointly occupy office space at the MF with the MOE Contractor and shall cooperate with SCRRA and the MOE Contractor in determining facility access and use of common facilities including but not limited to parking areas, restrooms, conference rooms, break areas and walkways.

**10.   Hiring of Employees to Provide the Services**

a.   <u>Hiring Practices</u>.   The Contractor shall hire labor, administrative, professional, and supervisory personnel required to provide the Services; provided, however, that SCRRA reserves the right to hire or provide on-board personnel for other than operating functions and to assign SCRRA management employees or SCRRA contractors at all facilities on the SCRRA system for oversight functions. The Contractor shall have the right to contract with third parties to provide any of the Services, subject to SCRRA's written approval. The total number of full-time equivalent positions will not exceed the total number of positions included in the Approved Budget for a period of more than thirty (30) days without the prior approval of SCRRA, which approval shall not unreasonably be withheld.

b.   <u>Personnel Qualifications</u>.   All such personnel hired by the Contractor or its subcontractors shall be Qualified and experienced, will have taken and passed all Contractor-provided training courses listed in Appendix 9 to this Contract that are appropriate for the craft prior to beginning employment in SCRRA Commuter Railroad Operations.  The Contractor shall notify SCRRA within thirty (30) days of the start of a new employee of any required agency-provided training needed.

c.    Employee Compensation

(1)    As between the Contractor and SCRRA, the Contractor will be solely responsible for determination of and payment of the wages and benefits and other terms and conditions of employment of its or any Subcontractor's management or other employees; provided, however, that the Contractor or the Subcontractor shall comply with any applicable mandatory state or federal prevailing wage rate, safety or wage-hour laws.  Wage rates shall be reimbursed by SCRRA consistent with the rates contained in Year 1 of the Cost Proposal, and inflated as mutually agreed upon by the parties in section D.10 of this Contract for subsequent years of the Contract. In the event of any changes in State or federal prevailing wage rates or other minimum wage requirements during the term of this Contract, SCRRA shall not be responsible to reimburse Contractor for any increases resulting from such changes except to the extent of any increase for inflation pursuant to section D.10. SCRRA will review and approve salary ranges as part of the Annual Budget Process specified in Section D.2, for any exempt employee position for which SCRRA will reimburse as a Direct Cost under this Contract. These ranges shall establish the maximum compensation SCRRA will reimburse the Contractor for each exempt employee position under this Contract. The salary range shall not exceed the amount stated for each position in the Contractor's Cost Proposal.

(2)    The Contractor shall comply with all applicable laws, regulations, rules and procedures respecting employer's liability, worker's compensation, unemployment insurance, and other forms of social security or railroad retirement, and also with respect to any other required withholding from the wages of employees. The Contractor shall indemnify and hold harmless SCRRA from any and all liability, damages, claims, costs (including attorney's fees), and other expenses of whatever nature arising from alleged violations of such laws, regulations, or rules.

d.    Availability of Employee Records.  Upon request of SCRRA, the Contractor shall grant SCRRA access to and copies of (1) the payroll records of any employee engaged in providing the Services, and (2) the records of any such employee regarding drug and alcohol testing, efficiency testing, competency test, qualifications, training, locomotive engineer certification, motor vehicle operator license records, and criminal violations that directly relate to the performance of the Services, unless the Contractor demonstrates to SCRRA that applicable law prohibits the Contractor from granting SCRRA access to such records. Any information received by SCRRA pursuant to this subsection shall be accorded the confidentiality required by law. All records must be available in Los Angeles County for inspection in either hard copy of electronic format.

**11.    Additional Meetings**

The Contractor shall make available an appropriate senior officer above the GM level for not less than four (4) quarterly meetings per year, at locations to be specified by SCRRA, at each of which the Contractor and SCRRA shall review the performance of the Services and the work of the management team. The cost of making these or other management personnel selected by the Contractor available to attend these meetings is included in the Contractor's G&A and Overhead for providing the Services.

**12.    Reports**

a.    General.  The Contractor shall provide SCRRA with the reports at the times listed in Appendix 10 to this Contract. In addition, the Contractor shall submit to SCRRA copies of any reports the Contractor is required to file with any federal, state or local governmental agency that pertain to SCRRA Commuter Railroad Operations. When requested by SCRRA, the Contractor shall provide to SCRRA information with respect to any of the Services for which the Contractor is responsible that SCRRA requires for reports it is required to submit to any federal, state or local governmental agency.

b.    Notification Requirement.  The Contractor shall also promptly furnish to SCRRA copies of any citations or complaints issued by an enforcement or regulatory

body which affects the Services or the Service Property, and the Contractor will advise SCRRA of the disposition of such citations or complaints. The purpose of the reports described in this Section is to keep SCRRA apprised of the performance of, and incidents which may impact upon the operation of, the Services. The Contractor agrees to keep full and accurate records required herein, and to provide SCRRA at its request with such other reports or information as will fulfill the purpose described in the previous sentence. All reports prepared pursuant to this Contract shall be the property of SCRRA and the Contractor shall not voluntarily release or disclose any of the contents of those reports without the prior approval of SCRRA.

13. **Safety**

a. The Contractor shall be responsible for complying with SCRRA's System Safety Program Plan (SSPP) (Appendix 11). The SCRRA's plan is consistent with the American Public Transportation Association's Manual for the Development of a System Safety Program Plan for Commuter Railroads. The Contractor shall submit a compliance plan to SCRRA for review and approval 30 days prior to the Start Date of the Contract. Any changes to the plan shall be submitted to SCRRA for approval and shall be consistent with and complementary to SCRRA's System Safety Program Plan. The Contractor shall notify SCRRA in writing within fifteen (15) working days whenever it changes its policies or procedures that affect the SCRRA SSPP. Application of changed policies or procedures to the Services is subject to SCRRA's approval. The Contractor shall promptly take all precautions which are reasonable or necessary to safeguard against risks, and shall make regular safety inspections of the rolling stock and the Service Property. The Contractor shall be solely responsible for the discovery, determination and correction of any unsafe conditions that relate to or are discovered in connection with performance of the functions being performed by the Contractor under this Contract and the Contractor shall advise SCRRA of any unsafe conditions related to functions performed by SCRRA or its other contractors that require correction.

b.     The Contractor shall comply with all applicable safety laws, standards, codes, rules and regulations, including any safety program established by SCRRA in consultation with the Contractor. The Contractor shall cooperate and coordinate with SCRRA, control activities of Third Party Railroads and any other SCRRA contractors on safety matters, and shall promptly comply with any specific safety instructions or directions given by any duly authorized regulatory agency.

14.     **Training of Employees**

The Contractor shall provide, administer and maintain training programs, consistent with Appendix 9, which address all required aspects of safety and personnel qualifications. The training programs shall be consistent with (1) the objectives of providing the highest quality service to the public, (2) the policies of, and in the best interest of SCRRA, and (3) all applicable federal, state, and local requirements. The training programs shall enable the Contractor to certify that employees are fully Qualified to perform the functions necessary for their positions. The Contractor is responsible for providing a trained and Qualified workforce to perform the Services, and each person who will be working for the Contractor in providing the Services shall complete any Contractor-provided training and Services-specific training described in Appendix 9 that is required for, appropriate for, or pertinent to the duties of the person's job before that person starts work on the Services.

a.     Contractor-Provided Training. The Contractor shall establish and provide any required training, qualification, and requalification programs for employees who are working on the Services, including but not limited to, the training required by applicable Parts of 49 CFR. The Contractor shall provide SCRRA with copies of all training programs used for employees who are working on the Services. The Contractor shall provide SCRRA with copies of instructors' resumes prior to class instruction. All training and requalification programs, as well as all instructors, will be reviewed and approved by SCRRA prior to implementation, and will consist of classroom instruction, written testing and successful demonstration of applicable skills. The Contractor shall provide SCRRA with a monthly training report consistent with that described in Appendix 10. In addition, the report shall

identify the number of employees taking the training courses and the pass/fail history. Contractor-provided training shall be administered by the Contractor; however, SCRRA shall pay as a Direct Cost the cost of employees, wages, salaries, benefits and expenses while engaging in training. The cost of course development for courses listed in Appendix 9, and Subcontractor-provided instruction, shall be included in the Contractor overhead.

b.   Services-Specific Training. Services-specific training shall prepare employees engaged in providing the Services with the Services-specific skills and qualifications. The Contractor is responsible for administering Services-specific training using course material provided by SCRRA, and for administering appropriate qualification tests. The Contractor shall provide SCRRA with a monthly training report that includes summaries of specific programs and labor-hours spent in each training session. In addition, the report shall identify the number of employees taking the training courses and the pass/fail history. SCRRA shall pay as a Direct Cost the cost of employee wages, salaries, benefits, and expenses while engaging in training.

c.   SCRRA-Provided Training. SCRRA-provided training (Appendix 9) will be administered by SCRRA. The cost for employee labor, materials, and approved travel for such training are reimbursable under this Contract.

d.   Qualification and Testing. The Contractor shall require Qualified employees to be re-Qualified for their positions as required by 49 CFR and within the time frames specific in Appendix 9. If any such employee fails to re-Qualify as required by 49 CFR, the Contractor shall remove such employee from his or her job classification. If any employee fails to re-Qualify as specified in Appendix 9 within two (2) months, or fails the test on two (2) occasions (whichever first occurs), the Contractor shall remove such employee from his or her existing job classification. An employee who is removed from his or her existing job classification pursuant to this section shall not be placed in any other position in the SCRRA Commuter Rail Operation unless that employee is Qualified for such a position. The Contractor shall further require that an employee's promotion or advancement to a higher pay grade and experience level be contingent on the

employee passing a competency test tailored to that higher pay grade and experience level. Unless waived by SCRRA, the Contractor shall, in conjunction with SCRRA, develop and establish the appropriate competency tests as well as provide records and documentation for its employees' qualifications. The competency test for a supervisory position must effectively and comprehensively address the specific subject areas that the position will be supervising.

e.  Non-Contractor Training.  In addition to training the Contractor's employees as provided above, the Contractor shall provide training of non-Contractor employees as requested by SCRRA.  For training of non-Contractor employees, authorized by SCRRA, SCRRA will pay the Contractor for the Direct Cost of new course development, other out-of-pocket costs, and the actual hourly cost of trainers not occupying a position in the Approved Budget, plus G&A and Overhead and Profit at rates consistent with those included in the Cost Proposal. These costs shall not be included in the annual Approved Budget.

f.  Separation from Service.  Contractor shall notify SCRRA in writing when any Contractor or Subcontractor employee separates from SCRRA service. If a Contractor or Subcontractor employee participates in an approved training program which is Contractor-provided, Services-specific, or SCRRA-provided, and paid for by SCRRA, and then leaves SCRRA service for any reason within one (1) year from the date of qualification, the Contractor shall either reimburse SCRRA for the cost of such training or provide, within a reasonable period of time and at no expense to SCRRA, training necessary for a replacement employee.

g.  Training Location.  The Contractor shall make every reasonable effort to provide the training programs listed in Appendix 9 within the SCRRA service area. SCRRA will not reimburse the Contractor for employee expenses incurred for travel and/or lodging to attend training out of the SCRRA service area unless SCRRA has approved the travel in advance.  The Contractor shall schedule training activities so as not to interfere with its provision of Services.

15.     **Drug and Alcohol Testing**

a.      The Contractor shall comply with SCRRA's FRA approved Drug and Alcohol Testing program (Appendix 12) for all Hours of Service Employees, and as amended, throughout the term of this Contract. This program will cover pre-employment testing, random drug and alcohol testing, and post-accident testing. The Contractor shall develop a FRA-compliant program to cover reasonable cause testing, reasonable suspicion testing, follow-up testing, and a voluntary referral program. The Contractor shall comply with the FRA-approved program previously submitted to SCRRA. The Contractor shall submit any changes to that Drug and Alcohol testing program to FRA and SCRRA prior to implementing any such changes with respect to the Services.

b.      The Contractor shall develop its own drug and alcohol program for all non-Hours of Service Employees. This program shall be consistent with SCRRA's Drug Free Workplace policy, and developed and administered under the Contractor's authority and not under DOT authority. The Contractor shall administer a pre-employment drug and alcohol testing program for all new employees and for all employees before they begin work on the Services. Any positive results (positive drug or alcohol tests) shall be reported to SCRRA' Manager of Safety and Security with twenty-four (24) hours. The Contractor shall submit the drug and alcohol program for SCRRA's approval before implementing the program on the Services.

c.      The Contractor shall notify all employees, in writing, of the requirement that they follow the drug and alcohol program required by 49 CFR 219.23 or the Contractor's program for non-Hours of Service employees, as applicable.

16.     **Labor Agreements**

a.      General. The Contractor shall not enter into agreements in which it changes the number of crafts providing the Services that were in place with the contractor who provided the Services covered by this Contract prior to Contractor. Nothing contained in this Contract will require Contractor to perform any Service or take any action that would violate any law or regulation, or any term or condition of

any labor agreement between Contractor and any organization representing Contractor's employees or applicable to Contractor. SCRRA does not accept, succeed to, or assume, and this Contract shall not be construed to impose or allow any acceptance, succession to, or assumption of, any obligations of the Contractor under any of its collective bargaining agreements with its employees or their representatives. Contractor specifically confirms that the payment of incentives to its employees pursuant to Section D.12.j. is consistent with and permitted by the collectively bargained agreements in effect between Contractor and the representatives of its employees, and that Contractor will not enter into agreements with such representatives or with its employees that prohibit payment of such incentives during the term of this Contract. Contractor specifically confirms that the use by Contractor's employees of portable handheld devices or other electronic means of data and/or fare verification is permitted by the agreements governing rates of pay, rules and working conditions between Contractor and the representatives of its employees, and that if such agreements do not now permit use of such devices Contractor will negotiate an amendment to such agreements to permit such use. The Contractor shall use all applicable agreements in place with its employees or their representatives to obtain any and all available cost and other efficiencies in the work force that can be derived from such practices to the benefit of SCRRA.

b.  Rule Changes.  SCRRA shall not be required to reimburse the Contractor for any cost increases related to work rule changes, whether in the year the changes become effective or in any subsequent Fiscal Year, unless the changes are the result of a change in law.

c.  Picketing.  Notwithstanding Section C.8., the Contractor's agreement with any covered employees shall include a no-strike clause or, in the alternative, a clause that requires the employees covered by that agreement to complete all of the dispute resolution procedures in that agreement and required by applicable law before engaging in any self-help actions. If employees of the Contractor picket facilities of SCRRA, or lawfully honor a picket line of another union at an SCRRA facility, in connection with a labor dispute of any kind, and if the Contractor is unable to provide Train and Engine Crews for normally scheduled services, the

Contractor shall reimburse SCRRA for legal and related expenses, including but not limited to, attorneys fees, incurred by SCRRA in its efforts to terminate such picketing. To the extent that such picketing disrupts service operation, the Contractor shall reimburse SCRRA for any and all costs related to the service disruption, excluding alternative transportation for impacted Metrolink passengers. If picketing activities cause the Contractor to incur any additional costs in complying with the terms of this Contract, there will be no reimbursement of such costs.

17.     **Relationships with Other Carriers**

The Contractor expressly understands that agreements exist between SCRRA or the Member Agencies, with Amtrak, the former Southern Pacific Transportation Company, the Union Pacific Railroad Company, and the company formerly known as The Atchison, Topeka and Santa Fe Railway Company, governing lines included in the Service Property. Should questions arise regarding the interpretation of those agreements, those questions shall be resolved by SCRRA at its sole discretion.

18.     **Selection of Subcontractors**

a.      The Contractor may not employ Subcontractors to perform any of its obligations or services, with an estimated value of $10,000 or more per year, under this Contract without the prior written approval by SCRRA of the Subcontractor, the scope of work to be performed by that Subcontractor, and the process used to select the Subcontractor. The Contractor shall be required to re-solicit for subcontracted services on a schedule, mutually agreed to by SCRRA and the Contractor. Solicitation for subcontract services shall comply with all applicable California laws and regulations. Contractor's request for approval must be submitted as required by Section C.36 of the Contract. If SCRRA's approval or disapproval has not been made within ten (10) working days of receipt of Contractor's request, SCRRA shall be deemed to have given its approval of the subcontractor.

b.   Each agreement with a Subcontractor shall require the Subcontractor to be bound by and comply with the terms and conditions of this Contract, as well as any other obligations that the Contractor may require. The Contractor shall remain solely responsible for any work for which it employs a Subcontractor, and SCRRA shall have no obligation to such Subcontractors whatsoever. All employees of the Contractor's Subcontractors shall be Qualified for the jobs those individuals will perform. Employees of a Subcontractor who are not Qualified shall be removed from SCRRA Services in accordance with Section B.26. of this Contract.

c.   Should SCRRA be dissatisfied with the Contractor's Subcontractor's performance it shall so notify the Contractor and the parties shall discuss remedies to the situation. Following these discussions should the situation fail to be resolved to the satisfaction of SCRRA, SCRRA shall notify the Contractor, in writing, to terminate the Subcontractor within thirty (30) days unless otherwise agreed to, in writing, by the parties.

d.   In the event the Contractor employs any Subcontractor to perform services under this Contract without the prior written approval of SCRRA, SCRRA will not indemnify that Subcontractor pursuant to Section C.19.

**19.   Use of Equipment, Materials and Services**

a.   Prior to the Start Date, SCRRA and the Contractor shall conduct a joint audit of the Service Property, which shall establish its condition as of that date.  The Contractor shall make no changes to the Service Property or equipment to be used in providing the Services without SCRRA's prior written approval.

b.   The Contractor shall use the equipment, materials and services provided or paid for by SCRRA solely for the purpose of providing the Services. The Contractor shall acknowledge receipt of all equipment, materials and fixed assets, and shall include in the Annual Report described in Appendix 10, an inventory showing additions, deletions or other changes to the list of such equipment, materials and fixed assets. Prior to the Start Date, the Contractor shall prepare and submit to SCRRA for its approval a policy governing the distribution and replacement of

equipment, material and fixed assets, including but not limited to, small tools and all Controllable Items issued by the Contractor to employees who are working on providing the Services. Upon the termination of the Contract, the Contractor shall return to SCRRA any such tools, equipment and material supplied or purchased by SCRRA or tools, equipment and material that is equivalent (or in certain circumstances, identical) in type, value and condition, excepting normal wear and tear, to the tools, equipment and material provided to the Contractor.

c,   SCRRA will provide facilities, equipment and tools to perform the Services as determined necessary by SCRRA. The Contractor will occupy and share these facilities with SCRRA staff and other contractors involved in the provision of SCRRA Commuter Railroad Operations.

d.   The Contractor shall promptly inform SCRRA of any incident that causes damage to SCRRA property, including but not limited to rolling stock, equipment and material. With the exception of rolling stock, the Contractor shall promptly repair or replace, at its sole expense, any SCRRA property damaged by the Contractor, its employees, agents or Subcontractors. Any and all cost and expense associated with such repair or replacement is not reimbursable by SCRRA under this Contract. The repair and replacement schedule shall be submitted to SCRRA for its review and approval. Damage to rolling stock will be repaired pursuant to Section D.11.c.(4).

## 20.   **Assistance in Distribution of Public Information**

The Contractor will cooperate with SCRRA in distributing notices and making announcements to passengers informing them on matters related to the SCRRA Commuter Railroad Operations, and will otherwise render assistance to SCRRA in monitoring and supervising such operations. At the request of SCRRA, the Contractor will distribute schedules and other information to the public. Content of informational materials is at the sole discretion of SCRRA.

21.   **Accounting Standards**

The Contractor shall maintain the books and records which are required by this Contract, and shall provide any financial or other reports required by this Contract, all in accordance with Generally Accepted Accounting Principles.

22.   **Communications on Behalf of SCRRA**

When the Contractor communicates with parties other than SCRRA or a Member Agency about matters related to SCRRA Commuter Railroad Operations, including but not limited to general orders, time tables and track warrants, such communications shall be in the name of SCRRA on SCRRA letterhead.  Any correspondence or communications within the Contractor or to the Contractor employees providing such service shall be conducted in the name of the Contractor and on Contractor stationary.

23.   **Response to Request for Assurances**

SCRRA may at its sole discretion and at any time during the term of this Contract request the Contractor to provide SCRRA with evidence of its continuing financial ability to undertake and fulfill its obligations under this Contract. SCRRA may submit such information to an independent outside certified public accountant for a determination as to the Contractor's financial ability to undertake and fulfill its obligations in this Contract. Areas to be examined may include, but are not limited to internal liquidity, operating efficiency, operating profitability and financial risk. A determination by the certified public accountant that the Contractor does not have the requisite financial ability may, at the sole discretion of SCRRA, be a material breach of the Contract, entitling SCRRA to terminate the Contract as provided hereunder.

24. **Notice of Regulatory Violations**

The Contractor shall inform the SCRRA MOC of any federal, state or local regulatory violations within 24 hours of the Contractor's receipt of actual notice or its awareness of such a violation.

25. **Payment of Employee Incentives**

The Contractor shall make incentive payments to Contractor employees who work on provision of the Services in accordance with Section D.12.j of this Contract.

26. **Employee Discipline and Removal**

a. <u>Employee Conduct</u>. All employees who are engaged in the provision of the Services shall be Qualified (as defined in this Contract and the Appendices thereto), and shall perform their duties in a courteous, efficient and safe manner. Employees dealing with the public shall be clean and properly attired while on duty. Because of the importance to the success of the SCRRA Commuter Railroad Operations of courteous and proper decorum of all employees who are involved in the provision of the Services, the parties consider that any conduct that is not consistent with the objectives stated in the first two sentences to be "conduct unbecoming an employee."

b. <u>Conduct Unbecoming an Employee</u>. The parties agree that the following is a non-comprehensive list of examples of "conduct unbecoming an employee."

   (1) Actions that are inconsistent with standard operating practices or procedures and which damage equipment or facilities used in the provision of commuter services or other services provided by SCRRA;

   (2) Violations of the General Code of Operating Rules, Airbrake and Train Handling Rules, Safety Rules, Timetable and Special Instruction, and any applicable federal, state or local laws or regulatory requirements that have a material impact on the safe and efficient operation of the SCRRA commuter service;

(3)     Violations of SCRRA Supplemental Instructions that have a material impact on the efficiency, reliability, and safety of the provision of the Services;

(4)     Misconduct towards a customer, fellow employee, SCRRA employee, MOW Contractor, MOE Contractor, Third Party Contractors or their employees, or public official, which may include, but shall not be limited to, any instance of belligerent or malicious behavior toward the aforementioned, or willful failure to assist customers;

(5)     Gross negligence;

(6)     Use or possession of alcohol or other controlled substances;

(7)     Dishonesty or falsification of report;

(8)     Immoral conduct;

(9)     Fighting;

(10)    Instances of use of language that is obscene, risque, or religiously, ethnically or sexually demeaning, or making light of a physical handicap or of religious beliefs, ethnic origins or sexual orientation, regardless of whether it is directed at a customer;

(11)    Making public statements or comments that are demeaning or harmful to SCRRA or the public image of Metrolink;

(12)    Littering rolling stock, station areas or any other part of the property used in providing commuter service; and

(13)    Snacking, smoking, reading, listening to radio or other audio devices, watching or listening to television, or engaging in other similar activities that are unrelated to provision of the Services while engaged in performing duties that involve dealing with the public.

c.      Investigation and Consequences of Conduct Unbecoming an Employee. For the
purpose of this section, the conduct described in Sections B.26.b.(1) through
(11), inclusive, shall be referred to as "Category 1" conduct, and the conduct
described in Sections B.26.b.(12) through (13) inclusive, shall be referred to as
"Category 2" conduct. Upon written notice from SCRRA to the Contractor that an
employee has engaged in Category 1 conduct on one (1) occasion or Category 2
conduct on two (2) or more occasions, the Contractor shall promptly investigate
the matter and shall confer with SCRRA concerning the facts and the
Contractor's preliminary recommended handling of the employee in no more than
five (5) days. As soon as possible, the Contractor shall submit a copy of the
documentation of the disciplinary process to SCRRA.  SCRRA retains the right to
require Contractor to prepare a separate written report for SCRRA concerning
the conduct if the documentation is not adequate in SCRRA's judgment. In the
event that there is clear evidence that the employee has committed a violation
covered in Category 1, the Operations Director of SCRRA reserves the right to
request in writing that the employee be barred from SCRRA service immediately
following the initial conference referred to in the second sentence of this
subsection, and the Contractor shall notify the employee of the bar imposed by
SCRRA with respect to the SCRRA Services and the employee shall not be
allowed to work in the SCRRA Services. In the absence of such clear evidence of
a serious offense resulting in an immediate bar imposed by SCRRA, the parties
shall confer again after receipt of the Contractor's written report in order to jointly
evaluate the most appropriate handling of the conduct of the particular employee.
After this further consideration, if SCRRA is convinced that the employee should
be barred from SCRRA service on the basis of Category 1 conduct, and if the
Operations Director requests that action in writing, the Contractor shall notify the
employee of the bar imposed by SCRRA and the employee shall not be
permitted to work in the SCRRA Services. After the joint consideration following
the Contractor's written report, if SCRRA is convinced that the employee should
be barred from SCRRA service on the basis of two (2) or more instances of
Category 2 conduct, if the employee has previously been advised of the
significance of the behavior on at least one (1) occasion and been given an
opportunity to improve his or her conduct, and if the Operations Director requests

that the employee be barred from SCRRA service in writing, the Contractor shall notify the employee of the bar imposed by SCRRA and the employee shall not be permitted to work in the SCRRA Services. An employee who has been barred from SCRRA service pursuant to this subsection may, 30 days following the imposition of the bar by SCRRA, request that the Contractor apply to SCRRA on his or her behalf for reinstatement to SCRRA Services. Subject to any disciplinary action taken by the Contractor in connection with the conduct of the employee, SCRRA may, but is not obligated to, lift the bar imposed on an employee and the employee may be returned to SCRRA service at SCRRA's discretion if SCRRA is satisfied that the employee has successfully completed appropriate training or counseling to address the performance problem. SCRRA shall not be obligated to reimburse the Contractor for any costs incurred by the Contractor as a result of actions taken by the Contractor in response to SCRRA requests pursuant to this subsection.

[REMAINDER OF PAGE LEFT BLANK INTENTIONALLY]

C.    **GENERAL CONDITIONS**

1.    **Period of Performance**

a.    Contractor's mobilization shall begin on the effective date of Notice to Proceed, December 6, 2004, and shall end on the Start Date of July 1, 2005.

b.    This Contract shall take effect July 1, 2005 and shall remain in effect until June 30, 2010 unless otherwise terminated as provided for herein. After June 30, 2010, this Contract may be extended for an additional option term of five (5) years if SCRRA notifies Contractor of its intent to extend by no later than the June 30, 2009 which is twelve (12) months before the end of the current term, and if Contractor notifies SCRRA by no later than July 15 of the same year that it agrees to extension of the term of the Contract. SCRRA specifically reserves the right to renegotiate any provision of this Contract prior to exercising any option under this Contract.

2.    **Access to Equipment and Property**

a.    General.  At no cost to the Contractor, SCRRA shall provide, and shall allow the Contractor the necessary access to, the portions of the Service Property, locomotives and passenger cars, equipment and machinery necessary and to be used in provision of the Services. SCRRA hereby grants the Contractor the right to enter upon and utilize the foregoing for the purpose of performance of the Contractor's obligations under this Contract. The property provided by SCRRA shall include office space and storage space. SCRRA shall pay for all utilities in all facilities, office and storage space provided pursuant to this Contract. If SCRRA cannot provide office and/or storage space to the Contractor, the Contractor may lease other office or storage space subject to SCRRA's approval. Any lease or utility payments for such office or storage space shall be a Direct Cost for which SCRRA will reimburse the Contractor under the terms of this Contract.

b.  <u>Changes to Service Property</u>.  The Contractor shall make no changes to the Service Property or equipment to be used in providing the Services without SCRRA's prior written approval.

c.  <u>Non-Revenue Vehicles</u>.  SCRRA may mark and identify all vehicles and other equipment provided for the Contractor's use in providing the Services with the SCRRA "METROLINK"© colors, logo or other identification marks. The Contractor employees' use of such vehicles shall be in accordance with the then-current SCRRA policy governing vehicle use. If any non-revenue vehicle leased or otherwise acquired by the Contractor is damaged, destroyed or otherwise becomes unavailable for use: (1) through negligence or improper use by the Contractor's employees during the term of this Contract, the Contractor may replace such vehicle at its sole cost: or (2) during the course of work on the Services, then SCRRA will replace the vehicle at its sole cost.  The Contractor must provide evidence of self-insurance or other insurance covering event (1) above.

d.  <u>SCRRA Access</u>.  SCRRA and/or its designees will have access at all times to the premises in which any SCRRA Property is located for the purposes of inspecting SCRRA Property.

3.  **Changes in Equipment Provided**

SCRRA has the right to make specific improvements or additions to, or to change entirely the assigned equipment, and the Contractor shall make every reasonable effort to implement operations using such different equipment as soon as possible: provided, however, that no such change shall have any adverse effect on the Contractor's ability to operate the Services on-time and in accordance with the Contractor's obligations under this Contract.

4. **Fares, Timetables and Ticket Sales**

SCRRA assumes all responsibility for establishing fares, for obtaining and printing schedules and tickets, and for distributing schedules to the Contractor. Except as otherwise specifically agreed by the parties in writing, SCRRA employees, or third parties authorized solely by SCRRA, will be responsible for selling and distributing, or arranging for the sale or distribution of, all commuter rail service passenger tickets and collecting the revenue therefrom. SCRRA may at its sole discretion provide on-board personnel to assist the Contractor employees in the conduct of fare inspections or other non-operating tasks. Only SCRRA may issue passes for free transportation on trains in SCRRA Commuter Railroad Operations.

5. **Operations and Management Supervision**

In addition to the rights and obligations stated elsewhere in this Contract, SCRRA shall have the following rights with respect to oversight and monitoring of the Contractor's performance:

a. Monitor the records, facilities, and equipment developed or used, and monitor the personnel used, by the Contractor in performance of its obligations under this Contract, as well as timetable adherence and fare inspection procedures. The Contractor shall provide SCRRA with a summary of monthly reports documenting any audits of employee performance, including efficiency tests, performed by the Contractor.

b. Specify supplies and equipment to be used by the Contractor in providing the Services, and provide the Contractor with any required Material Safety Data Sheets ("MSDS"). If the Contractor's specifications or policies for such items differ from those of SCRRA, SCRRA's policy and specifications shall govern.

c. Inspect any equipment at any time, and remove from service any equipment which, in SCRRA's sole discretion, is in an unacceptable condition.

d.      At SCRRA's sole discretion, direct the Contractor to cease operation of any trains operated in the SCRRA Commuter Railroad Operations. The Contractor shall resume operation of any such train or trains only upon receipt of approval from SCRRA.

e.      Direct the Contractor to permanently remove from SCRRA Commuter Railroad Operations any employee for conduct unbecoming an employee, to the extent permitted by Sections B.26.b. and c. of this Contract.

6.      **SCRRA's Right to Information**

SCRRA shall have the right to obtain from the Contractor within ten (10) days of a request any information related to the Services or the Service Property; provided, however, that if the Contractor requires additional time beyond ten (10) days, it shall notify SCRRA and shall provide the information within the stated additional time approved by SCRRA.

7.      **Planning for Modifications to the Services**

SCRRA may from time to time require changes, and will develop proposals and work with the Contractor to plan and implement such changes, in the following aspects of the SCRRA Commuter Railroad Operations:

a.      Times of day and days of week when trains operate;

b.      Increases or decreases in the level of train operations, including changes in train consists, or changes in the location and number of station stops with adjustments in scheduled running times, and crew on-duty times all as determined pursuant to Section D.8.;

c.      Crew scheduling and staffing;

d.      Modifications in standards for maintenance of equipment and maintenance of the Service Property;

e.      Fares, including modifications to the revenue collection system;

f.      Additions to or replacement of equipment; and

g.      Advertising, promotion and public information.

8.    **Other Contracting Rights**

SCRRA reserves the right to remove any portion of the Services from the
Contractor which have not been performed to SCRRA's satisfaction, provided the
Contractor has been notified in writing of the deficiencies and has been provided
thirty (30) days to correct the situation. SCRRA may, at its sole discretion,
augment or supplant the services that are not within the scope of this Contract
with its own forces or forces of another contractor or agency upon written notice
to the Contractor. The Contractor shall cooperate fully with SCRRA's staff or
contractors that may be providing similar or same services. Any employee or
contractor of such person, corporation or other entity shall be permitted to
perform the contracted functions at any location on the Service Property;
provided, however, that no such employee or contractor shall unreasonably
interfere with the Contractor's provision of the Services.

9.    **Rights in Property**

a.     <u>Title</u>.

(1)    All property purchased by the Contractor for SCRRA shall be hereafter
referred to as SCRRA Property. Title to SCRRA Property shall pass to
and vest in SCRRA upon the receipt of such property by the Contractor.
Title to SCRRA Property shall not be affected by its incorporation into or
attachment to any property not owned by SCRRA, nor shall SCRRA
Property become a fixture or lose its identity as personal property by
being attached to any real property subject to the terms of any other
agreement in place pertaining to such property.

(2)    The title transferred as described above shall, in each case, be good, and
free and clear from any and all security interests, liens and/or other
encumbrances. The Contractor shall not pledge or otherwise encumber

the items in any manner that would result in any lien, security interest, charge, and/or claim upon or against said items.

(3)     The Contractor shall promptly execute, acknowledge, and deliver to SCRRA proper bills of sale or other written instruments of title in a form as required by SCRRA; said instruments shall convey to SCRRA title to material free and clear of debts, claims, liens, mortgages, taxes, and/or encumbrances.

(4)     SCRRA Property shall be used only for performing these Services, unless otherwise provided in this Contract or approved by SCRRA.

b.     <u>Property Administration</u>.  The Contractor shall establish and maintain a program for the use, maintenance, repair, protection and preservation of SCRRA Property in accordance with sound business practice, and as approved by SCRRA.

**10.     Rights in Technical Data**

a.     All documents and materials prepared or developed by the Contractor and its Subcontractors pursuant to this Contract shall become the property of SCRRA without restriction or limitation on their use and shall be made available upon request to SCRRA at any time. Original copies of such documents and materials shall be delivered to SCRRA upon completion of the work or termination of the Services. The Contractor shall be permitted to retain copies of such items for the furtherance of its technical proficiency; however, publication of the material is subject to the written approval of SCRRA.

b.     No material or technical data prepared by the Contractor under this Contract is to be released by the Contractor to any other person or agency except as necessary for the performance of the Services. All press releases or information related to the Services shall be distributed only after first being authorized by SCRRA.

11.    **Public Information Responsibilities**

SCRRA will assume all responsibility for marketing the public use of the SCRRA Commuter Railroad Operations, through advertisements or other promotions. SCRRA reserves the right to determine the locations for ticket sales. SCRRA assumes all responsibility for informing the public about the SCRRA Commuter Railroad Operations; provided, however, that the Contractor will cooperate with SCRRA and shall provide such information as it is directed by SCRRA to transmit to the public, including information concerning any disruptions and resulting delays due to emergencies. The Contractor will assist in the investigation of passenger complaints and in the preparation of responses to such complaints. The Contractor will install SCRRA-approved promotional materials or public information notices on the Service Property and equipment pursuant to procedures established by SCRRA.

12.    **Advertising**

Only SCRRA may utilize or authorize the utilization of the interior of trains used or operated in the Services for the display of any written or printed advertising, promotional material, or public information notices, and any revenues from such advertisements shall be for the account of SCRRA.

13.    **Labor Protection**

a.     Section 13(c) Compliance

(1)    Unless otherwise provided in this Contract, SCRRA shall be legally and financially responsible for any claims or obligations imposed by Section 13 (c) of the Federal Transit Act (49 U.S.C. §5333(b)) when such claims or obligations arise as result of any direct actions or requirements of SCRRA. SCRRA shall indemnify and hold the Contractor harmless for any 13(c) claims or obligations described in this subsection that are the responsibility of SCRRA. The parties specifically agree that termination of

this Contract pursuant to the Section C.22.A., entitled "Termination for Cause by SCRRA" or at the end of its term, including failure to exercise an option to extend the Contract, shall not be considered an action of SCRRA that requires SCRRA to indemnify the Contractor for such claims or obligations.

(2)    The responsibilities of the Contractor related to 13(c) shall be as follows:

(a)    The Contractor shall be financially and legally responsible for any 13(c) claims or other 13(c) obligations that arise out of acts or omissions of the Contractor in connection with the performance of the Services, that are not directly or expressly approved in writing by SCRRA, excluding any subcontracting by the Contractor that occurs at the direction of SCRRA. The Contractor shall indemnify and hold SCRRA harmless for any 13(c) claims or obligations described in this subsection that are the responsibility of the Contractor.

(b)    The Contractor agrees to afford the employees of the current contractor who currently are providing the Services covered by this Contract a priority in hiring for positions with the Contractor. The Contractor may independently establish reasonable qualifications for hiring, and may utilize such qualifications in the hiring process, including the hiring of any existing employees afforded a priority under this subsection. The Contractor shall provide as part of its Mobilization Plan to SCRRA a description of the process it will use to comply with this subsection, including the procedure it will use in hiring and the training it will offer to assist existing employees now performing the Services covered by this Contract to qualify for positions. Any Subcontractor to the Contractor shall also comply with the requirements of this subsection.

(c)     The Contractor shall bargain collectively with any labor organization that is selected by its employees in accordance with applicable law, and shall comply with the terms and conditions of any collective bargaining agreement that the Contractor enters into with such labor organization.

(d)     The Contractor shall promptly provide SCRRA with all information SCRRA deems necessary in connection with SCRRA's administration of its 13(c) claims or disputes, and the negotiation of agreements or settlements over issues that may arise in connection with or relate to the Services. The Contractor shall cooperate fully with SCRRA to avoid and minimize any 13(c) liability relating to the Services.

(e)     The Capital Assistance Protective Arrangements, pursuant to 49 U.S.C. §5333(b), among SCRRA, ATU, IBT, SEIU, IBEW, BLE, SCCC, NCEA and ALADS, CA-90-X908, dated May 6, 1999, and among SCRRA, the United Transportation Union, the Transportation-Communication International Union and the American Train Dispatchers Association, also dated May 6, 1999, which have been applied as well to other federal funds received by SCRRA for other projects, require any person, enterprise, body or agency which shall undertake the provision and/or operation of the SCRRA's Metrolink Commuter Rail System, or any part or portion thereof, to agree to be bound by the terms of those arrangements and accept the responsibility with SCRRA for full performance of those conditions. The Contractor agrees to be bound by the terms of those arrangements and accepts the responsibility with SCRRA, as allocated in Sections C. 13.a. and C.13.b. of this Section, for full performance of these conditions.

b.      Other Labor Protection Obligations

SCRRA will assume the cost of any labor protection obligations triggered by: (1) any changes in applicable local, state or federal ordinances or legislation which affect SCRRA's operations and the Contractor or SCRRA's obligations to the Contractor's employees who are providing the Services; or (2) any other affirmative act of SCRRA. In the event of any changes described in clause (1) of the previous sentence, the Contractor will diligently pursue efforts to negotiate an agreement with its employees or their representatives that minimizes the impact of such protection obligation or the cost to SCRRA.

**14.     Railroad Retirement**

Contractor shall, as of the date of Notice To Proceed, have in place a determination from the Railroad Retirement Board that it is an "employer" within the meaning of the Railroad Retirement Act of 1974, 45 U.S.C. 231(a)(1). Contractor shall remain such an employer throughout the term of this Contract.

**15.     Limitations on Covenants Not to Compete**

a.      The Contractor and its Subcontractors hereby confirm their prior representations that they have no existing employment agreements that contain covenants not to compete, or that if they have such covenants in their employment agreements, either the covenants are within the scope of one of the California statutorily recognized exceptions, or the covenants clearly state that they are void and unenforceable in California.

b.      The Contractor agrees that it and its Subcontractors shall not enter into any employment agreements that contain covenants not to compete, unless such covenants are within the scope of a California statutorily recognized exception that allows the covenant, or clearly states the covenants are void and unenforceable in California. Violation of this Section shall be considered a material breach of this Contract and shall entitle SCRRA to take any and all

measures and seek any and all remedies provided by this Contract and as authorized by law and equity.

16.   **Access to Service Property by Third Parties**

a.   General.  SCRRA will have the right to permit Third Party Contractors to enter upon the Service Property subject to compliance with all applicable operating and safety rules. Before any such Third Party is allowed access to the tracks or property adjacent to the tracks that are outside of any yard limits on the Service Property, SCRRA will require that Third Party to execute a permit to enter upon the property and secure railroad protective liability insurance, naming SCRRA, any other railroad, and any contractor which operates or performs services on that portion of the Service Property, as named insureds under the policy, as well as such other insurance as determined by SCRRA. The Third Party shall provide original counterparts of all policies to the insureds. Any such insurance shall remain in effect for one year following completion of the work requiring access to the Service Property.

b.   Notification.  When SCRRA allows a Third Party to have access to a portion of the Service Property as described in Section C.16, SCRRA shall notify the Contractor promptly of the scope, purpose and duration of that Third Party's access.

c.   Encroachments.  All utility crossings, construction, or encroachments upon the Service Property by or for Third Parties must be approved by SCRRA and shall then be coordinated with the Contractor as required. Approval by SCRRA engineering personnel of all construction standards, forms, plan, utility crossings, and encroachments shall be a prior condition to any authorization by SCRRA for work by a Third Party to proceed. Forms and standards may receive a one-time approval until revised. SCRRA reserves the exclusive right to charge a rental or occupancy fee for any such access.

d.   Fees and Charges.  When SCRRA permits a Third Party to have access to the Service Property, SCRRA may collect from such Third Party, fees and charges, including G&A and Overhead, described in this subsection, for services that

Contractor provides to the Third Party. The Direct Costs incurred by the Contractor in providing services to Third Parties shall not be included in the Approved Budget and, as a result, shall be excluded from the sum of actual Direct Costs included in the computations described in Sections D.12.h and D.12.i of this Contract.

### 17.    **Inspection and Audit**

a.    The Contractor shall maintain a complete set of records relating to this Contract in accordance with Generally Accepted Accounting Practices.

b.    SCRRA may, at any time, and at its own cost, conduct or have conducted an inspection or audit of any aspect of the Contractor's performance of its duties and obligations under this Contract. Upon reasonable notice, Contractor shall permit auditors or any other duly authorized agent of SCRRA, the U.S. Department of Transportation, and the Comptroller General of the U.S. to inspect, examine and audit all financial books, records, accounts, work and materials relating to the Contractor's performance under this Contract. SCRRA shall also have the right to reproduce any such books, records and accounts.

c.    All such books, records, accounts and documents shall be maintained and be accessible to SCRRA for three (3) years after completion or termination of this Contract, except in the event of litigation or settlement of claims arising from the performance of this Contract, in which case the Contractor agrees to maintain all records until SCRRA, the FTA Administrator, the Comptroller General, or any of their duly authorized representatives, have disposed of such litigation, appeals, claims or exceptions related thereto. For purposes of audit, the date of completion of the Contract shall be the date of SCRRA's payment for the Contractor's final billing (so noted on the invoice) under this Contract.

d.    Contracts with the Contractor's Subcontractors shall include the above provisions with respect to audits. The term "subcontract" as applies to Federal audit requirements excludes (1) purchase orders not exceeding $10,000, and (2) subcontracts or purchase orders for public utility services at rates established for uniform applicability to the general public.

e.      Any payment by SCRRA shall be subject to a reasonable audit, in accordance with Generally Accepted Accounting Practices, and evaluation of operations, performance, and costs. The scope of such audit and evaluation may be either financial or operational, or both, and may include, in addition to costs and wages reimbursed by SCRRA, the Contractor's controls, practices, and procedures and their effect upon the efficiency and quality of performance provided by the Contractor. Upon completion of the audit, any adjustments required to make any reconciliation required shall be paid or credited, as the case may be, in accordance with the provisions of Section D.12.a. of this Contract.

## 18.    <u>Emergencies</u>

a.      <u>Force Majeure</u>.  Each party shall be excused from performance of any of its obligations to the other hereunder, where such nonperformance is occasioned by any event beyond the non-performing party's control which shall include without limitation, any order, rule or regulation of any federal, state, or local government body, agent, or instrumentality, Acts of God or the public enemy, wars, civil disturbances, fires, floods, earthquakes that disrupt Metrolink service, epidemics, quarantine restrictions, freight embargoes, work stoppage or accident; provided that the party excused hereunder shall use all reasonable efforts to minimize its nonperformance and to overcome, remedy, or remove such event in the shortest practical time. The Contractor shall use its best efforts to undertake and complete the repair, restoration, or replacement of any property which is necessary for the provision of Services in accordance with established train schedules and shall resume normal operations and performance of its other obligations hereunder as soon as reasonably possible.

b.      <u>Operation by SCRRA</u>.  If the Contractor is excused from performing its obligations under this Contract for any of the *Force Majeure* reasons listed above, and such an interruption in the Services continues for five (5) days, SCRRA may provide notice to the Contractor of its intent to begin providing the Services, and may provide those Services itself with its own or other personnel without liability to the Contractor. The Contractor shall cooperate with SCRRA and SCRRA's contractor to effect a seamless transition in such cases.

19.    **Liability and Indemnification**

a.    On a per-"Occurrence" basis (as defined below), Contractor shall indemnify, defend, by counsel assigned by SCRRA, and hold harmless SCRRA, its Member Agencies and their respective officers, employees and agents from any claim, demand, damage, liability, loss, cost and expense, including attorneys' fees, court costs, all defense expenses and costs and all legal, accounting and other expert witness, consulting or professional fees, arising from or related to claims and lawsuits for damages, including bodily injury, death, personal injury or property damage (collectively defined and referred to as "Liability" for purposes of this  Section C.19) arising from or related to Contractor's, its officers', employees', agents' and Subcontractors' negligent acts, errors or omissions in the performance of the Services for the first $500,000 of Liability if such Liability totals $500,000 or more on a per-Occurrence basis. Contractor's duty to defend, indemnify and hold harmless SCRRA, pursuant to this Section C.19 will be satisfied, on a per-Occurrence basis, once Contractor has paid  $500,000 for the defense, settlement, or satisfaction of judgment for claim(s) or lawsuit(s) (including attorneys' fees, court costs, expert witness costs, and all legal expenses associated with defending the matter) arising out of an Occurrence (hereinafter the "per-Occurrence Cap"). If Liability arising from or relating to the negligent acts, errors or omissions of Contractor, its officers, employees, agents and Subcontractors, totals $500,000 or more, on a per-Occurrence basis, SCRRA shall be responsible to defend, indemnify and hold harmless Contractor, its officers, employees, agents and Subcontractors, for all Liability in excess of the per-Occurrence Cap. If Liability arising from or relating to the negligent acts, errors or omissions of Contractor, its officers, employees, agents and Subcontractors, totals less than $500,000, on a per-Occurrence basis, SCRRA shall defend, indemnify and hold harmless Contractor for such Liability. In addition to the per-Occurrence Cap of $500,000, Contractor's maximum indemnity obligation to SCRRA for multiple Occurrences within a Fiscal Year shall be subject

to a "Per-Annum Cap" whereby once the Contractor has satisfied two $500,000 Per-Occurrence Cap payments (i.e., a total of $1,000,000 including payments for judgments, settlements, attorneys' fees, court costs, expert fees and other witness costs, and all legal expenses associated with Occurrences) within a Fiscal Year, the Contractor shall have satisfied its maximum indemnity obligation for the Fiscal Year (the "Per-Annum Cap"), after which SCRRA shall be responsible to indemnify, defend and hold harmless Contractor for all Liability arising from any additional Occurrences within said Fiscal Year.

b. The term "Occurrence" as used in this Section C.19 means an event or accident and the circumstances surrounding same which result in one or more claims or lawsuits for damages, including without limitation, claims for personal injury or property damage. All claims or lawsuits that result from substantially the same event or accident and the circumstances surrounding same shall be deemed one (1) Occurrence.

c.   Notwithstanding any language in this Contract to the contrary, SCRRA shall have no duty to defend, indemnify or hold harmless Contractor or its officers, employees, agents or Subcontractors for any Liability caused by or resulting from the "Willful Misconduct" (as defined below) of Contractor, its officers, employees, agents and/or Subcontractors hired by Contractor. For any Liability caused by or resulting from the "Willful Misconduct" of Contractor, its officers, employees, agents and/or Subcontractors, the Contractor shall defend, indemnify and hold harmless SCRRA, its Member Agencies and their respective officers, employees and agents, and notwithstanding any language in this Contract to the contrary, such indemnity obligation shall not be subject to any cap or limitation of any kind, including without limitation, the per-Occurrence Cap and the Per-Annum Cap.

d.   "Willful Misconduct" means intentional wrongful conduct done either 1) with actual or constructive knowledge that injury to another will probably result, or 2) with a conscious failure to act to avoid the probable

results. Willful Misconduct on the part of the Contractor may be established by the agreement of the Contractor and SCRRA, including as a result of the Dispute Resolution process set forth in Section C.22, or by the determination of a court of competent jurisdiction.

e.      Notwithstanding any language in this Contract to the contrary, SCRRA shall have no duty to defend or indemnify Contractor or its officers, employees, agents or Subcontractors for conduct of the Contractor, its officers, employees, agents or Subcontractors giving rise to punitive or exemplary damage(s). Contractor shall indemnify, defend and hold harmless SCRRA, its Member Agencies and their respective officers, employees and agents from and against claims and Liability for conduct of Contractor, its officers, employees, agents or Subcontractors giving rise to punitive or exemplary damages arising from an act, error, or omission of Contractor, its officers, employees, agents or Subcontractors; notwithstanding any language in this Contract to the contrary, such indemnity obligation shall not be subject to any cap or limitation of any kind, including without limitation, the per-Occurrence Cap and the Per-Annum Cap. Conduct on the part of Contractor causing or resulting in punitive or exemplary damages may be established by agreement of the Contractor and SCRRA, including as a result of the Dispute Resolution process set forth in Section C.22, or by the determination of a court of competent jurisdiction.

f.      Notwithstanding any language in this Contract to the contrary, for any claims, demands, damages, liabilities, losses, costs and expenses that result or arise from injury to, or death of an employee of Contractor or Subcontractor, the Contractor shall defend, indemnify and hold harmless SCRRA, its Member Agencies and their respective officers, employees and agents. Notwithstanding any language in this Contract to the contrary, such indemnity obligation shall not be subject to any cap or limitation of any kind, including without limitation, the per-Occurrence Cap and the Per-Annum Cap.

g.      Notwithstanding any language in this Contract to the contrary, SCRRA shall indemnify, defend and hold harmless Contractor, its officers, agents, employees and Subcontractors, from Liability arising from or related to SCRRA's, its officers', employees' and agents.' negligent acts, errors and omissions.

h.      SCRRA will defend, indemnify and hold harmless Contractor, its officers, employees, agents or subcontractors, from any Liability for any loss or damages to the environment that occurred or existed prior to the date that the Contractor occupies or assumes responsibility or control of each part of the Service Property. Liability for any loss or damages to the environment after such date shall be allocated according to Sections C.19 a. – g. of this Contract.

## 20.   Insurance

### a.    Commercial General Liability Insurance

SCRRA shall maintain for the duration of this Contract commercial general liability insurance in the name of SCRRA and the Contractor. Such insurance shall cover property damage and injury or death persons arising out of SCRRA's Commuter Rail Operations. Such insurance shall not cover any portion of liability of Contractor or its Subcontractors for which Contractor is responsible to indemnify SCRRA as provided in Section C.19. The annual aggregate and per occurrence limits of liability shall be at least $150 million. The insurance contains exclusions and exceptions to coverage. SCRRA may, at its sole discretion, obtain modifications to the insurance and its exclusions and exceptions. SCRRA may, at its sole discretion, self-insure for any part of the insurance coverage.

### b.    Property Insurance

SCRRA will maintain for the duration of this Contract, property insurance covering the real and personal property of SCRRA, including, but not

limited to, railroad rolling stock and equipment, against risks of physical damage usually covered in a railroad property insurance policy.

c.    Automobile Insurance for SCRRA Vehicles

(a)    SCRRA will procure and maintain for the duration of this Contract, automobile insurance covering the liability of Contractor employees and SCRRA arising out of the use of all SCRRA-owned, hired, rented, or leased vehicles used by either party for the SCRRA Commuter Rail Operations, and also covering the physical damage and loss exposure of such vehicles. The automobile insurance shall name Contractor as an additional insured with respect to operations to be performed in connection with the Services.

(b)    Coverage under this policy shall have limits of liability of not less than One Million ($1,000,000) per occurrence, combined single limits, for bodily injury and property damage liability, as well as physical damage limits sufficient to cover the actual cash value of the covered vehicle. SCRRA may, at its sole discretion, obtain modifications to the automobile insurance.

d.    Automobile Insurance for Contractor's Vehicles

Contractor shall provide Insurance Services Office form number CA 0001 (Ed. 1/87) Automobile Liability coverage (code 1 any auto) in the amount of $2,000,000 per accident for bodily injury and property damage for any Contractor-owned, hired, rented or leased, or Contractor-employee owned vehicles used by Contractor in the performance of the Services. If Automobile Liability Insurance or other form with a general aggregate limit is used, either the general limit shall apply separately to this Contract, or the general aggregate limit shall be twice the required occurrence limit. Contractor shall name SCRRA as an additional insured under the policy.

e.    Worker's Compensation, FELA and Employer's Liability

Contractor shall procure and maintain for the duration of this Contract either Worker's Compensation insurance as required by the State of California, or coverage for workers subject to the Federal Employers Liability Act, as applicable. Contractor shall procure and maintain Employer's Liability Insurance with limits of $1 million per occurrence. Contractor may self-insure for any or all of this amount of required coverage. For any self-insured retention, Contractor shall 1) submit a certificate of self-insurance that is acceptable to SCRRA, and 2) deliver to SCRRA, promptly upon SCRRA's request, satisfactory evidence of the availability of sufficient funds and an adequate mechanism to provide reserves created for self-insured claims. SCRRA's approval of the funds and of Contractor's proposed mechanism shall not be unreasonably withheld.

f.    Employment Practices Liability Insurance

Contractor shall procure and maintain for the duration of this Contract Employment Practices Liability insurance with limits of $3 million per occurrence and $3 million aggregate. Contractor may self-insure for any or all of this amount of required coverage. For any self-insured retention, Contractor shall 1) submit a certificate of self-insurance that is acceptable to SCRRA and, 2) deliver to SCRRA, promptly upon SCRRA's request, satisfactory evidence of the availability of sufficient funds and an adequate mechanism to provide reserves created for self-insured claims. SCRRA's approval of the funds and of Contractor's proposed mechanism shall not be unreasonably withheld.

g.   Insurance Policies

The insurance required to be provided by Contractor shall be with insurance companies authorized to do business in the state of California, and acceptable to SCRRA.

h.   Period of Coverage

Contractor's insurance shall be in force prior to the execution of the Contract. Coverage shall apply to any liability arising on or after the effective date of Notice to Proceed, and shall extend beyond the date the Contract expires or is terminated, with respect to any occurrence occurring or liability arising during the term of the Contract, including the Option if exercised.

21.   **Claims Handling and Defense**

a.   SCRRA will undertake the investigation, defense, and settlement of all claims against the Contractor or SCRRA arising out of the SCRRA Commuter Railroad Operations including any claims that are for an amount less than or equal to Contractor's Per-Occurrence Cap and Per-Annum Cap, if applicable, except for claims as addressed in Sections C.19, c., e., and f.

b.   The Contractor shall have the right of prior approval of that part of any settlement where the Contractor is to pay damages or indemnity payments. However, should Contractor refuse to approve a settlement recommendation by SCRRA, and the ultimate defense costs and settlement or judgment costs exceed the recommended settlement amount, Contractor shall, notwithstanding any language in this Contract to the contrary, pay all Liability (as used in Section C.19) sums in excess of the recommended settlement amount. The Contractor shall promptly notify SCRRA of any incident, accident or injury of which Contractor, its officers, employees, agents or Subcontractors have knowledge associated with the provision of the Services.

c.    The Contractor shall give notice to SCRRA within ten (10) days of its actual receipt of any claim or complaint for which SCRRA is responsible under the provisions set forth in this Contract. If the Contractor fails to provide SCRRA with timely notice as required herein, SCRRA's obligations to indemnify and defend the Contractor shall exclude any increased costs or increased damages incurred solely as a result of such failure.

**22.**    **Dispute Resolution**

a.    <u>Settlement of Disputes</u>.  Both of the parties hereto shall make every reasonable effort to settle any dispute arising out of this Contract by discussion between the parties representatives. The parties shall make every reasonable effort to meet within thirty (30) days to discuss disputes arising under Section D.12.a. if the parties so agree, they may involve a disinterested person experienced in railroad operations, or an accountant if appropriate, to render his or her objective advice and opinions, which shall be advisory only and not binding unless the parties agree in writing to be bound by his or her judgment in a particular instance.

b.    <u>Controversies Subject to Mediation or Independent Audit</u>.  Any claim or controversy between SCRRA and the Contractor which cannot be resolved by the parties concerning the interpretation, application, or implementation of this Contract shall be submitted to a mediator or independent auditor pursuant to the provisions of this Section, provided, however, that no such claim or controversy shall be submitted to a mediator or independent auditor until it has first been submitted to SCRRA's Operations Director and the Contractor's General Manager for resolution between them.

c.    <u>Mediator/Independent Auditor</u>

(1)    SCRRA and Contractor shall jointly select a mediator or independent auditor within twenty-one (21) calendar days after the submittal of a dispute under this Subsection. The mediator or independent auditor shall be properly qualified in the required areas of public sector finance and/or the surface transportation industry, and have

experience in the analysis of transportation operating and capital costs and revenues and in transportation operational issues.

(2)     The mediator or independent auditor shall meet with the parties within twenty-one (21) calendar days after his or her selection to attempt to mediate and resolve the dispute. If mediation efforts are unsuccessful after sixty (60) days, the mediator or auditor shall, after consideration of the parties' positions and written submittals (if so requested), issue written recommendations for resolution of the dispute. Any such written submittals shall be postmarked by the tenth calendar day after the parties' last meeting with the mediator or auditor. The recommendations of the mediator or independent auditor shall be issued within thirty (30) calendar days after the later of the conclusion of mediation or the submittal of written positions (if so requested). All meetings and proceedings shall be held in Los Angeles County, California, at a time and location acceptable to both parties.

d.     <u>Pending Resolution</u>.   Except as provided specifically in other sections of this Contract, while such mediation is proceeding, the business, the operations to be conducted, physical plant to be used, and compensation for Services under this Contract, to the extent that they are the subject of such controversy, shall continue to be transacted, used and paid in the manner and form existing prior to the arising of such controversy, unless the mediator/independent auditor shall make a preliminary ruling to the contrary.

e.     <u>Cost of Mediation</u>.   Each party hereto shall bear the costs and expenses incurred by it in connection with such mediation. The cost of the mediator or independent auditor shall be shared equally between the parties.

f.     <u>Enforcement</u>.   If a dispute is not resolved through mediation, either party may pursue available legal remedies in a California State or Federal court of competent jurisdiction.

23.   **Termination**

a.   Termination for Cause by SCRRA.  SCRRA may, at its sole discretion, terminate this Contract, in whole or in part, upon the occurrence of a material breach of this Contract, which shall include but are not limited to, the following:

   (1)   The Contractor's refusal or failure to perform any of the Services under this Contract, which is not excused by any other provisions of this Contract.

   (2)   The Contractor's assignment or subcontracting of any of its obligations under this Contract without required prior written approval of SCRRA.

   (3)   The Contractor's insolvency or inability to meet its obligations, or the filing of an involuntary petition in bankruptcy against it, or the adjudication that it is bankrupt, or the Contractor's making an assignment for the benefit of creditors, filing a petition for an arrangement, composition or compromise with its creditors under any applicable laws, or having a trustee, receiver, or other officer appointed to take charge of its assets.

   (4)   The Contractor's failure to comply with a valid and applicable law, ordinance, rule, regulation or order of any legal authority that has a material impact on the Contractor's ability or fitness to carry out its obligations to provide the Services under this Contract.

   (5)   The Contractor's violation of the limitations set forth in Section C.15 on covenants not to compete in their employment agreements.

   (6)   A work stoppage that causes an impairment in the operation of the Services by the Contractor for a period of five (5) consecutive days or more.

(7)     Determination by SCRRA that continued provision of Services by the Contractor shall result in imminent danger to the public health or safety. SCRRA may make such a determination if SCRRA has ordered the Contractor to correct, cure or otherwise cease providing all or a portion of the Services under this Contract for public health or safety reasons and the Contractor has been unable within fifteen (15) days of such order to remedy the cause for the order when the cause was a factor within the Contractor's control.

(8)     A determination by an independent certified public accountant, based on a request for assurance pursuant to Section B.23, that the Contractor does not have the financial ability to undertake and fulfill its obligations under this Contract.

b.   <u>Termination for Cause by Contractor</u>.  The Contractor may, at its sole discretion, terminate this Contract upon the occurrence of a material breach of this Contract by SCRRA, which shall include, but not be limited to, the failure of SCRRA to make two or more monthly payments.

c.   <u>Termination for Convenience</u>.  SCRRA may terminate this Contract no later than thirty (30) days after the occurrence of any event that makes it impossible or unsuitable for the Contractor to continue in the performance of the Services, which events may include but are not limited to:

(1)     The abolition of SCRRA or merger of SCRRA with another entity;

(2)     Legislation or court decision requiring that another entity operate the Services;

(3)     Funding is no longer available for the Services;

(4)     Secession from SCRRA of a Member Agency, or failure of a Member Agency to fund Services within its jurisdiction, where the secession or failure would render impossible the efficient provision of the Services, and

modification of the Services provided and of the Approved Budget will not be sufficient to account for the loss to SCRRA and to the commuter rail system of that county's participation;

    (5)    Patronage on trains included in the SCRRA Commuter Railroad Operations falls so short of projections that the Service is not deemed cost effective with respect to the transportation and air quality goals of the region; or

    (6)    Legislation, regulation or court decision places on SCRRA or on the operation of the Services, financial or operations burdens which are so great as to degrade service quality below acceptable levels, or imposes unforeseen and excessive, in SCRRA's sole discretion, liabilities on SCRRA, or raises costs to a level where costs are deemed to exceed benefits.

d.    <u>Termination Procedure</u>.  Upon the occurrence of one of the events described in the foregoing Section C.22.a., b., and c., the party electing to terminate the Contract shall notify the other party in writing of its election to terminate and the basis for that action. The termination shall be effective no later than ten (10) days after the date of notice, except that a termination for cause shall not become effective if the other party shall have taken action to substantially remedy the default within that ten (10) day period.

e.    <u>Rights and Obligations upon Termination</u>

    (1)    Upon termination for cause, SCRRA shall have the right to arrange for provision of the Services by another contractor. The Contractor shall cooperate with SCRRA and SCRRA's contractors to effect a seamless transition in such cases. Failure to cooperate with SCRRA or SCRRA's contractors shall be subject to Section D.11.

    (2)    If SCRRA has terminated this Contract for cause pursuant to Section C.22, then the Contractor shall cooperate fully with SCRRA in arranging for a transfer of the employees currently working on

providing the Services either to SCRRA or to a replacement contractor or such other Third Party as SCRRA may determine at SCRRA's sole discretion.

(3)   Upon termination for cause or convenience, the Contractor shall: (1) immediately discontinue all services affected (unless the notice directs otherwise), and (2) deliver to SCRRA all data, drawings, specifications, reports, estimates, summaries and such other information and material as may have been accumulated by the Contractor or its Subcontractors in performing this Contract, whether completed or in process.

(4)   The Contractor shall bear any incremental actual cost (excluding G&A and Overhead or Profit) incurred by either SCRRA or the Contractor that is attributable to termination for cause by SCRRA.

(5)   SCRRA will bear any incremental cost incurred by either SCRRA or Contractor that is attributable to termination for cause by Contractor.

(6)   SCRRA will pay the following termination costs to the Contractor:

(a)   Reasonable cost of settling and paying claims arising out of the termination of Services under subcontracts or purchase orders;

(b)   Reasonable costs determined at the time of termination which are incurred pursuant to the performance of any specific written instructions received from SCRRA concerning such termination; and

(c)   Other reasonable costs incidental to such termination of Services.

(7)   No payment will be made for lost profit, unearned anticipatory profit, or consequential damages.

(8)   If, after the notice of termination for failure to fulfill Contract obligations, it is determined that the Contractor has not so failed, the

termination shall be deemed to have been effected for the convenience of SCRRA. In such event, adjustment shall be made as provided in Section C.22.e. of this Contract.

(9)     No termination of this Contract shall in any way diminish or otherwise affect SCRRA's obligation to pay for any Services rendered, or to fulfill any other obligations incurred prior to the effective date of the termination. The rights and remedies of the parties provided in this section are in addition to any other rights and remedies provided by law or under this Contract.

(10)    Upon completing this Contract or at such earlier dates as may be fixed by SCRRA: (1) the Contractor shall prepare and submit a final inventory list of all SCRRA Property which includes the property's description, location and conditions; (2) the Contractor shall prepare for shipment, and deliver F.O.B. destination, SCRRA Property as may be directed or authorized by SCRRA; and (3) the Contractor shall cooperate with SCRRA and SCRRA's contractors to effect a seamless transition to succeeding operator.  Failure to cooperate with SCRRA or SCRRA's contractors shall be subject to Section D.11.

## 24.     Use of Metrolink Logo

The Contractor shall obtain written authorization from SCRRA prior to using the "METROLINK" logo or name on any durable good or garment, in any promotional literature, or for any other purpose.

## 25.     Use of SCRRA's Name by the Contractor

SCRRA shall review all SCRRA-related copy proposed for use by the Contractor for advertising or public relations purposes prior to publication. The Contractor shall not allow SCRRA-related copy to be published in its advertisements and public relations programs prior to receiving SCRRA's written approval. The Contractor shall ensure that all published information is factual and that it does

not, in any way, imply that SCRRA endorses the Contractor's firm, service and/or product(s).

26. **Governing Law**

The validity of this Contract and of any of its terms and provisions, as well as the rights and duties of the parties hereunder, shall be governed by the laws of the state of California. By entering into the Contract, the Contractor consents and submits to the jurisdiction of the Courts of the state of California over any action at law, suit in equity, and/or other proceeding that may arise out of this Contract.

27. **Compliance with Rules and Regulations**

a.   General.  The Contractor shall be responsible for compliance with the provisions, and successor provisions, of all applicable regulations of FRA and other entities with regulatory authority over the rail industry as well as other applicable federal, state and local laws regarding the provisions of the Services as they apply to the matters that are within the scope of this Contract. Unless SCRRA has withheld from the Contractor the funding specifically requested by the Contractor to remedy a violation or other authority to remedy it, the Contractor shall also indemnify, protect and defend and save SCRRA and its officers, agents and employees harmless from all fines, Liquidated Damages and liabilities imposed under such laws and regulations regarding the Services.

b.   Changes in Law.  If any changes are made to the law affecting the Services as described in this Contract between the date of submission of the Contractor's Cost Proposal and during the term (including options if exercised) and such changes have an impact on the Contractor's cost to provide the Services, budget shall be amended pursuant to Section D.5.

28. **Compliance with Lobbying Policies**

The Contractor agrees that if it is a Lobbyist Employer or if it has retained a Lobbying Firm or Lobbyist, as such terms are defined by SCRRA in its Ethics

Policy, it shall comply or ensure that its Lobbying Firm and Lobbyist complies with SCRRA's Ethics Policy.

If the Contractor (Lobbyist Employer) or its Lobbying Firm or Lobbyist fails to comply, in whole or in part, with SCRRA's Ethics Policy, such failure shall be considered a material breach of this Contract and SCRRA shall have the right to immediately terminate or suspend this Contract.

29.   **Public Records Act**

a.      All records, documents, drawings, plans, specifications, and all other information relating to the conduct of SCRRA's business, including information submitted by the Contractor, shall become the exclusive property of SCRRA and shall be deemed public records.  Said information shall be subject to the provisions of the California Public Records Act (Government Code §6250 *et seq.*).  SCRRA's use and disclosure of its records are governed by this Act.

b.      SCRRA will accept information clearly and prominently labeled "TRADE SECRET", "CONFIDENTIAL", or "PROPRIETARY", as determined by the Contractor in accordance with the Act.  SCRRA will endeavor to inform the Contractor of any request for the disclosure of such information.  Under no circumstances, however, will SCRRA be responsible or liable to the Contractor or any other party for the disclosure of any such labeled information, whether the disclosure is required by law or a court order or occurs through inadvertence, mistake, or negligence on the part of SCRRA or its officers, employees, and/or Contractors.

c.      SCRRA will not advise the Contractor as to the nature or content of documents entitled to protection from disclosure under the California Public Records Act, including interpretations of the Act or the definition of "Trade Secret".  The Contractor, and each of its Subcontractors, shall be solely responsible for all determinations made under the Act, and for clearly and prominently marking each and every page or sheet of information with "TRADE SECRET", "CONFIDENTIAL", or "PROPRIETARY" as it determines to be appropriate.

Contractor shall contact its own legal counsel concerning the California Public Records Act and its applicability to the Contractor's own circumstances.

d.      In the event of litigation concerning the disclosure of any information submitted by the Contractor, SCRRA's sole involvement will be as a stakeholder, retaining the information until otherwise ordered by a court. The Contractor, at its sole expense and risk, shall be fully responsible for all fees and costs for prosecuting or defending any action concerning the information, and shall indemnify and hold SCRRA harmless from all costs and expenses including attorneys' fees, in connection with such action.

## 30.   **Prohibited Interests**

a.      The Contractor warrants that no person or agent has been specifically employed or retained to solicit or obtain the Contract in exchange for a contingent fee, except a bona fide employee or agent. A breach or violation of this warranty shall be considered a breach of this Contract pursuant to the Section C.22.a., entitled "Termination for Cause by SCRRA". In addition to any rights and remedies otherwise provided for in the Contract or by law, SCRRA may deduct from the Contract Price or consideration, or otherwise recover, the full amount of the contingent fee.

b.      "Bona fide agent" as used in this Section, means an established commercial or selling entity that is maintained by the Contractor for the sole purpose of securing business and that neither exerts nor proposes to exert improper influence to solicit or obtain SCRRA Contract(s) nor holds itself out as being able to obtain any SCRRA Contract(s) through improper influence.

c.      "Bona fide employee", as used in this Section, means a person who is employed by the Contractor and subject to the Contractor's supervision and control as to time, place, and manner of performance and who neither exerts nor proposes to exert improper influence to solicit or obtain SCRRA Contract(s) nor holds itself out as being able to obtain any SCRRA Contract(s) through improper influence.

d.     "Contingent fee", as used in this Section, means any commission, percentage, or other sum that is payable only upon success in securing an SCRRA Contract.

e.     The Contractor agrees that, for the term of this Contract, no member, officer, or employee of SCRRA, or of a local public body during his/her employment and for one (1) year thereafter, shall have any interest, direct or indirect, in this Contract, or to any benefit arising thereof.

## 31.    Whistleblower Requirements

The Contractor shall not adopt any rule, regulation or policy preventing an employee from disclosing information to a government or law enforcement agency, where the employee believes the information discloses violation or noncompliance with a federal, State or local regulation; nor shall the Contractor retaliate against an employee for taking such actions.

## 32.    Notification of Employment of SCRRA Board Members/Alternates and Employees

To ensure compliance with SCRRA's Ethics Policy, the Contractor shall provide written notice to SCRRA disclosing the identity of any individual who Contractor desires to employ or retain under a contract, and who (1) presently serves as a Board Member/ Alternate or an employee of SCRRA, or (2) served as a Board Member/Alternate or an employee of SCRRA within the previous twelve (12) months of the date of the proposed employment or retention by the Contractor. The Contractor's written notice shall indicate whether the individual will be an officer, principal or shareholder of the entity and/or will participate in the performance of this Contract.

## 33.    Severability

In the event that any term, covenant, condition, or provision of this Contract or the application thereof to any person or circumstance is found to be invalid or unenforceable in any respect, the remainder of this Contract or the application of

such term or provision to persons or circumstances shall nevertheless be binding with the same effect as if the invalid or unenforceable provision were originally deleted.

This Section shall not apply where the term, covenant, condition, or provision or part thereof that is declared invalid or unenforceable is so fundamental to the Contract that the remainder of the Contract, standing alone, does not represent a meeting of the minds of the parties, or substantially alters the rights or obligations of either party under the Contract.

34.    **Waiver**

None of the provisions of this Contract shall be considered waived by either party unless such waiver is reduced to writing and signed by the party to be charged. No such waiver shall be construed as a modification of any of the provisions of this Contract or as a waiver of any past or future default or breach hereof, except as expressly stated in the waiver. The failure of either party to insist at any time upon the strict observance of any of the provisions of this Contract, or to exercise any right or remedy in this Contract, shall not impair any such right or remedy or be construed as a waiver or relinquishment thereof.

35.    **Entire Contract**

This Contract, and any attachments, exhibits, or other documents incorporated herein by inclusion or by reference, embody the entire agreement between SCRRA and the Contractor related to the Services. No oral statement or prior written matter will have any force or effect. The parties hereby acknowledge that they are not relying on any representations or agreements other than those contained in this Contract. This Contract shall not be modified except in writing subscribed to by both parties.

36.    **Notices and Contact Information**

Any notice legally required to be given by one party to another under this Contract shall be in writing, dated, and signed by the party giving such notice or

by a duly authorized representative of such party. Any notice shall not be effective, for any purpose whatever, unless it is transmitted by the legally required method (if any), or by United States Postal Service Registered Mail, or by a bonded and guaranteed courier/delivery service. All notices to the parties will be enclosed in a sealed envelope and transmitted to the respective contact person and address below.

|  | SCRRA PROJECT MANAGER | CONTRACTOR |
|---|---|---|
| Contact Name | John Kerins |  |
| Contact Title | Director, Operations |  |
| Address | 2558 Supply Street |  |
|  | Bldg. A |  |
| City, State, Zip | Pomona, CA 91767 |  |
|  |  |  |
| Telephone | 909-593-0292 |  |
| Facsimile | 909-596-9837 |  |
| Mobile/Cell | 213-200-1450 |  |
| E-mail | kerinsj@scrra.net |  |

|  | SCRRA CONTRACT ADMINISTRATOR |
|---|---|
| Contact Name | Linda Ford-McCaffrey |
| Contact Title | Sr. Contract Administrator |
| Address | 700 South Flower Street |
|  | 26th Floor |
| City, State, Zip | Los Angeles, CA 90017 |
|  |  |
| Telephone | 213-452-0253 |
| Facsimile | 213-452-0425 |
| Mobile/Cell | 805-427-1233 |
| E-mail | fordmccaffreyL@scrra.net |

37. **Transportation of Contractor Employees**

SCRRA shall permit crews employed by the Contractor to travel at no charge on SCRRA trains as necessary to transport such crews between SCRRA stations or facilities. Such free transportation shall be solely for the purpose of traveling between locations on the Service Property where such crews are performing or will perform Services under this Contract, including between the point where an employee signs on or off for the day and that employee's work location for that day, and will not be for the purpose of commuting between a crew members' residence and the location at which he or she will begin or end his or her work assignment for that day.

38. **Transition Process**

a.    SCRRA may be required to conduct a solicitation process prior to the expiration or termination of this Contract in order to select a Contractor with which SCRRA will enter into a new Operator  Services contract ("Successor Contractor") to provide Services upon expiration or termination of this Contract. Contractor may be the Successor Contractor. SCRRA requires that Contractor provide to prospective proposers all information necessary to prepare technical and cost proposals in response to SCRRA's solicitation. Contractor shall fully cooperate with SCRRA and prospective Successor Contractors that are participating in the solicitation process.

b.    Document Review:  Contractor shall make available to prospective Successor Contractors for review at a location(s) determined by SCRRA copies of any and all documents and records as SCRRA shall request. Issues regarding confidential or proprietary information shall be addressed as specified in Section C. 29. SCRRA will reimburse Contractor for the reasonable reproduction costs incurred in connection with this Section as specified in Section D. 5.

b.     Inspection of Service Property:  Prospective Successor Contractors shall have access to the Service Property and Equipment during the solicitation process for the purpose of inspection so as to understand, without limitation, the operations and conditions. SCRRA shall schedule and conduct site visits by prospective Successor Contractors. Contractor shall fully cooperate with SCRRA during such site visits and shall make available any personnel and records as SCRRA requests. Contractor shall permit prospective Successor Contractors to question Contractor personnel regarding any and all aspects of the Operator Services, Service Property and Equipment, and to examine requested records.

c.     Transition Plan: The following obligations apply in the event that Contractor is not selected as the Successor Contractor.

(1)    Successor Contractor Access: Contractor shall provide the Successor Contractor full and complete access to the Service Property and Equipment in accordance with this Contract. Access will commence up to eight (8) months prior to the expiration or termination of this Contract in conjunction with the Successor Contractor's mobilization period. Throughout this period, the Successor Contractor may have one or more representatives on site until the expiration or terminaton of this Contract.

(2)    Employment of Existing Personnel: Contractor shall provide a list, and resumes, if available, of all its then-current personnel to SCRRA and the Successor Contractor at least six (6) months prior to the expiration or termination of this Contract. Contractor shall allow the Successor Contractor to interview any Contractor personnel for employment purposes. Contractor agrees that the Successor Contractor has the right to offer employment to any of Contractor personnel that are on the list prior to the expiration or termination of this Contract.

d.      Turnover Requirements:

(1)     Records, Manuals, Reports, and Databases: A minimum of six (6)
months prior to the expiration of this Contract, or in the event of
Termination pursuant to Section C. 23, within thirty (30) days of
Contractor's receipt of SCRRA's notice of intent to terminate this
Contract, Contractor shall provide to SCRRA a complete and
accurate inventory of all documents related to Metrolink Operator
Services, including but not limited to records, reports, databases, and
manuals.

(2)     Support Property, Office Equipment and Supplies: A minimum of six
(6) months prior to the expiration of this Contract, or in the event of
Termination pursuant to Section C. 23, within thirty (30) days of
Contractor's receipt of SCRRA's notice of intent to terminate this
Contract, Contractor shall provide to SCRRA a complete and
accurate inventory of all Support Property, office equipment and
supplies related to Metrolink Operator Services. Support Property
includes equipment, tools, machines, computer equipment, software,
non-revenue vehicles used in the provision of the Operator Services.
Immediately upon expiration or termination of this Contract,
Contractor shall relinquish to SCRRA all Support Property, office
equipment and supplies used in performing the Operator Services.
Office equipment shall be in good working condition.

(3)     Permits: Any and all existing permits held by Contractor and required
for providing Operator Services for SCRRA shall be transferred to the
Successor Contractor as of the date the Successor Contractor begins
providing Operator Services.

(4)   Contract Close-out Requirements: SCRRA may conduct inspections and/or audits as necessary to determine the status of the requirements for close-out of this Contract. Within thirty (30) days of such inspection or audit, SCRRA will deliver to Contractor a list of items where deficiencies were found ("Punch List"). Contractor shall correct such deficiencies within thirty (30) days of receipt of the Punch List. SCRRA may exercise any rights or remedies available under this Contract, if it is determined by SCRRA that Contractor has not complied with the provisions of this Section.

[REMAINDER OF PAGE LEFT BLANK INTENTIONALLY]

**D.     COSTS, BUDGETING, AND COMPENSATION**

  1.     <u>**Costs**</u>

  a.     <u>Direct Costs</u>

    (1)    The Direct Costs billable to SCRRA shall be those incurred directly in the provision of the Services as described in Appendix 16.

    (2)    All covered employee labor hours billed for provision of the Services under this Contract shall be at the actual hourly rates paid or the proposed hourly rates, whichever is less, by the job category as stated in the cost Proposal and shall be subject to the annual budget process as described in Section D.2.

    (3)    All exempt employee labor billed for provision of the Services shall be at the employee's actual salary, provided that the salary billed for each employee shall not exceed the amount stated in the Cost Proposal for each applicable Fiscal Year, subject to the Annual Budget Process.

    (4)    Parts, materials, subcontracts, travel, and non-labor costs billed for provision of the Services under this Contract shall reflect the actual cost paid by the Contractor. These costs will be subject to a Markup of two and three-quarters percent (2.75%) of costs including sales tax, and are not subject to G&A and Overhead and Profit.

  b.     <u>Employee Benefit and Injury Costs</u>.  Employee benefit and injury costs as further described in Paragraph 2 of Appendix 16 are billable to SCRRA as Direct Costs and shall be applied as a rate over appropriate employee labor costs. Benefit rates proposed in Year 1 of the Cost Proposal shall remain fixed for the duration of Year 1 of this Contract. Employee benefit and injury costs for subsequent years of this Contract shall be based upon annual rates included in the Cost Proposal for the applicable Fiscal Year, corporate billing rates specific to the Services, or audited actual rates, whichever is less.

c.   General and Administrative (G&A) and Overhead

    (1)    The costs and expenses listed in Appendix 17 shall not be included in the Direct Costs but shall be included in G&A and Overhead. The amount of G&A and Overhead payable in a Fiscal Year shall be paid as a percentage of the actual Direct Labor Costs incurred subject to Section D.1.a., and shall be included in the Approved Budget for each Fiscal Year. G&A and Overhead rates proposed in Year 1 of the Cost Proposal shall remain fixed for the duration of Year 1 of the Contract. Rates for subsequent years of this Contract shall be based upon annual rates included in the Cost Proposal for the applicable Fiscal Year, corporate billing rates specific to the Services, or audited actual rates, whichever is less.

    (2)    SCRRA will pay G&A and Overhead on actual Direct Labor Costs incurred in providing any Services in addition to those provided for in the Approved Budget.

d.   Profit

    (1)    Profit shall be paid based upon the annual rates included in the Cost Proposal for the applicable Fiscal Year and shall be paid as a percentage of the actual Direct Labor Costs incurred subject to Section D.1.a. and included in the Approved Budget; excluding G&A and Overhead, as amended during a Fiscal Year subject to reductions in profit resulting from liquidated damages as described in Section 11.

    (2)    SCRRA will pay profit on actual Direct Labor Costs excluding G&A and Overhead incurred in providing any Services in addition to those provided for in the Approved Budget.

2.     **Annual Budget Process**

a.     Preparation of Proposed Service Plan

Prior to January 1 of each year during the term of the Contract, SCRRA will prepare and submit to the Contractor a Service Plan for the next Fiscal Year, which shall include a detailed description of the Services SCRRA expects the Contractor to provide in the next Fiscal Year, and will form the basis for the Approved Budget. SCRRA reserves the right to exclude from the Service Plan any aspect of SCRRA Commuter Railroad Operations, which SCRRA has augmented or supplanted pursuant to Section C.7. including, but not limited to, any Services that may have been performed by Contractor at any time.

b.     Preparation of Proposed Budget

(1)    No later than February 1 of each year, or thirty (30) days after delivery of a Service Plan, during the term of the Contract, the Contractor shall prepare and submit to SCRRA a proposed budget, in a format to be determined by SCRRA, for provision of the Services described in the Service Plan for the next Fiscal Year. The proposed budget shall reflect actual operations and levels of Services being provided during the then current Fiscal Year, except as modified by the Service Plan for the coming Fiscal Year. The proposed budget shall:

(a)    Be consistent with the Service Plan;

(b)    Be based upon the fixed labor rates proposed for Year 1, and appropriately inflated rates for subsequent years for covered employees:

(c)    Be based upon actual annual salaries for exempt employees provided that the actual salaries included in the Approved Budget shall not exceed the maximum annual salary proposed in the Contractor's cost proposal;

(d)    Include employee benefit and injury costs;

Contract No. OP123-05                      72                         Awarded: 11.12.04
Conformed

Page 85.

(e) List all positions, both exempt and covered; whose time will be chargeable directly during the coming Fiscal Year;

(f) Specify Direct Costs, Markup, G&A and Overhead and Profit projected for the Fiscal Year; and

(g) Specify the assumptions used in developing the proposed budget.

(3) The proposed budget shall not include the Direct Costs the Contractor may incur in clearing wrecks, operating special trains, assisting Third Parties who are permitted access to the Service Property, or any extra work determined by SCRRA to be outside scheduled operations.

c. <u>Additional Information to Accompany Proposed Budget</u>

At the same time that it prepares and submits the proposed budget, the Contractor shall submit to SCRRA the following costs for which SCRRA will set aside funds during the next Fiscal Year: the projected costs to SCRRA of all incentives due Contractor's employees, and detailed backup itemizing each Controllable Item contained in the proposed budget.

d. <u>SCRRA Review of Proposed Budget</u>

By no later than March 1, or thirty (30) days after the Contractor submits its budget for each year, whichever is later, SCRRA will present to the Contractor its comments on the proposed budget and all other proposals the Contractor has provided pursuant to Sections D.2.b. and c., above, which will specify the item(s), if any, to which SCRRA objects, and the basis for each objection. SCRRA and the Contractor shall promptly negotiate with respect to any items to which SCRRA objects and shall complete the negotiation process by no later than April 1 of each year. The SCRRA Board of Directors will review the proposed budget by no later than May 1.  In the event the SCRRA Board of Directors does not approve the proposed budget by the June meeting, SCRRA will provide to the Contractor by the June meeting, a copy of all documents upon which the parties have reached agreement, and a copy of all documents on which all or part is not yet agreed upon, along with a precise statement of the items that remain

unresolved. The Contractor shall provide SCRRA staff with a statement of the Contractor's position on any unresolved items by June 30 and, unless otherwise agreed, both SCRRA's statement and Contractor's statement shall be submitted to the SCRRA CEO by July 1.

e.    Operations Without Budget

If the Contractor and SCRRA are unable to agree on a budget by the beginning of the next Fiscal Year, SCRRA will make monthly payments to the Contractor pending completion of the negotiations, which equal the monthly direct costs incurred and billed, in accordance with the prior year's Approved Budget. When the parties agree on an Approved Budget, the next monthly payment shall be adjusted to reconcile the difference between the amounts already paid for that Fiscal Year and the actual costs incurred for work performed under the Approved Budget.

3.    **Monitoring Adherence to the Approved Budget**

No later than twenty (20) days after the end of each month, the Contractor shall provide SCRRA with a statement showing its performance during that month in comparison with the Approved Budget amount for that month and for the Fiscal Year to date, along with a comprehensive and detailed explanation of the reasons for the variance (if any) and of the actions the Contractor shall take, subject to SCRRA's approval, to bring any continuing variance back into conformity with the Approved Budget. To comply with this section, the Contractor shall provide the monthly reports described in Appendix 10. In addition, on January 20 of each year, the Contractor shall provide to SCRRA a forecast of expected actual expenses and variances for the remainder of the Fiscal Year.

4.    **Budget Amendment for Unforeseen Events**

Upon the occurrence of events that were not reasonably foreseeable at the time of approval of the Approved Budget, which will cause a material change in the Service Plan used in developing the Direct Costs, G&A and Overhead and Profit included in the Approved Budget, the parties shall agree upon amendments to the Approved Budget for that Fiscal Year to reflect those changes. The procedure for agreeing upon amendments shall be that set forth in this section for revising a budget for changes in service levels.

5.    **Budget Amendment for Added Services**

Upon receipt of a written request from SCRRA to perform added tasks not included in the Approved Budget in effect at the time, the Contractor shall, within five (5) days, prepare and submit a cost estimate for performing the work. The parties shall agree upon amendments to the Approved Budget to reflect those changes, and shall commence with the added work within a time frame to be agreed to by the parties. The procedure for agreeing upon amendments shall be that set forth in this section for revising a budget for changes in service levels.

If the Contractor is unable to complete the added work within the Fiscal Year in which the funds were approved, the Contractor shall reduce the Approved Budget including Direct Costs, Markup, G&A and Overhead and Profit by deducting any unexpended funds authorized pursuant to this subsection.

6.    **Budget Revisions for Cost Overruns**

If Direct Costs, Markup, G&A and Overhead and Profit are projected to exceed the Approved Budget in effect at the time, by any amount more than One Hundred and Fifty Thousand Dollars ($150,000) or one percent (1%), whichever is less, the Contractor shall submit a proposed revised budget to SCRRA within ten (10) days, and the parties shall promptly meet to negotiate a revised Approved Budget for the remainder of the Fiscal Year. Budget revisions may be

subject to approval of the SCRRA Board of Directors. If, and to the extent, the Approved Budget is changed due to cost overruns unrelated to changes in the level of Services pursuant to Section C.7., the existence of unforeseen circumstances as provided in Section D.4., or for added work performed at the request of SCRRA as provided in Section D.7., Markup, G&A and Overhead and Profit payable pursuant to Sections D.1.c. and d., shall not increase.

7. **Budget Revisions Required Due to Excessive Cost Overruns**

a.   If during a Fiscal Year, Direct Costs, Markup, G&A and Overhead and Profit are projected to exceed the Approved Budget in effect at the time, by any amount more than One Hundred and Fifty Thousand Dollars ($150,000) or one percent (1%), whichever is less, the parties shall meet to discuss the circumstances that have caused the cost overrun. Contractor shall submit a proposed revised budget to SCRRA within ten (10) days, and the parties shall promptly meet to negotiate a revised Approved Budget for the remainder of the Fiscal Year. Budget revisions may be subject to the approval of the SCRRA Board of Directors. If, and to the extent, the Approved Budget is changed due to cost overruns unrelated to changes in the level of Services pursuant to Section C.7., the existence of unforeseen circumstances as provided in Section D.4., or for added work performed at the request of SCRRA as provided in Section D.7.:

(1)   The Contractor shall remain obligated to pay the amount described in Section D.12.h.;

(2)   G&A and Overhead and Profit payable pursuant to Section D.1.c. and d. shall not increase.

b.   If the parties are unable to agree upon a revised Approved Budget for provision of the Services for the remainder of the Fiscal Year, the parties will meet to agree upon reductions or other modifications in the Services that will permit operation for the remainder of the Fiscal Year within the operating funds available to SCRRA for the Services. If SCRRA fails to respond promptly to a request by the Contractor for a budget change, or if the parties are unable to agree upon changes in the Services required to permit operation within the operating funds

available to SCRRA for the Services, the matter shall be promptly referred to dispute resolution pursuant to Section C.21., to determine what (if any) reduction is required in order to operate the Services for the remainder of the Fiscal Year within the funds available to SCRRA for payment to the Contractor for provision of the Services. When a dispute is referred for dispute resolution pursuant to this subsection, the parties' prior attempts to resolve the matter shall be deemed to satisfy the requirements of Section C.21.b. While the dispute resolution is pending, the Contractor shall continue to operate the Services at the existing level until the parties agree upon a change in the level of Services.

8.    **Procedure for Changes in Services or Service Levels**

a.    Procedure

(1)    SCRRA may require at any time, upon reasonable notice, that the Contractor provide modified or additional Services on existing routes. For the purposes of this Contract, the following routes shall be considered "existing routes:"

- Los Angeles Union Passenger Terminal (LAUPT) to San Bernardino
- LAUPT to Oceanside
- LAUPT to Lancaster
- LAUPT to Montalvo
- LAUPT to Riverside (via UPRR)
- LAUPT to Riverside (via BNSF)
- San Bernardino to Oceanside (the Inland Empire-Orange County route).

(2)    Subject to agreement with respect to the budget and necessary special conditions (if any) in connection with the proposed Modified Services, the Contractor shall begin providing the Modified Services in a timely fashion in accordance with SCRRA's requirement. The additional payment for any Modified Services shall be determined in the same manner as Direct Costs, Markup as defined in Section D.1.a., G&A and Overhead and Profit calculated pursuant to Section D.1.c. and d., and, subject to

reductions in liquidated damages described in Section D.11. After receiving a request from SCRRA for Modified Services, the Contractor shall prepare a proposed budget within ten (10) days to cover the Services in accordance with the cost provisions of this Contract, and the parties shall proceed promptly to discuss and agree upon a modification to the Approved Budget.

b.      Services Changes without Budget Agreement

In the event that the Contractor asserts that more personnel and materials are required for operation of the Modified Services than SCRRA believes are appropriate and the parties are therefore unable to agree within fifteen (15) days upon a budget for the Modified Services, the Contractor shall, if requested by SCRRA, institute the Modified Services as soon as possible and the question of what personnel or materials are required for operation of the Services shall be submitted immediately for resolution pursuant to Section C.26. If the Contractor believes that the additional personnel or materials are essential for the Modified Services, the Contractor shall provide the Services pending resolution of the dispute and SCRRA shall make regular periodic payments to the Contractor that include the cost of all personnel and materials actually being provided plus G&A and Overhead at the approved rate. In the event, and to the extent, that SCRRA prevails in the dispute resolution, the Contractor shall be required to repay SCRRA with interest, at the Federal Funds rate as published in the *Wall Street Journal*, the amount of the costs SCRRA has paid that the arbitrators have determined is excessive. Further, upon such determination, the Contractor shall promptly eliminate the personnel or use of materials that have been determined by the dispute resolution to be excessive.

c.     Service on New Routes

SCRRA may from time to time request Contractor to begin providing Services on routes that are not specified in Section D.8.a., or that have not been added to the Service Property by agreement of the parties. Upon receipt of such a request, Contractor shall within thirty (30) days prepare a proposed budget to cover those new Services, using the Direct Cost, Markup, and G&A and Overhead and Profit provisions of Section D, subject to reductions in liquidated damages described in Section D.11. of this Contract. After completion of the negotiation of an amendment to the Approved Budget and any special provisions required to accommodate the new Services, such Services will begin as soon as feasible, taking into consideration availability of personnel and rolling stock to support the new Services. The amendment to the Approved Budget shall include an amended Service Plan as described in Section D.2., which will include supplements to Appendices as required to accurately describe the changes in Services to be provided. In the event of a dispute, it shall be resolved as provided in Section C.21.

**9.     Cost Control**

a.     Contractor shall use an accrual method of accounting wherein expenditures are recorded in the Fiscal Year in which they result in liabilities for benefits received, regardless whether or not payment of the expenditure is made in the same accounting period. The cost system shall allow for accurate tracking of costs, labor hours and man-months spent against an annual Approved Budget. The cost system must also track and aggregate costs and hours expended on unbudgeted or recollectable projects, or extra work directed by SCRRA. Financial reports must be auditable and must provide sufficient detail to determine the validity of costs charged to SCRRA.

b.     Contractor's cost account structure shall conform in all material respects to the chart of accounts established by the Federal Transit Administration's Uniform System of Accounts (January 1995) [www.ntdprogram.com, click on "Publications", then "Reference Materials"]. The account structure shall also allow

costs to be reported on a route-by-route basis, where applicable. Those costs, which cannot be directly attributed to a particular route, must be able to be allocated to routes based upon an allocation formula specified by SCRRA. Contractor shall establish a separate fund for all SCRRA expenditures and revenues (receivables).

c.      Contractor's cost system must provide sufficient detail to enable SCRRA to file the annual Federal Transit Administration National Database (formerly Section 15 of 49 U.S.C. §1601 *et seq.*) report, including Form 301 (Operating Expenses), Form 331 (Fringe Benefits), and Form 404 (Transit System Employees), or their equivalents.

d.      The cost system shall allow the Contractor to report monthly and year-to-date costs and labor hours according to SCRRA's Fiscal Year. Monthly cost status reports and invoices shall be due to SCRRA within 20 days from the end of the accounting month. Invoices shall be submitted with the following backup elements:

(1)      Labor

(a)      Summary of hours (i.e., straight time, overtime, double-time and other, as applicable) for each exempt employee and covered employee in the current invoice period, reported by job function (e.g., conductor, engineer), and employee name.

(b)      Summary of Labor Costs at the approved rates for the relevant Fiscal Year for each exempt employee and covered employee in the current invoice period, reported by job function, and employee benefit and injury costs for each job function.

(c)      Summary of employees by job function, for the current invoice month and Fiscal Year to date.

(d)      Summary of approved positions and the identity of the actual employee filling each position.

(2)     Non-Labor

    (a)     Summary of non-labor costs incurred by expense type in the current invoice month and Fiscal Year to date.

    (b)     Non-labor costs must be substantiated with copies of receipts and invoices from Suppliers, vendors and Subcontractors. The receipts and invoices must contain sufficient detail to allow the Contractor and SCRRA to assess the validity of the costs billed to the Contractor.

(3)     Markup, G&A and Overhead and Profit.

    Summary of Markup, G&A and Overhead, and Profit earned at the approved rates, offset by reductions in the liquidated damages incurred for the current month and Fiscal Year to date.

(4)     Total Cost Summaries

    Total Cost Summaries must summarize labor, non-labor, material, Markup, G&A and Overhead, and manpower for the current invoice month and Fiscal Year to date.

## 10.  <u>Adjustment of Direct Labor Costs</u>

For the purposes of keeping labor costs and compensation current, payments for covered employee wages and exempt employee salaries will be adjusted annually effective July 1 of each year based on the annual inflation rate contained in the Contractor's cost proposal for the applicable Fiscal Year (Attachment A).

11. **Liquidated Damages**

a. General

    (1)    SCRRA will be damaged if the Contractor fails to perform the Services in compliance with the terms of this Contract, or if the Contractor's act or omission disrupts the operations of SCRRA. It is impractical and/or difficult to ascertain the exact damage that SCRRA will sustain. The parties have agreed to the liquidated damages described below.

    (2)    Liquidated damages will be assessed against the Contractor's monthly profit at SCRRA's sole discretion in accordance with this Contract. Maximum liquidated damages assessed in any month may not exceed the month's profit.

    (3)    The following liquidated damages are the sole financial assessment that SCRRA may make against the Contractor for the events listed in this section; provided, however, that the foregoing clause shall not limit SCRRA's right to terminate for cause if a pattern of repeated events leads SCRRA to conclude that the Contractor has failed to perform any of the Services under this Contract, nor shall the foregoing limit SCRRA's rights under Sections D.12.g., C.18., C.17. or C.26.a. of this Contract.

b. Train Performance

The Contractor's monthly profit shall be reduced by One Thousand Dollars ($1,000.00) for each revenue train which arrives at its terminal station between five minutes and fifty nine seconds (5'59") and nineteen minutes and fifty nine seconds (19'59") later than the time stated in the Metrolink public timetable when the delay is caused by any action or inaction of a Contractor employee or Subcontractor who is engaged in the provision of the Services.  The Contractor's monthly profit shall be reduced by Ten Thousand Dollars ($10,000.00) for the first revenue train, per incident, which arrives at its terminal station 20 minutes or more later than the time stated in the Metrolink public timetable, when the delay is caused by any action or inaction of a Contractor employee or Subcontractor

engaged in provision of the Services. Trains annulled or terminated due to actions or inactions of the Contractor's employees or Subcontractors engaged in the provision of the Services will be considered 20 minutes late for the purpose of this calculation. For the purposes of the preceding two sentences, an incident shall be a single occurrence that is the cause of one or more trains being late, annulled or terminated. Trains subsequent to the first train per incident that are more than twenty (20) minutes late shall cause a reduction in the Contractor's monthly profit of One Thousand Dollars ($1,000) each.

c.    Crew and Contractor Performance

(1)    SCRRA will arrange for and will bear the cost of a monthly audit of the Contractor's on-board employees' compliance with all Supplemental Instructions and agency rules required in operation of the Service. The Contractor's monthly profit shall be reduced by Twenty Thousand Dollars ($20,000) for each month that the weighted system score of the Contractor's employees, or Subcontractors, engaged in the provision of the Services, performance falls below Ninety-Seven Percent (97%) for the system as audited by third party, anonymous, on board auditors contracted by SCRRA.

(2)    Upon an occurrence of conduct unbecoming an employee, the Contractor's monthly profit shall be reduced by Twenty Five Thousand Dollars ($25,000) per incident in which SCRRA exercises the right under Section B.26.c. to request the Contractor to bar the employee from SCRRA service, or reduced by Ten Thousand Dollars ($10,000) per incident when SCRRA chooses not to exercise the right to bar the employee from service.

(3)    If the Contractor fails to comply with any of the practices, procedures and policies specified in Section B., SCRRA shall advise the Contractor of the failure and the Contractor shall promptly take steps to implement corrective action that will ensure compliance with those practices, procedures and policies. If the Contractor fails to correct the non-

compliance within thirty (30) days, and no other assessment is made under this Contract with respect to this type of failure to comply, SCRRA may assess liquidated damages of up to Ten Thousand Dollars ($10,000) per month for such non-compliance.

(4) In the event that a failure of a Contractor employee or sub-contractor to comply with applicable operating instructions or rules causes damage to SCRRA rolling stock, the Contractor shall be responsible to pay (or shall not be reimbursed for) fifty percent (50%) of the cost of such damage that is greater than Two Thousand Five Hundred Dollars ($2,500) and less than One Hundred Twenty Thousand Dollars ($120,000) per occurrence; provided, however, that the Contractor shall only be paid Direct Cost for any amount it is paid by SCRRA for the repair of damages caused by a Contractor employee as described in this section.

(5) If a Contractor employee fails to complete a Standards Maintenance Procedures (SMP) form located in each car and locomotive to record equipment defects or operating anomalies discovered during the course of operation, SCRRA shall assess liquidated damages of One Thousand Dollars ($1,000) per incident.

d. Employee Qualification Liquidated Damages

The Contractor will be assessed liquidated damages of One Thousand Dollars ($1,000) per person per day until the deficiency is cured for failing to provide employees that are Qualified and trained to do the job to which they are assigned; provided that such liquidated damages shall not be assessed unless the Contractor is first given the opportunity to notify the employee involved and correct the deficiency.

e. Liquidated Damages Disputes

SCRRA shall provide the Contractor with notice of intent to assess liquidated damages pursuant to this section no later than thirty (30) days after the end of the month in which the events on which the assessment is based occurred. In

the event of a disagreement between the Contractor and SCRRA as to the cause or responsibility of an action or inaction that result in liquidated damages or reduction in payment as specified by Section D.11, the final determination will be made by the SCRRA Operations Director upon an objective investigation of the matter. Disputes regarding liquidated damages are not subject to Section C.22.

**12.**   **Payment**

a.   Schedule of Regular Payments

Within fifteen (15) days after the end of each month, the Contractor shall submit to SCRRA a bill for the Direct Costs of that month, and for any Markup, G&A and Overhead and Profit and liquidated damages incurred in connection with on-time performance, Rolling Stock availability and vehicle performance with respect to the month. SCRRA will reduce the Profit billed to reflect any liquidated damages assessed pursuant to Section D.11. of this Contract, which are not already reflected on the monthly bill. In the event SCRRA does not agree with any item on an invoice submitted by the Contractor, it shall promptly notify the Contractor of the item with which it disagrees, along with a statement of the reason for the disagreement and its view as to the correct amount payable. The Contractor shall immediately revise any invoice to correct errors identified by SCRRA. The parties shall promptly confer on any other items in an invoice to which SCRRA has taken exception. In the event the parties are unable to reach agreement, SCRRA may withhold from the monthly payment to the Contractor the amount that SCRRA asserts is in excess of the amount that should be paid. SCRRA may also deduct payments of amounts for compensation of an employee in a position that is not listed in the Approved Budget. SCRRA will notify the Contractor that it is withholding a payment pursuant to the previous sentence at the time that it pays the remaining balance on that invoice. Payment of the undisputed amount of the monthly invoice will occur 30 days later. Where it is not feasible to include the adjustment in a regular monthly payment as described in the second sentence of this subsection, the amount owed shall be paid separately as soon as practicable.

b.  <u>Untimely or Incorrect Payments</u>

In the event a payment is not made in a timely fashion or it is ultimately agreed by the parties or otherwise determined that a payment made by SCRRA was excessive or was insufficient, the amount of the overpayment or underpayment shall bear interest at the Federal Funds Rate (as published in the *Wall Street Journal*), beginning thirty (30) days after an undisputed invoice or demand was made by either party, to the date the amount is repaid or paid.

c.  <u>Deductions for Controllable Items</u>

SCRRA reserves the right to deduct payment for Controllable Items purchased without proper authorization in accordance with Section B.3 or for items other than Controllable Items purchased outside the scope of the Approved Budget (including working documents used in developing the current year's Approved Budget).

d.  <u>Excusable Delayed Payment</u>

If the Contractor fails to make a report to SCRRA within the time required, and if SCRRA is required to make payment to the Contractor based on that report, the number of days required to make the payment shall be increased by the number of days the report was late.

e.  <u>Deduction for Third Party Claim</u>

SCRRA may at its sole discretion deduct from its payment to the Contractor that amount of any claim for services rendered that SCRRA is required to pay to a Third Party when the claim was caused by the actions of the Contractor and is not one for which SCRRA is required to indemnify the Contractor pursuant to Section C.18 of this Contract.

f.  <u>Determination of Timeliness</u>

For the purposes of this Contract, when determining whether submission of an invoice or of a payment is timely, if the event that triggered the obligation to

submit the invoice or the payment was delayed, then the number of days of that delay shall be added to the time allotted for submission of the invoice or the payment.

g.   Deduction for Increased Cost of Service

If SCRRA incurs an increase in the cost of the Services as a result of the Contractor's action or inaction with respect to a service the Contractor has agreed it will provide (whether in this Contract or in any subsequent written communication in which the Contractor states it will provide that service), SCRRA may deduct from its payment to the Contractor the amount of any such cost increase; provided, however, that the foregoing shall not apply to any payment for which SCRRA is required to indemnify the Contractor pursuant to Section C.18 of this Contract, and provided further that the addition of deductions made by SCRRA under this Section D.12.g. and the Liquidated Damages assessed by SCRRA in any given month shall not exceed the month's Profit.

h.   Cost in Excess of the Approved Budget

If the sum of actual Direct Costs incurred and billed by the Contractor for items included in the Approved Budget in a Fiscal Year exceeds one hundred and one percent (101%) of the Direct Costs included in the Approved Budget, SCRRA shall not be required to reimburse the Contractor for fifty percent (50%) of the amount by which such Direct Costs exceed One Hundred and One Percent (101%) of the Direct Costs included in the Approved Budget. SCRRA shall not be required to reimburse the Contractor for any Markup, G&A and Overhead, or Profit in excess of the Approved Budget.

i.   Costs Less Than the Approved Budget

If the sum of actual Direct Costs incurred and billed by Contractor for items included in the Approved Budget in a Fiscal Year are less than ninety-nine percent (99%) of the Direct Costs included in the Approved Budget, SCRRA shall pay the Contractor an amount equal to fifty percent (50%) of the difference between actual Direct Costs and 99% of the Direct Costs included in the

Approved Budget; provided, however, that the maximum amount that SCRRA will be obligated to pay the Contractor pursuant to this subsection is Seventy-Five Thousand Dollars ($75,000) per year. Payment under this subsection shall be made not later than sixty (60) days after all financial information necessary to determine the Contractor's eligibility for the incentive is available. This subsection shall not apply in the event that Approved Budget is increased during a Fiscal Year for reasons other than a change in the level of Services pursuant to Section C.7. or the existence of unforeseen circumstances as provide in Section D.4., or for added work as provided in Section D.5.

j.      Employee Performance Incentive Payments

(1)     The Contractor's employees and managers shall have the right to earn incentives of two percent (2%) of monthly actual Direct Costs, subject to deductions as described in this Contract. Incentive payments in a Fiscal Year, net of penalties assessed under this Contract for that Fiscal Year, shall not exceed either 2% of the Direct Costs as stated in the Approved Budget, or 2% of the actual Direct Costs for the Fiscal Year, whichever is less.

(2)     The monthly incentive payment shall be reduced by One Thousand Dollars ($1,000.00) for each revenue train which arrives at its terminal station between five minutes and fifty nine seconds (5'59") and nineteen minutes and fifty nine seconds (19'59") later than the time stated in the Metrolink public timetable when the delay is caused by any action or inaction of a Contractor employee or Subcontractor who is engaged in the provision of the Services.  The incentive payment shall be reduced by Five Thousand Dollars ($5,000.00) for the first revenue train, per incident, which arrives at its terminal station 20 minutes or more later than the time stated in the Metrolink public timetable, when the delay is caused by any action or inaction of a Contractor employee or Subcontractor engaged in provision of the Services. Trains annulled or terminated due to actions or inactions of the Contractor's employees or Subcontractors engaged in the provision of the Services will be considered 20 minutes late for the

purpose of incentive calculation. For the purposes of the preceding two sentences, an incident shall be a single occurrence that is the cause of one or more trains being late, annulled or terminated. Trains subsequent to the first train per incident that is more than twenty (20) minutes late shall cause a reduction in the incentive payment of One Thousand Dollars ($1,000) each.

(3)     SCRRA will arrange for and will bear the cost of a monthly audit of the Contractor's on-board employees' compliance with all Supplemental Instructions and agency rules required in operation of the Service.  The monthly incentive shall be reduced by Twenty Thousand Dollars ($20,000) for each month that the weighted system score of the Contractor's employees, or Subcontractors, engaged in the provision of the Services, performance falls below Ninety-Seven Percent (97%) for the system as audited by third party, anonymous, on board auditors contracted by SCRRA.

(4)     The monthly incentive payment shall be reduced Twenty Five Thousand Dollars ($25,000) per incident upon the occurrence of conduct unbecoming an employee as stated in Section B.26.

(5)     If a Contractor employee fails to complete a Standard Maintenance Procedures (SMP) form located in each car and locomotive to record equipment defects or operating anomalies discovered during the course of operation, SCRRA shall assess  liquidated damages of One Thousand Dollars ($1,000) per incident.

(6)     SCRRA shall provide the Contractor with notice of intent to reduce the pool of funds available for making employee incentive payments pursuant to this section no later than thirty (30) days after the end of the month in which the events on which the assessment is based occurred.  In the event of a disagreement between the Contractor and SCRRA as to the cause or responsibility of an action or inaction that result in liquidated damages or reduction in payment as specified by this section, the final

determination will be made by the SCRRA Operations Director upon an objective investigation of the matter.

(7)    The incentive payment for the employees/managers shall be based on a plan developed by the Contractor in consultation with and subject to the approval of SCRRA. The plan shall take into consideration factors that encourage or reward safety, diligence, good attendance, adherence to rules and instructions and other performance factors that may be expected to contribute to the successful operation of the Services. In no instance shall incentive payments be made to any Contractor employee whose action or inaction within the fiscal year resulted in an assessment against the incentive pool as stated in Section D.12.j.(4), above. The Contractor will provide SCRRA with an annual report showing the amount paid to each employee.

## 13.    **Letter of Credit**

a.    <u>Letter of Credit</u>

Contractor shall provide an Irrevocable Standby Letter of Credit (LOC) in an amount of $5,000,000, in a form acceptable to SCRRA, in favor of and satisfactory to SCRRA, prior to the Start Date.. The LOC shall serve as a guarantee of good faith by the Contractor that the Contractor will comply with the terms and conditions of this Contract. SCRRA shall be entitled to draw upon the LOC in one or more draws in any of the following circumstances:

(1)    Contractor fails to fulfill its obligations under the Contract

(2)    Contractor becomes insolvent, or becomes voluntarily the subject of a petition in bankruptcy, or in any other proceeding under the federal bankruptcy laws of the United States, or becomes involuntarily the subject of such a petition or proceeding, or Contractor makes an assignment for the benefit of creditors, or Contractor is named in a suit for the appointment of a receiver, or Contractor is otherwise forced to suspend or terminate its provision of the Services, and as a result thereof, SCRRA

has determined in good faith that Contractor will be unable to fulfill its obligations under the Contract.

(3)    The issuing bank or financial institution shall be approved in writing by SCRRA.

(4)    The LOC shall remain in full force and effect throughout the term of the Contract. SCRRA shall provide written notice to the bank or financial institution issuing the LOC when the contract term has expired, or the requirement for an LOC is no longer in place.

b.    <u>Retainage and Escrow Account</u>

In the event the Contractor is unable to maintain the LOC in the amount of $5,000,000 throughout the term of the Contract, SCRRA reserves the right to retain monies from each invoice, up to the total amount of profit billed, and hold such monies in an escrow account, until such time as the value of the Contractor's LOC and the value of the funds held in escrow equal $5,000,000.

[REMAINDER OF PAGE LEFT BLANK INTENTIONALLY]

IN WITNESS WHEREOF, the parties hereto have caused this Contract to be executed on the date shown below, and effective on the date first hereinabove written.

CONTRACTOR
Connex Railroad LLC

*Ronald Hartman*

Ronald Hartman
Manager

12/7/04

Date

Connex North America

*Ronald J Hartman*

Ronald Hartman
Senior Vice President

12/7/04

Date

Tax I.D. No. 27-0038471

SOUTHERN CALIFORNIA
REGIONAL RAIL AUTHORITY

David Solow
Chief Executive Officer

12/9/04

Date

APPROVED AS TO FORM:

County Counsel - County of Los Angeles

Deputy

Date

## LIST OF APPROVED SUBCONTRACTORS & SUPPLIERS

| SUBCONTRACTOR / SUPPLER | DESCRIPTION OF SERVICES / PRODUCT |
|---|---|
| Burlington Northern and Santa Fe Railway, Co.<br>2600 Lou Menk Drive<br>P.O. Box 961034<br>Fort Worth, TX<br>D. J. Mitchell, II<br>817-352-1230    817-234-7454 (fax) | Safety & Training Programs, Management Direction & Support. |
| Retzenberger, Inc.<br>P.O. Box 16150<br>Shawnee, KS 66203<br>William M. Smith<br>913-631-0450        800-273-9604 (fax) | Crew Van Service |
| Ramada Inn Burbank<br>2900 N. San Fernando Boulevard<br>Burbank, CA 90504<br>Richard Worsham<br>818-843-5955        818-845-9030 (fax) | Sleeping Accommodations for Crew |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

Page 106.

**Cost Proposal**

Page 107.

RFP NO. OP123-04
METROLINK OPERATOR SERVICES
SECOND BAFO COST PROPOSAL SUBMITTED BY: **Connex Railroad LLC**

**COST PROPOSAL SUMMARY**
**Page 1 of 35**

| COST FACTOR: | Mobilization | Year 1 | Year 2 | Year 3 | Year 4 | Year 5 | Option Year 1 (Year 6) | Option Year 2 (Year 7) | Option Year 3 (Year 8) | Option Year 4 (Year 9) | Option Year 5 (Year 10) | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| DIRECT LABOR COSTS: | | $13,832,000 | $14,318,108 | $14,712,543 | $15,095,042 | $15,627,877 | $16,180,331 | $16,753,161 | $17,347,146 | $17,983,109 | $18,601,809 | $160,431,208 |
| **SUBCONTRACTS** | | | | | | | | | | | | |
| 1) Crew Transportation | | $207,758 | $206,176 | $315,361 | $324,822 | $334,566 | $344,003 | $354,949 | $365,590 | $376,558 | $387,854 | $3,407,7.. |
| 2) Crew Lodging | | $351,900 | $351,900 | $351,900 | $377,400 | $377,400 | $377,400 | $390,150 | $390,150 | $390,150 | $390,150 | $3,748,500 |
| 3) BNSF - Training & Labor | | $778,609 | $810,035 | $834,336 | $859,366 | $885,147 | $911,702 | $939,053 | $967,224 | $996,241 | $1,028,128 | $9,005,843 |
| 4) | | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| 5) | | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| 6) | | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| 7) | | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| 8) | | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| SUB-TOTAL SUBCONTRACTS | | $1,425,767 | $1,468,111 | $1,501,597 | $1,561,588 | $1,597,113 | $1,633,705 | $1,684,145 | $1,722,964 | $1,762,949 | $1,804,132 | $16,162,073 |
| OTHER NON-LABOR COSTS: | | $800,000 | $800,000 | $800,000 | $800,000 | $800,000 | $800,000 | $800,000 | $800,000 | $800,000 | $800,000 | $8,000,000 |
| TOTAL DIRECT COSTS, PROPOSED | | $16,057,767 | $16,586,218 | $17,014,140 | $17,456,630 | $18,024,990 | $18,614,036 | $19,237,305 | $19,870,112 | $20,526,058 | $21,206,023 | $184,593,281 |
| NON-LABOR MARKUP @ 2.75% | | $61,209 | $62,373 | $63,284 | $64,944 | $65,921 | $66,927 | $88,314 | $69,382 | $70,461 | $71,614 | $684,45.. |
| G&A @ 7.53% | | $1,028,000 | $1,077,380 | $1,109,701 | $1,142,992 | $1,177,282 | $1,218,000 | $1,282,052 | $1,300,799 | $1,353,200 | $1,401,321 | $12,075,628 |
| OVERHEAD @ 0.94% | | $130,000 | $133,900 | $137,917 | $142,056 | $146,316 | $151,468 | $158,852 | $162,413 | $168,180 | $174,160 | $1,503,281 |
| COSTS INCLUDING G&A/OH MARKUP | | $17,274,976 | $17,859,872 | $18,325,052 | $18,806,821 | $19,414,509 | $20,051,352 | $20,724,523 | $21,406,706 | $22,117,919 | $22,853,118 | $198,838,847 |
| PROFIT/FEE @ 6.96% | | $795,340 | $884,882 | $983,067 | $1,056,683 | $1,133,021 | $1,175,074 | $1,214,604 | $1,267,668 | $1,302,325 | $1,348,037 | $11,169,301 |
| GRAND TOTAL PRICE /YEAR | | $18,070,376 | $18,742,764 | $19,318,141 | $19,863,274 | $20,547,530 | $21,224,426 | $21,939,128 | $22,666,374 | $23,420,244 | $24,201,755 | $210,005,949 |

102204

Page 108

Metrolink Second BAFO

Page 109.

RFP NO. OP123-04
METROLINK OPERATOR SERVICES
SECOND BAFO COST PROPOSAL SUBMITTED BY: CONNEX RAILROAD LLC

CONTRACT MOBILIZATION (ESTIMATED OCT. 1, 2004 TO JUNE 30, 2005)

140 Weekdays    28 Saturdays    28 Sundays

Page 3 of 35

(Excel File/Sheet 1)

| DIRECT LABOR Job Title: Exempt Employees | Total # Positions | Total # Months | Annual Salary Salary Range Minimum | Salary Range Midpoint | Salary Range Maximum | Monthly Salary Salary Range Minimum | Salary Range Midpoint | Salary Range Maximum | Fringe Benefit Rate (%) | Midpoint Mo. Salary incl. Fringe Benefits | Total Mobiliz Exempt Labor $ |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1) General Manager | 1 | 7 | $110,000 | $120,000 | $130,000 | $9,167 | $10,000 | $10,833 | 36.46% | $13,646 | $95,522 |
| 2) Director of Finance | 1 | 7 | $70,000 | $75,000 | $80,000 | $5,833 | $6,250 | $6,667 | 50.01% | $9,376 | $65,629 |
| 3) MOB Liaison | 1 | 7 | $82,500 | $90,000 | $97,500 | $6,875 | $7,500 | $8,125 | 44.00% | $10,800 | $75,600 |
| 4) Admin. Asst. to General Man | 1 | 7 | $42,000 | $45,000 | $48,000 | $3,500 | $3,750 | $4,000 | 63.35% | $6,126 | $42,879 |
| 5) Customer Service Manager | 1 | 3 | $45,000 | $50,000 | $55,000 | $3,750 | $4,167 | $4,583 | 61.94% | $6,748 | $20,243 |
| 6) Human Resources Supervis | 1 | 7 | $42,000 | $45,000 | $48,000 | $3,500 | $3,750 | $4,000 | 63.35% | $6,126 | $42,879 |
| 7) | | | | $0 | | $0 | $0 | $0 | | $0 | $0 |
| 8) | | | | $0 | | $0 | $0 | $0 | | $0 | $0 |
| 9) | | | | $0 | | $0 | $0 | $0 | | $0 | $0 |
| 10) | | | | $0 | | $0 | $0 | $0 | | $0 | $0 |
| TOTAL EXEMPT EMPLOYEES | 6 | | | | | | | | 53.19% | | $342,753 |

| DIRECT LABOR Job Title: Covered Employees | Total # Positions | Total # Months | Total Labor Hours - Mobilization Straight Time | Premium Time | Other* | Current Year Labor Rates Straight Time $/Hr | Premium Time $/Hr | Other* Time $/Hr |
|---|---|---|---|---|---|---|---|---|
| 1) Engineers | 20 | 3.5 | 12,180 | | | $31.32 | $46.98 | |
| 2) Conductors | 20 | 3 | 10,440 | | | $25.38 | $38.07 | |
| 3) Crew Dispatchers | 2 | 2 | 696 | | | $24.04 | $36.06 | |
| 4) Administration Clerk | 1 | 4 | 696 | | | $21.63 | $32.45 | |
| 5) | | | | | | | $0.00 | |
| 6) | | | | | | | $0.00 | |
| 7) | | | | | | | $0.00 | |
| 8) | | | | | | | $0.00 | |
| 9) | | | | | | | $0.00 | |
| 10) | | | | | | | $0.00 | |
| TOTAL COVERED EMPLOYEE | 43 | | 24,012 | 0 | 0 | | $0.00 | |

Metrolink Second BAFO

102204

Page 110.

RFP NO. OP123-04
METROLINK OPERATOR SERVICES
SECOND BAFO COST PROPOSAL SUBMITTED BY: _____ CONNEX RAILROAD LLC

CONTRACT MOBILIZATION (ESTIMATED OCT. 1, 2004 TO JUNE 30, 2005)

Page 4 of 35

(Excel File/Sheet 1)

| FRINGE BENEFITS: Covered Empl. (Vacation, Holiday, Benefits, FELA or Worker's Comp, Retirement) | Fringe Benefit Rates (%) | | | Covered Employee Rates Incl. Fringe | | | Covered Empl Labor Cost Incl. Fringe Benefits | | | Total Mobiliz Covered Empl Labor $ |
|---|---|---|---|---|---|---|---|---|---|---|
| | Straight Time | Premium Time | Other* | Straight Time $/Hr | Premium Time $/Hr | Other* Time $/Hr | Straight Time $ | Premium Time $ | Other* Time $ | |
| 1 ) Engineers | 46.76% | 46.76% | | $45.97 | $88.95 | $0.00 | $559,857 | $0 | $0 | $559,857 |
| 2 ) Conductors | 52.74% | 52.74% | | $38.77 | $58.15 | $0.00 | $404,711 | $0 | $0 | $404,711 |
| 3 ) Crew Dispatchers | 58.63% | 58.63% | | $38.13 | $57.20 | $0.00 | $26,542 | $0 | $0 | $26,542 |
| 4 ) Administration Clerk | 64.13% | 64.13% | | $35.50 | $53.25 | $0.00 | $24,709 | $0 | $0 | $24,709 |
| 5) | | | | $0.00 | $0.00 | $0.00 | $0 | $0 | $0 | $0 |
| 6) | | | | $0.00 | $0.00 | $0.00 | $0 | $0 | $0 | $0 |
| 7) | | | | $0.00 | $0.00 | $0.00 | $0 | $0 | $0 | $0 |
| 8) | | | | $0.00 | $0.00 | $0.00 | $0 | $0 | $0 | $0 |
| 9) | | | | $0.00 | $0.00 | $0.00 | $0 | $0 | $0 | $0 |
| 10) | | | | $0.00 | $0.00 | $0.00 | $0 | $0 | $0 | $0 |
| TOTAL COVERED EMPLOYEES | 55.57% | 55.57% | #DIV/0! | $0.00 | $0.00 | $0.00 | $1,015,818 | $0 | $0 | $1,015,818 |

* "Other" labor includes release time, guarantee, etc.

| TOTAL EXEMPT & COVERED EMPL | # Positions |
|---|---|
| TOTAL LABOR | 49 |

| Total Annual Labor $ |
|---|
| $1,359,571 |

Metrolink Second BAFO

1/22c4

Page 111.

RFP NO. OP123-04
METROLINK OPERATOR SERVICES
SECOND BAFO COST PROPOSAL SUBMITTED BY:

CONNEX RAILROAD LLC

**CONTRACT MOBILIZATION (ESTIMATED OCT. 1, 2004 TO JUNE 30, 2005)**

Page 5 of 35

(Excel File/Sheet 1)

**EXPLANATION OF COST AND BASIS OF ESTIMATE:**

| | | |
|---|---|---|
| DIRECT LABOR COSTS: | $1,358,571 | |
| SUBCONTRACTS: | | |
| (*Form 60* required for each) | | |
| 1) Renzenberger - Crew Transportation | $0 | |
| 2) Ramada - Crew Lodging | $0 | |
| 3) BNSF - Training | $441,970 | |
| 4) | | |
| 5) | | |
| 6) | | |
| 7) | | |
| 8) | | |
| SUB-TOTAL SUBCONTRACTS | $441,970 | |
| OTHER NON-LABOR COSTS: | $413,642 | |
| TOTAL DIRECT COSTS PROPOSED | $2,214,183 | |
| Non-Labor Cost Mark-up @ 2.75% | $23,529 | Rate set by SCRRA |
| G&A @ 5.00% | $67,929 | Applies to Labor only |
| OVERHEAD @ 0.00% | $0 | Applies to Labor only |
| COSTS INCLUDING G&A/OH & MARKUP | $2,305,641 | |
| PROFIT/FEE @ 0.00% | $0 | SCRRA will not pay profit on Mobilization costs |
| GRAND TOTAL MOBILIZATION COST | $2,305,641 | TOTAL MOBILIZATION COST IS A NOT-TO-EXCEED AMOUNT |

102204

Metrolink Second BAFO

Page 112.

| MOBILIZATION | | | SUBCONTRACTOR COST PROPOSAL "FORM 60" | |
|---|---|---|---|---|
| | | | Page 1 of 2 | |

| Contract No. OP123-04 | Subcontractor Address: |
|---|---|
| Subcontractor: Burlington Northern Santa Fe | 2600 Lou Meck Dr. |
| | Ft. Worth, Texas 76161-0034 |
| Services to be furnished: | Location(s) where work is to be performed: |
| Provide safety and training programs and ma | Los Angeles, CA; Overland Park, KS |

### DETAILED DESCRIPTION OF COST ELEMENTS

| 1. LABOR (specify function/title) | HOURS | LABOR RATE PER HOUR | COST | TOTAL COST |
|---|---|---|---|---|
| Director - Operations | 640.0 | $ 55.29 | $ 35,385.60 | $ 47,593.63 |
| Director - Safety and Training | 640.0 | $ 39.54 | $ 25,305.60 | $ 34,036.03 |
| Manager - Safety and Training | 80.0 | $ 33.11 | $ 2,648.80 | $ 3,562.64 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| TOTAL DIRECT LABOR: | 1,360.0 | | | $ 85,192.30 |
| 2. OVERHEAD RATE | | | 72% | |
| OVERHEAD AMOUNT | | | | $ 61,338.46 |
| 3. SUBTOTAL LABOR AND OVERHEAD | | | | $ 146,530.76 |
| LOWER TIER SUBCONTRACTORS (attach "Form 60" or similar supporting | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| TOTAL SUBCONSULTANTS: | | | | $ - |
| 4. OTHER DIRECT COSTS (itemize on Page 2 of Form 60) | | | | $ 291,180.00 |
| 5. PROFIT OR FEE | | | | $ 4,259.62 |
| 6. GRAND TOTAL COST: | | | | $ 441,970.37 |

Page 113.

| Contract No. OP123-04<br>Subcontractor: | SUBCONTRACTOR COST<br>PROPOSAL<br>"FORM 60" | Page    2 of 2<br>YEAR 1 |
|---|---|---|

### SUPPORTING SCHEDULE

| ITEM NO | ITEM DESCRIPTION | COST |
|---|---|---|
| **4.** | **Other Direct Costs** (attach supporting documentation) | |
| | Travel for 3 direct labor, 2 trips | 6,180.00 |
| | | |
| | New hire locomotive engineer training for 20 engineers | 116,000.00 |
| | New hire conductor training for 20 conductors | 94,000.00 |
| | Relocation for director - operations | 75,000.00 |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | **TOTAL OTHER DIRECT COSTS:** | 291,180.00 |

**Basis of Estimate:** (see attached description of  training assumptions

_DJ Mitchell II_____

_____
Printed Name of Authorized Signer*          Signature

_Assistant Vice President, Passenger Operations
Title                                    _____

Page 115.

RFP NO. OP123-04
METROLINK OPERATOR SERVICES
SECOND BAFO COST PROPOSAL SUBMITTED BY:

CONNEX RAILROAD LLC

CONTRACT YEAR 1 (JULY 1, 2005 TO JUNE 30, 2006)

Page 6 of 35

255 Operating Weekdays        52 Operating Saturdays        52 Operating Sundays

| DIRECT LABOR Job Title: Exempt Employees | Total # Positions | Annual Inflation (%) | Prior Year Salary Range Minimum | Prior Year Salary Range Midpoint | Prior Year Salary Range Maximum | Current Year Including Inflation Salary Range Minimum | Current Year Including Inflation Salary Range Midpoint | Current Year Including Inflation Salary Range Maximum | Fringe Benefit Rate (%) | Midpoint Salary Including Fringe Benefits | Total Annual Exempt Labor $ |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1) General Manager | 1 | | | | | $110,000 | $120,000 | $130,000 | 36.46% | $163,752 | $163,752 |
| 2) Director of Finance | 1 | | | | | $70,000 | $75,000 | $80,000 | 50.01% | $112,508 | $112,508 |
| 3) Transportation Manager | 8 | | | | | $60,000 | $70,000 | $80,000 | 52.89% | $107,023 | $963,207 |
| 4) Road Foreman of Engines | 1 | | | | | $65,000 | $70,000 | $85,000 | 50.41% | $112,808 | $112,808 |
| 5) Admin Asst. to General Manager | 1 | | | | | $42,000 | $45,000 | $48,000 | 63.35% | $73,508 | $73,508 |
| 6) Customer Service Manager | 1 | | | | | $45,000 | $50,000 | $55,000 | 61.94% | $80,970 | $80,970 |
| 7) Human Resources Supervisor | 1 | | | | | $42,000 | $45,000 | $48,000 | 63.35% | $73,508 | $73,508 |
| 8) | | | | | | $0 | $0 | $0 | | $0 | $0 |
| 9) | | | | | | | $0 | | | $0 | $0 |
| 10) | | | | | | | $0 | | | $0 | $0 |
| TOTAL EXEMPT EMPLOYEES | 15 | | | | | | | | 54.06% | | $1,580,259 |

| DIRECT LABOR Job Title: Covered Employees | Total # Positions | Annual Inflation (%) | Total Labor Hours - Current Year Straight Time | Premium Time | Other | Prior Year Labor Rates Straight Time $/Hr | Premium Time $/Hr | Other $/Hr | Current Year Labor Rates Straight Time $/Hr | Premium Time $/Hr | Other $/Hr |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1) Engineers | 54 | | 103,834 | 17,359 | 28,582 | | | | $31.32 | $46.98 | $15.66 |
| 2) Conductors | 52 | | 100,243 | 17,342 | 28,834 | | | | $25.38 | $34.62 | $11.54 |
| 3) Crew Dispatchers | 2 | | 3,920 | 392 | | | | | $24.04 | $36.06 | |
| 4) Administration Clerk | 1 | | 1,960 | 68 | | | | | $21.63 | $32.45 | |
| 5) Accounting / Payroll Clerk | 1 | | 1,960 | 98 | | | | | $19.23 | $26.85 | |
| 6) | | | | | | | | | | | |
| 7) | | | | | | | | | | | |
| 8) | | | | | | | | | | | |
| 9) | | | | | | | | | | | |
| 10) | | | | | | | | | | | |
| TOTAL COVERED EMPLOYEES | 110 | #DIV/0! | 211,917 | 35,289 | 57,416 | | | | | | |

Page 116.

Metrolink Second BAFO

102204

**FRINGE BENEFITS: Covered Empl.**
(Vacation, Holiday, Benefits, FELA or Worker's Comp, Retirement)

| | Fringe Benefit Rates (%) | | | Covered Employee Rates Incl. Fringe | | | Covered Empl Labor Cost Incl. Fringe Ben. | | | Total Annual |
|---|---|---|---|---|---|---|---|---|---|---|
| | Straight Time | Premium Time | Other* | Straight Time $/Hr | Premium Time $/Hr | Other* Time $/Hr | Straight Time $ | Premium Time $ | Other* Time $ | Covered Empl Labor $ |
| 1) Engineers | 46.76% | 46.76% | 46.76% | $45.97 | $68.95 | $22.98 | $4,772,774 | $1,106,855 | $658,894 | $6,626,523 |
| 2) Conductors | 52.74% | 52.74% | 52.74% | $38.77 | $52.88 | $17.63 | $3,885,961 | $917,020 | $508,234 | $5,311,215 |
| 3) Crew Dispatchers | 58.63% | 58.63% | 58.63% | $38.13 | $57.20 | $0.00 | $149,478 | $22,422 | $0 | $171,900 |
| 4) Administration Clerk | 64.13% | 64.13% | 64.13% | $35.51 | $53.26 | $0.00 | $69,597 | $5,220 | $0 | $74,817 |
| 5) Accounting / Payroll Clerk | 66.06% | 66.06% | 66.06% | $31.93 | $47.90 | $0.00 | $62,592 | $4,694 | $0 | $67,286 |
| 6) | | | | $0.00 | $0.00 | $0.00 | $0 | $0 | $0 | $0 |
| 7) | | | | $0.00 | $0.00 | $0.00 | $0 | $0 | $0 | $0 |
| 8) | | | | $0.00 | $0.00 | $0.00 | $0 | $0 | $0 | $0 |
| 9) | | | | $0.00 | $0.00 | $0.00 | $0 | $0 | $0 | $0 |
| 10) | | | | $0.00 | $0.00 | $0.00 | $0 | $0 | $0 | $0 |
| TOTAL COVERED EMPLOYEES | 57.66% | 57.66% | 57.66% | | | | $8,940,403 | $2,146,211 | $1,166,127 | $12,251,741 |

* "Other labor" includes release time, guarantee, etc.

| TOTAL EXEMPT & COVERED EMPL | # Positions | Ave Inflation | | Total Annual Labor $ |
|---|---|---|---|---|
| TOTAL LABOR | 125 | | | $13,632,000 |

Metrolink Second BAFO

Page 117.

102204

Page 8 of 35

102204

**EXPLANATION OF COST AND BASIS OF ESTIMATE:**

**DIRECT LABOR COSTS:**                                    $13,832,000

**SUBCONTRACTS:**
(*Form 60* required for each)
1) Crew Transportation                                     $ 297,258.00
2) Crew Lodging                                            $ 351,900.00
3) BNSF – Training                                         $ 776,608.71
4)                                                         $ -
5)                                                         $ -
6)                                                         $ -
7)                                                         $ -
8)                                                         $ -

SUB-TOTAL SUBCONTRACTS                                     $1,425,767

**OTHER NON-LABOR COSTS:**                                 $800,000

**TOTAL DIRECT COSTS PROPOSED**                            $16,057,767

Non-Labor Cost Mark-up @ 2.75%                             $61,209          Rate set by SCRRA

G&A @                7.42%                                 $1,026,000       Applies to Labor only

OVERHEAD @           0.94%                                 $130,000         Applies to Labor only

COSTS INCLUDING G&A/OH & MARKUP                            $17,274,976

PROFIT/FEE @         5.75%                                 $795,340         Applies to Labor only.

**GRAND TOTAL YEAR 1 PRICE**                               $18,070,316

Metrolink Second BAFO

Page 118.

| YEAR 1 | SUBCONTRACTOR COST PROPOSAL "FORM 60" |
| | Page 1 of 2 |

| Contract No. OP123-04 | Subcontractor Address: |
| Subcontractor: Burlington Northern Santa Fe | 2600 Lou Meck Dr. |
| | Ft. Worth, Texas 76161-0034 |
| Services to be furnished: | Location(s) where work is to be performed: |
| Provide safety and training programs and ma | Los Angeles, CA; Overland Park, KS |

### DETAILED DESCRIPTION OF COST ELEMENTS

| 1. LABOR (specify function/title) | HOURS | LABOR RATE PER HOUR | COST | TOTAL COST |
|---|---|---|---|---|
| Director - Operations | 2,080.0 | $ 55.29 | $ 115,000.00 | $ 150,895.00 |
| Director - Safety and Training | 2,080.0 | $ 39.54 | $ 82,247.00 | $ 108,846.69 |
| Manager - Safety and Training | 80.0 | $ 33.11 | $ 2,648.82 | $ 3,562.66 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| **TOTAL DIRECT LABOR:** | 4,240.0 | | | $ 263,304.35 |
| **2. OVERHEAD RATE** | | | 72% | |
| **OVERHEAD AMOUNT** | | | | $ 189,579.13 |
| **3. SUBTOTAL LABOR AND OVERHEAD** | | | | $ 452,883.49 |
| **LOWER TIER SUBCONTRACTORS** (attach "Form 60" or similar supporting | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| **TOTAL SUBCONSULTANTS:** | | | | $        - |
| **4. OTHER DIRECT COSTS** (itemize on Page 2 of Form 60) | | | | $ 310,560.00 |
| **5. PROFIT OR FEE** | | | | $  13,165.22 |
| **6. GRAND TOTAL COST:** | | | | $ 776,608.71 |

| Contract No. OP123-04<br>Subcontractor: | SUBCONTRACTOR COST<br>PROPOSAL<br>"FORM 60" | Page    2 of 2<br>YEAR 1 |
|---|---|---|

### SUPPORTING SCHEDULE

| ITEM NO | ITEM DESCRIPTION | COST |
|---|---|---|
| 4. | **Other Direct Costs** (attach supporting documentation) | |
| | Materials for emergency simulation | 4,580.00 |
| | Travel for 3 direct labor, 2 trips per year | 6,180.00 |
| | | |
| | Safety and training instruction | 299,800.00 |
| | | |
| | **TOTAL OTHER DIRECT COSTS:** | 310,560.00 |

**Basis of Estimate**: (see attached description of safety and training assumptions

|DJ Mitchell II_____

_____
Printed Name of Authorized Signer*          Signature

_Assistant Vice President, Passenger Operations
Title

| YEAR 1 | SUBCONTRACTOR COST PROPOSAL "FORM 60" |
|---|---|

Page 1 of 2

| Contract No. OP123-04<br>Subcontractor:<br>Renzenberger, Inc | Subcontractor Address:<br>P.O. Box 16150<br>Shawnee, KS 66203 |
|---|---|
| Services to be furnished:<br><br>Crew Transportation | Location(s) where work is to be performed:<br><br>Various |

### DETAILED DESCRIPTION OF COST ELEMENTS

| 1. LABOR (specify function/title) | HOURS | LABOR RATE PER HOUR | COST | TOTAL COST |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
| TOTAL DIRECT LABOR: |  |  |  |  |
| 2. OVERHEAD RATE |  |  | % |  |
| OVERHEAD AMOUNT |  |  |  |  |
| 3. SUBTOTAL LABOR AND OVERHEAD |  |  |  |  |
| LOWER TIER SUBCONTRACTORS (attach "Form 60" or similar |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
| TOTAL SUBCONSULTANTS: |  |  |  |  |
| 4. OTHER DIRECT COSTS (itemize on Page 2 of Form 60) |  |  |  | 297258 |
| 5. PROFIT OR FEE |  |  |  |  |
| 6. GRAND TOTAL COST: |  |  |  | 297258 |

| Contract No. OP123-04<br>Subcontractor: | SUBCONTRACTOR COST<br>PROPOSAL<br>"FORM 60" | Page    2 of 2<br>YEAR 1 |
|---|---|---|

### SUPPORTING SCHEDULE

| ITEM NO | ITEM DESCRIPTION | COST |
|---|---|---|
| 4. | **Other Direct Costs** (attach supporting documentation) | |
| | Annual Cost for Crew Transportation Services | $297,258 |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | **TOTAL OTHER DIRECT COSTS:** | $297,258 |

**Basis of Estimate:**


William M. Smith
Printed Name of Authorized Signer*

President
Title

_William M Smith_
Signature

8/9/04

CONNEXWEST                                21368?7G14                    p.2

| YEAR 1 | SUBCONTRACTOR COST PROPOSAL "FORM 60" |
|---|---|

Page 1 of 2

Contract No. OP123-04
Subcontractor: RAMADA INN

Subcontractor Address:
2900 N. SAN FERNANDO BLVD
BURBANK CA 91510

Services to be furnished:
LODGING

Location(s) where work is to be performed:
SAME AS ABOVE

## DETAILED DESCRIPTION OF COST ELEMENTS

| 1. LABOR (specify function/title) | HOURS | LABOR RATE PER HOUR | COST | TOTAL COST |
|---|---|---|---|---|
|  |  |  |  |  |
| CHECK-IN/OUT | .25 | 11.43 | 2.86 | 2.86 |
| CLOSING SVC | .05 | 11.43 | .57 | .57 |
| HOUSEKEEPING | .50 | 9.45 | 4.72 | 4.72 |
| MGT. | .10 | 20.00 | 2.00 | 2.00 |
| PER ROOM |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
| TOTAL DIRECT LABOR: |  |  |  | 10.5 |
| 2. OVERHEAD RATE |  |  | % |  |
| OVERHEAD AMOUNT |  |  |  | 14.00 |
| 3. SUBTOTAL LABOR AND OVERHEAD |  |  |  | 24.5 |
| LOWER TIER SUBCONTRACTORS (attach "Form 60" or similar |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
| TOTAL SUBCONSULTANTS: |  |  |  | — |
| 4. OTHER DIRECT COSTS (itemize on Page 2 of Form 60) |  |  |  | — |
| 5. PROFIT OR FEE |  |  |  | 2.45 |
| 6. GRAND TOTAL COST: |  |  |  | 27.60 |

Page 123.

CONNEXWEST                                2136887614                           p. 3

| Contract No. OP123-04<br>Subcontractor: | SUBCONTRACTOR COST<br>PROPOSAL<br>"FORM 60" | Page    2<br>of 2<br>YEAR 1 |
|---|---|---|

## SUPPORTING SCHEDULE

| ITEM NO | ITEM DESCRIPTION | COST |
|---|---|---|
| 4. | Other Direct Costs (attach supporting documentation) | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | TOTAL OTHER DIRECT COSTS: | |

Basis of Estimate:

_Richard Worsham_
Printed Name of Authorized Signer*

_GENERAL MANAGER_
Title

* Per RFP Section 10-28

_[signature]_
Signature

_8/12/4_
Date

Page 124.

Page 125.

RFP NO. OP123-04
METROLINK OPERATOR SERVICES
SECOND BAFO COST PROPOSAL SUBMITTED BY:

CONNEX RAILROAD LLC

CONTRACT YEAR 2 (JULY 1, 2006 TO JUNE 30, 2007)

Page 9 of 35

255 Operating Weekdays    52 Operating Saturdays    52 Operating Sundays

| DIRECT LABOR<br>Job Title: Exempt Employees | Total # Positions | Annual Inflation (%) | Prior Year | | | Current Year Including Inflation | | | Fringe Benefit Rate (%) | Midpoint Salary Including Fringe Benefits | Total Annual Exempt Labor $ |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Salary Range Minimum | Salary Range Midpoint | Salary Range Maximum | Salary Range Minimum | Salary Range Midpoint | Salary Range Maximum | | | |
| 1) General Manager | 1 | 3.00% | $110,000 | $120,000 | $130,000 | $113,300 | $123,600 | $133,900 | 37.01% | $169,341 | $169,341 |
| 2) Director of Finance | 1 | 3.00% | $70,000 | $75,000 | $80,000 | $72,100 | $77,250 | $82,400 | 50.78% | $116,462 | $116,462 |
| 3) Transportation Manager | 9 | 3.00% | $60,000 | $70,000 | $80,000 | $61,800 | $72,100 | $82,400 | 53.68% | $110,806 | $997,251 |
| 4) Road Foreman of Engines | 1 | 3.00% | $65,000 | $75,000 | $85,000 | $66,950 | $77,250 | $87,550 | 51.17% | $116,776 | $116,776 |
| 5) Admin Asst. to General Manager | 1 | 3.00% | $42,000 | $45,000 | $48,000 | $43,260 | $46,350 | $49,440 | 64.30% | $76,153 | $76,153 |
| 6) Customer Service Manager | 1 | 3.00% | $45,000 | $50,000 | $55,000 | $46,350 | $51,500 | $56,650 | 62.87% | $83,878 | $83,878 |
| 7) Human Resources Supervisor | 1 | 3.00% | $42,000 | $45,000 | $48,000 | $43,260 | $46,350 | $49,440 | 64.30% | $76,153 | $76,153 |
| 8) | | | $0 | $0 | $0 | $0 | $0 | $0 | | $0 | $0 |
| 9) | | | $0 | $0 | $0 | $0 | $0 | $0 | | $0 | $0 |
| 10) | | | $0 | $0 | $0 | $0 | $0 | $0 | | $0 | $0 |
| TOTAL EXEMPT EMPLOYEES | 15 | 3.00% | | | | | | | 54.87% | | $1,636,014 |

| DIRECT LABOR<br>Job Title: Covered Employees | Total # Positions | Annual Inflation (%) | Total Labor Hours - Current Year | | | Prior Year Labor Rates | | | Current Year Labor Rates | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Straight Time | Premium Time | Other* | Straight Time $/Hr | Premium Time $/Hr | Other* Time $/Hr | Straight Time $/Hr | Premium Time $/Hr | Other* Time $/Hr |
| 1) Engineers | 54 | 3.00% | 103,834 | 17,359 | 28,582 | $31.32 | $46.98 | $15.66 | $32.26 | $48.39 | $16.13 |
| 2) Conductors | 52 | 3.00% | 100,243 | 17,342 | 28,834 | $25.38 | $34.62 | $11.54 | $26.14 | $35.66 | $11.89 |
| 3) Crew Dispatchers | 2 | 3.00% | 3,920 | 392 | | $24.04 | $36.06 | $0.00 | $24.76 | $37.14 | $0.00 |
| 4) Administration Clerk | 1 | 3.00% | 1,960 | 98 | | $21.63 | $32.45 | $0.00 | $22.28 | $33.43 | $0.00 |
| 5) Accounting / Payroll Clerk | 1 | 3.00% | 1,960 | 98 | | $19.23 | $28.85 | $0.00 | $19.81 | $29.71 | $0.00 |
| 6) | | | | | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7) | | | | | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 8) | | | | | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 9) | | | | | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 10) | | | | | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| TOTAL COVERED EMPLOYEES | 110 | 3.00% | 211,917 | 35,289 | 57,416 | | | | | | |

102204

Metrolink Second BAFO

102204

| FRINGE BENEFITS: Covered Empl. (Vacation, Holiday, Benefits, FELA or Worker's Comp, Retirement) | Fringe Benefit Rates (%) | | | Covered Employee Rates Incl. Fringe | | | Covered Empl Labor Cost Incl. Fringe Ben. | | | Total Annual Covered Empl Labor $ |
|---|---|---|---|---|---|---|---|---|---|---|
| | Straight Time | Premium Time | Other* | Straight Time $/Hr | Premium Time $/Hr | Other* Time $/Hr | Straight Time $ | Premium Time $ | Other* Time $ | |
| 1.) Engineers | 47.46% | 47.46% | 47.46% | $47.57 | $71.36 | $23.79 | $4,839,452 | $1,238,652 | $679,834 | $6,857,938 |
| 2.) Conductors | 53.53% | 53.53% | 53.53% | $40.14 | $54.76 | $18.26 | $4,023,271 | $949,423 | $526,192 | $5,498,886 |
| 3.) Crew Dispatchers | 59.51% | 59.51% | 59.51% | $39.49 | $59.24 | $0.00 | $156,818 | $23,222 | $0 | $178,039 |
| 4.) Administration Clerk | 65.09% | 65.09% | 65.09% | $36.79 | $55.18 | $0.00 | $72,105 | $5,408 | $0 | $77,513 |
| 5.) Accounting / Payroll Clerk | 67.05% | 67.05% | 67.05% | $33.00 | $49.63 | $0.00 | $64,854 | $4,864 | $0 | $69,718 |
| 6.) | | | | $0.00 | $0.00 | $0.00 | $0 | $0 | $0 | $0 |
| 7.) | | | | $0.00 | $0.00 | $0.00 | $0 | $0 | $0 | $0 |
| 8.) | | | | $0.00 | $0.00 | $0.00 | $0 | $0 | $0 | $0 |
| 9.) | | | | $0.00 | $0.00 | $0.00 | $0 | $0 | $0 | $0 |
| 10.) | | | | $0.00 | $0.00 | $0.00 | $0 | $0 | $0 | $0 |
| TOTAL COVERED EMPLOYEES | 58.53% | 58.53% | 58.53% | | | | $9,254,499 | $2,221,570 | $1,206,026 | $12,682,094 |

* "Other labor" includes release time guarantee, etc.

| TOTAL EXEMPT & COVERED EMPL | # Positions | Ave Inflation | | Total Annual Labor $ |
|---|---|---|---|---|
| TOTAL LABOR | 125 | 3.00% | | $14,316,108 |

## EXPLANATION OF COST AND BASIS OF ESTIMATE:

| | | $ |
|---|---|---|
| **DIRECT LABOR COSTS:** | | $14,316,108 |
| **SUBCONTRACTS:** | | |
| (*Form 60* required for each) | | |
| 1) Crew Transportation | | $ 306,176.00 |
| 2) Crew Lodging | | $ 351,900.00 |
| 3) BNSF - Training | | $ 810,035.24 |
| 4) | | $ - |
| 5) | | $ - |
| 6) | | $ - |
| 7) | | $ - |
| 8) | | $ - |
| **SUB-TOTAL SUBCONTRACTS** | | $1,468,111 |
| **OTHER NON-LABOR COSTS:** | | $900,000 |
| **TOTAL DIRECT COSTS PROPOSED** | | $16,586,219 |
| Non-Labor Cost Mark-up @ 2.75% | | $62,373 | Rate set by SCRRA |
| G&A @ | 7.52% | $1,077,380 | Applies to Labor only |
| OVERHEAD @ | 0.94% | $133,900 | Applies to Labor only |
| **COSTS INCLUDING G&A/OH & MARKUP** | | $17,859,872 |
| PROFIT/FEE @ | 6.25% | $894,882 | Applies to Labor only |
| **GRAND TOTAL YEAR 2 PRICE** | | $18,754,754 |

102204

Metrolink Second BAFO

| YEAR 2 | SUBCONTRACTOR COST PROPOSAL "FORM 60" |
|---|---|
| | Page 1 of 2 |

| Contract No. OP123-04 Subcontractor: Burlington Northern Sa | Subcontractor Address: 2600 Lou Meck Dr. Ft. Worth, Texas 76161-0034 |
|---|---|
| Services to be furnished: Provide safety and training programs a | Location(s) where work is to be performed: Los Angeles, CA; Overland Park, KS |

### DETAILED DESCRIPTION OF COST ELEMENTS

| 1. LABOR (specify function/title) | HOURS | LABOR RATE PER HOUR | COST | TOTAL COST |
|---|---|---|---|---|
| Director - Operations | 2,080.0 | $ 56.95 | $ 118,450.00 | $ 159,315.25 |
| Director - Safety and Training | 2,080.0 | $ 40.73 | $ 84,714.41 | $ 113,940.88 |
| Manager - Safety and Training | 80.0 | $ 34.10 | $ 2,728.28 | $ 3,669.54 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| **TOTAL DIRECT LABOR:** | 4,240.0 | | | $ 276,925.67 |
| 2. OVERHEAD RATE | | | 72% | |
| OVERHEAD AMOUNT | | | | $ 199,386.49 |
| 3. SUBTOTAL LABOR AND OVERHEAD | | | | $ 476,312.16 |
| LOWER TIER SUBCONTRACTORS (attach "Form 60" or similar | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| **TOTAL SUBCONSULTANTS:** | | | | $ - |
| 4. OTHER DIRECT COSTS (itemize on Page 2 of Form 60) | | | | $ 319,876.80 |
| 5. PROFIT OR FEE | | | | $ 13,846.28 |
| 6. GRAND TOTAL COST: | | | | $ 810,035.24 |

Page 129.

| Contract No. OP123-04<br>Subcontractor: | SUBCONTRACTOR COST<br>"FORM 60" | Page    2 of 2 |
|---|---|---|
| | | YEAR 2 |

### SUPPORTING SCHEDULE

| ITEM NO | ITEM DESCRIPTION | COST |
|---|---|---|
| **4.** | **Other Direct Costs** (attach supporting documentation) | |
| | Materials for emergency simulation | 4,717.40 |
| | Travel for 3 direct labor, 2 trips per year | 6,365.40 |
| | | |
| | Safety and training instruction | 308,794.00 |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | **TOTAL OTHER DIRECT COSTS:** | |
| | | 319,876.80 |

**Basis of Estimate:**

__DJ Mitchell II_____
Printed Name of Authorized Signer*

_____
Signature

Assistant Vice President, Passenger Operations
Title

_____

| YEAR 2 | SUBCONTRACTOR COST PROPOSAL "FORM 60" |
|---|---|
| | Page 1 of 2 |

| Contract No. OP123-04 <br> Subcontractor: <br> Renzenberger, Inc | Subcontractor Address: <br> P.O. Box 16150 <br> Shawnee, KS 66203 |
|---|---|
| Services to be furnished: <br><br> Crew Transportation | Location(s) where work is to be performed: <br><br> Various |

### DETAILED DESCRIPTION OF COST ELEMENTS

| 1. LABOR (specify function/title) | HOURS | LABOR RATE PER HOUR | COST | TOTAL COST |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| TOTAL DIRECT LABOR: | | | | |
| 2. OVERHEAD RATE | | | % | |
| OVERHEAD AMOUNT | | | | |
| 3. SUBTOTAL LABOR AND OVERHEAD | | | | |
| LOWER TIER SUBCONTRACTORS (attach "Form 60" or similar | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| TOTAL SUBCONSULTANTS: | | | | |
| 4. OTHER DIRECT COSTS (itemize on Page 2 of Form 60) | | | | 306,176 |
| 5. PROFIT OR FEE | | | | |
| 6. GRAND TOTAL COST: | | | | 306,176 |

Page 131.

| Contract No. OP123-04<br>Subcontractor: | SUBCONTRACTOR COST<br>PROPOSAL<br>"FORM 60" | Page 2<br>of 2 |
|---|---|---|
| | | YEAR 2 |

### SUPPORTING SCHEDULE

| ITEM NO | ITEM DESCRIPTION | COST |
|---|---|---|
| 4. | **Other Direct Costs** (attach supporting documentation) | |
| | *ANNUAL COST FOR CREW TRANSPORTATION SERVICES* | 306,176 |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | **TOTAL OTHER DIRECT COSTS:** | 306,176 |

**Basis of Estimate:**

WILLIAM M SMITH
Printed Name of Authorized Signer*

William M. Smith
Signature

PRESIDENT
Title

8/9/04

CONNEXWEST                          21368  614                    p.4

| YEAR 2 | SUBCONTRACTOR COST PROPOSAL "FORM 60" |
|--------|-------------------------------------|

Page 1 of 2

Contract No. OP123-04
Subcontractor: RAMADA INN
Services to be furnished: LODGING

Subcontractor Address: 2400 N SAN FERNANDO BLVD BURBANK CA 9040
Location(s) where work is to be performed: SAME AS ABOVE

### DETAILED DESCRIPTION OF COST ELEMENTS

| 1. LABOR (specify function/title) | HOURS | LABOR RATE PER HOUR | COST | TOTAL COST |
|-----------------------------------|-------|---------------------|------|------------|
| CHECK IN / OUT | .25 | 11.47 | 2.86 | 2.86 |
| CM SV | .05 | 11.47 | .57 | .57 |
| HSKP | .50 | 9.45 | 4.72 | 4.72 |
| MGT | .10 | 2.00 | 2.00 | 2.00 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| TOTAL DIRECT LABOR: | | | | 10.15 |
| 2. OVERHEAD RATE | | | % | |
| OVERHEAD AMOUNT | | | | 10.00 |
| 3. SUBTOTAL LABOR AND OVERHEAD | | | | 20.15 |
| LOWER TIER SUBCONTRACTORS (attach "Form 60" or similar) | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| TOTAL SUBCONSULTANTS: | | | | |
| 4. OTHER DIRECT COSTS (itemize on Page 2 of Form 60) | | | | — |
| 5. PROFIT OR FEE | | | | 6.45 |
| 6. GRAND TOTAL COST: | | | | 22.60 |

NINEXWEST                          2136  7614                      p.5

| Contract No. OP123-04<br>Subcontractor: | SUBCONTRACTOR COST<br>PROPOSAL<br>"FORM 60" | Page    2<br>of 2 |
|---|---|---|
| | | YEAR 2 |

### SUPPORTING SCHEDULE

| ITEM NO | ITEM DESCRIPTION | COST |
|---|---|---|
| 4. | Other Direct Costs (attach supporting documentation) | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | TOTAL OTHER DIRECT COSTS: | |

Basis of Estimate:


_Printed Name of Authorized Signer*_   _Signature_

_Title_   _Date_

Per RFP Section 1C-26

RFP NO. OP123-04
METROLINK OPERATOR SERVICES
SECOND BAFO COST PROPOSAL SUBMITTED BY:

CONNEX RAILROAD LLC

CONTRACT YEAR 3 (JULY 1, 2007 to JUNE 30, 2008)

Page 12 of 35

255 Operating Weekdays    52 Operating Saturdays    52 Operating Sundays

| DIRECT LABOR Job Title: Exempt Employees | Total # Positions | Annual Inflation (%) | Prior Year Salary Range Minimum | Salary Range Midpoint | Salary Range Maximum | Current Year Including Inflation Salary Range Minimum | Salary Range Midpoint | Salary Range Maximum | Fringe Benefit Rate (%) | Midpoint Salary Including Fringe Benefits | Total Annual Exempt Labor $ |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 ) General Manager | 1 | 3.00% | $113,300 | $123,600 | $133,900 | $116,699 | $127,308 | $137,917 | 37.56% | $175,127 | $175,127 |
| 2 ) Director of Finance | 1 | 3.00% | $72,100 | $77,250 | $82,400 | $74,263 | $79,568 | $84,872 | 51.52% | $120,562 | $120,562 |
| 3 ) Transportation Manager | 9 | 3.00% | $61,800 | $72,100 | $82,400 | $63,654 | $74,263 | $84,872 | 54.49% | $114,728 | $1,032,551 |
| 4 ) Road Foreman of Engines | 1 | 3.00% | $66,650 | $77,250 | $87,550 | $68,959 | $79,568 | $90,177 | 51.93% | $120,890 | $120,890 |
| 5 ) Admin Asst. to General Manag | 1 | 3.00% | $43,260 | $46,350 | $49,440 | $44,558 | $47,741 | $50,923 | 65.26% | $78,898 | $78,898 |
| 6 ) Customer Service Manager | 1 | 3.00% | $48,350 | $51,500 | $56,650 | $47,741 | $53,045 | $58,350 | 63.81% | $86,884 | $86,884 |
| 7 ) Human Resources Supervisor | 1 | 3.00% | $43,280 | $46,350 | $49,440 | $44,558 | $47,741 | $50,923 | 65.26% | $78,898 | $78,898 |
| 8 ) | | | $0 | $0 | $0 | $0 | $0 | $0 | | $0 | $0 |
| 9 ) | | | $0 | $0 | $0 | $0 | $0 | $0 | | $0 | $0 |
| 10 ) | | | $0 | $0 | $0 | $0 | $0 | $0 | | $0 | $0 |
| TOTAL EXEMPT EMPLOYEES | 15 | 3.00% | | | | | | | 55.69% | | $1,693,821 |

| DIRECT LABOR Job Title: Covered Employees | Total # Positions | Annual Inflation (%) | Total Labor Hours - Current Year Straight Time | Premium Time | Other* | Prior Year Labor Rates Straight Time $/Hr | Premium Time $/Hr | Other* Time $/Hr | Current Year Labor Rates Straight Time $/Hr | Premium Time $/Hr | Other* Time $/Hr |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 ) Engineers | 54 | 3.00% | 103,634 | 17,359 | 28,562 | $32.26 | $48.39 | $16.13 | $33.23 | $49.84 | $16.61 |
| 2 ) Conductors | 51 | 3.00% | 98,315 | 17,009 | 28,280 | $26.14 | $39.56 | $11.89 | $26.93 | $38.73 | $12.24 |
| 3 ) Crew Dispatchers | 2 | 3.00% | 3,920 | 392 | | $24.76 | $37.14 | $0.00 | $25.50 | $38.25 | $0.00 |
| 4 ) Administration Clerk | 1 | 3.00% | 1,960 | 98 | | $22.28 | $33.43 | $0.00 | $22.95 | $34.43 | $0.00 |
| 5 ) Accounting / Payroll Clerk | 1 | 3.00% | 1,960 | 98 | | $19.81 | $29.71 | $0.00 | $20.40 | $30.60 | $0.00 |
| 6 ) | | | | | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7 ) | | | | | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 8 ) | | | | | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 9 ) | | | | | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 10 ) | | | | | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| TOTAL COVERED EMPLOYEES | 109 | 3.00% | 209,990 | 34,955 | 56,862 | | | | | | |

102204

Page 136.

Metrolink Second BAFO

| FRINGE BENEFITS: Covered Empl. (Vacation, Holiday, Benefits, FELA, or Worker's Comp, Retirement) | Fringe Benefit Rates (%) | | | Covered Employee Rates Incl. Fringe | | | Covered Empl Labor Cost Incl. Fringe Ben. | | | Total Annual Covered Empl Labor $ |
|---|---|---|---|---|---|---|---|---|---|---|
| | Straight Time | Premium Time | Other* | Straight Time $/Hr | Premium Time $/Hr | Other* Time $/Hr | Straight Time $ | Premium Time $ | Other* Time $ | |
| 1) Engineers | 48.17% | 48.17% | 48.17% | $49.23 | $73.85 | $24.62 | $5,112,198 | $1,281,971 | $703,610 | $7,097,778 |
| 2) Conductors | 54.33% | 54.33% | 54.33% | $41.56 | $56.68 | $18.89 | $4,085,533 | $964,116 | $534,335 | $5,583,985 |
| 3) Crew Dispatchers | 60.40% | 60.40% | 60.40% | $40.91 | $61.36 | $0.00 | $160,353 | $24,053 | $0 | $184,406 |
| 4) Administration Clerk | 66.07% | 66.07% | 66.07% | $38.12 | $57.17 | $0.00 | $74,708 | $5,603 | $0 | $80,311 |
| 5) Accounting / Payroll Clerk | 68.06% | 68.06% | 68.06% | $34.29 | $51.43 | $0.00 | $67,202 | $5,040 | $0 | $72,242 |
| 6) | | | | $0.00 | $0.00 | $0.00 | $0 | $0 | $0 | $0 |
| 7) | | | | $0.00 | $0.00 | $0.00 | $0 | $0 | $0 | $0 |
| 8) | | | | $0.00 | $0.00 | $0.00 | $0 | $0 | $0 | $0 |
| 9) | | | | $0.00 | $0.00 | $0.00 | $0 | $0 | $0 | $0 |
| 10) | | | | $0.00 | $0.00 | $0.00 | $0 | $0 | $0 | $0 |
| TOTAL COVERED EMPLOYEES) | 59.41% | 59.41% | 59.41% | | | | $9,499,994 | $2,280,783 | $1,237,945 | $13,018,722 |

* "Other labor" includes release time, guarantee, etc.

| TOTAL EXEMPT & COVERED EMPL | # Positions | Ave Inflation | | Total Annual Labor $ |
|---|---|---|---|---|
| TOTAL LABOR | 124 | 3.00% | | $14,712,543 |

Metrolink Second BAFO

102204

Page 137.

Page 14 of 35

102204

| | $ |
|---|---|
| DIRECT LABOR COSTS: | $14,712,543 |
| | |
| SUBCONTRACTS: | |
| (*Form 60* required for each) | |
| 1) Crew Transportation | $ 315,361.00 |
| 2) Crew Lodging | $ 351,900.00 |
| 3) BNSF - Training | $ 834,336.29 |
| 4) | $ - |
| 5) | $ - |
| 6) | $ - |
| 7) | $ - |
| 8) | $ - |
| SUB-TOTAL SUBCONTRACTS | $1,501,597 |
| | |
| OTHER NON-LABOR COSTS: | $800,000 |
| | |
| TOTAL DIRECT COSTS PROPOSED | $17,014,140 |
| Non-Labor Cost Mark-up @ 2.75% | $63,294 |
| G&A @          7.54% | $1,109,701 |
| OVERHEAD @     0.94% | $137,917 |
| COSTS INCLUDING G&A/OH & MARKUP | $18,325,052 |
| PROFIT/FEE @   6.75% | $993,097 |
| GRAND TOTAL YEAR 3 PRICE | $19,318,149 |

EXPLANATION OF COST AND BASIS OF ESTIMATE:

Rate set by SCRRA

Applies to Labor only

Applies to Labor only

Applies to Labor only

Metrolink Second BAFO

Page 138.

| YEAR 3 | SUBCONTRACTOR COST PROPOSAL<br>"FORM 60" |
|---|---|

Page 1 of 2

| Contract No. OP123-04<br>Subcontractor: Burlington Northern Sa | Subcontractor Address:<br>2600 Lou Meck Dr.<br>Ft. Worth, Texas 76161-0034 |
|---|---|
| Services to be furnished:<br><br>Provide safety and training programs | Location(s) where work is to be performed:<br><br>Los Angeles, CA; Overland Park, KS |

### DETAILED DESCRIPTION OF COST ELEMENTS

| 1.  LABOR (specify function/title) | HOURS | LABOR RATE PER HOUR | COST | TOTAL COST |
|---|---|---|---|---|
| Director - Operations | 2,080.0 | $   58.66 | $ 122,003.50 | $   164,094.71 |
| Director - Safety and Training | 2,080.0 | $   41.95 | $   87,255.84 | $   117,359.11 |
| Manager - Safety and Training | 80.0 | | $     2,810.13 | $       3,779.62 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| TOTAL DIRECT LABOR: | 4,240.0 | | | $   285,233.44 |
| 2. OVERHEAD RATE | | | 72% | |
| OVERHEAD AMOUNT | | | | $   205,368.08 |
| 3. SUBTOTAL LABOR AND OVERHEAD | | | | $   490,601.51 |
| LOWER TIER SUBCONTRACTORS (attach "Form 60" or similar | | | | |
| | | | | |
| | | | | |
| | | | | |
| TOTAL SUBCONSULTANTS: | | | $ | - |
| 4. OTHER DIRECT COSTS (itemize on Page 2 of Form 60) | | | | $   329,473.10 |
| 5. PROFIT OR FEE | | | | $   14,261.67 |
| 6. GRAND TOTAL COST: | | | | $   834,336.29 |

Page 139.

| Contract No. OP123-04<br>Subcontractor: | SUBCONTRACTOR<br>COST PROPOSAL<br>"FORM 60" | Page    2 of<br>2 |
|---|---|---|
| | | **YEAR 3** |

### SUPPORTING SCHEDULE

| ITEM NO | ITEM DESCRIPTION | COST |
|---|---|---|
| 4. | **Other Direct Costs** (attach supporting documentation) | |
| | Materials for emergency simulation | 4,858.92 |
| | Travel for 3 direct labor, 2 trips per year | 6,556.36 |
| | | |
| | Safety and training instruction | 318,057.82 |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | **TOTAL OTHER DIRECT COSTS:** | |
| | | 329,473.10 |

**Basis of Estimate:**

__DJ Mitchell II_____          _____

Printed Name of Authorized Signer*          Signature

Assistant Vice President, Passenger Operations

_____

Title

| YEAR 3 | SUBCONTRACTOR COST PROPOSAL "FORM 60" |
|---|---|
| | Page 1 of 2 |

| Contract No. OP123-04<br>Subcontractor:<br>Renzenberger, Inc | Subcontractor Address:<br>P.O. Box 16150<br>Shawnee, KS 66203 |
|---|---|
| Services to be furnished:<br><br>Crew Transportation | Location(s) where work is to be performed:<br><br>Various |

### DETAILED DESCRIPTION OF COST ELEMENTS

| 1.  LABOR (specify function/title) | HOURS | LABOR RATE PER HOUR | COST | TOTAL COST |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| **TOTAL DIRECT LABOR:** | | | | |
| 2. OVERHEAD RATE | | | % | |
| OVERHEAD AMOUNT | | | | |
| 3. SUBTOTAL LABOR AND OVERHEAD | | | | |
| LOWER TIER SUBCONTRACTORS (attach "Form 60" or similar | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| **TOTAL SUBCONSULTANTS:** | | | | |
| 4. OTHER DIRECT COSTS (itemize on Page 2 of Form 60) | | | | 3,5 36/ |
| 5. PROFIT OR FEE | | | | |
| 6. GRAND TOTAL COST: | | | | 3,5 36/ |

| Contract No. OP123-04<br>Subcontractor: | SUBCONTRACTOR COST<br>PROPOSAL<br>"FORM 60" | Page    2<br>of 2 |
|---|---|---|
| | | YEAR 3 |

### SUPPORTING SCHEDULE

| ITEM NO | ITEM DESCRIPTION | COST |
|---|---|---|
| 4. | **Other Direct Costs** (attach supporting documentation) | |
| | ANNUAL COST FOR CREW TRANSPORTATION SERVICES | 315,361 |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | **TOTAL OTHER DIRECT COSTS:** | 315,361 |

**Basis of Estimate:**

WILLIAM M. SMITH

Printed Name of Authorized Signer*

PRESIDENT

Title

William M. Smith

Signature

8/9/04

Page 142.

COMEXWEST                                    213688  14                        P.6

| YEAR 3 | SUBCONTRACTOR COST PROPOSAL "FORM 60" |
|---|---|

Page 1 of 2

Contract No. OP123-04
Subcontractor:

Subcontractor Address:

Services to be furnished:

Location(s) where work is to be performed:

## DETAILED DESCRIPTION OF COST ELEMENTS

| 1.  LABOR (specify function/title) | HOURS | LABOR RATE PER HOUR | COST | TOTAL COST |
|---|---|---|---|---|
| CHAPLIN COT | .25 | 11.47 | 2.8 | 2.86 |
| CHAPLIN SVC | .05 | 11.45 | .57 | .57 |
| HOUSEKEEPING | 50 | 9.45 | 4.72 | 472 |
| MGT | 10 | 20.0 | 2.0 | 2.0 |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
| TOTAL DIRECT LABOR: |  |  |  | 10.15 |
| 2. OVERHEAD RATE |  |  | % |  |
| OVERHEAD AMOUNT |  |  |  | 10.0 |
| 3. SUBTOTAL LABOR AND OVERHEAD |  |  |  | 21.15 |
| LOWER TIER SUBCONTRACTORS (attach "Form 60" or similar |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
| TOTAL SUBCONSULTANTS: |  |  |  |  |
| 4. OTHER DIRECT COSTS (itemize on Page 2 of Form 60) |  |  |  |  |
| 5. PROFIT OR FEE |  |  |  | 6.45 |
| 6. GRAND TOTAL COST: |  |  |  | 27.60 |

Page 143.

| Contract No. OP123-04<br>Subcontractor: | SUBCONTRACTOR COST<br>PROPOSAL<br>"FORM 60" | Page    2<br>of 2 |
|---|---|---|
| | | YEAR 3 |

## SUPPORTING SCHEDULE

| ITEM NO | ITEM DESCRIPTION | COST |
|---|---|---|
| 4. | Other Direct Costs (attach supporting documentation) | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | TOTAL OTHER DIRECT COSTS: | |

Basis of Estimate

_Rich Washban_
Printed Name of Authorized Signer*

_[signature]_
Signature

GM
Title

8/12/4
Date

* Per RFP Section 1C-26

RFP NO. OP123-04
METROLINK OPERATOR SERVICES
SECOND BAFO COST PROPOSAL SUBMITTED BY: _____ CONNEX RAILROAD LLC

CONTRACT YEAR 4 (JULY 1, 2008 TO JUNE 30, 2009)

255 Operating Weekdays    52 Operating Saturdays    52 Operating Sundays

| DIRECT LABOR Job Title: Exempt Employees | Total # Positions | Annual Inflation (%) | Prior Year Salary Range Minimum | Prior Year Salary Range Midpoint | Prior Year Salary Range Maximum | Current Year Including Inflation Salary Range Minimum | Current Year Including Inflation Salary Range Midpoint | Current Year Including Inflation Salary Range Maximum | Fringe Benefit Rate (%) | Midpoint Salary Including Fringe Benefits | Total Annual Exempt Labor $ |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1) General Manager | 1 | 3.00% | $116,699 | $127,308 | $137,917 | $120,200 | $131,127 | $142,055 | 38.13% | $181,120 | $181,120 |
| 2) Director of Finance | 1 | 3.00% | $74,263 | $79,568 | $84,872 | $76,491 | $81,955 | $87,418 | 52.29% | $124,812 | $124,812 |
| 3) Transportation Manager | 9 | 3.00% | $63,654 | $74,263 | $84,872 | $65,564 | $76,491 | $87,418 | 55.31% | $118,795 | $1,069,154 |
| 4) Road Foreman of Engines | 1 | 3.00% | $68,959 | $79,568 | $90,177 | $71,027 | $81,955 | $92,882 | 52.71% | $125,155 | $125,155 |
| 5) Admin Asst. to General Manag | 1 | 3.00% | $44,558 | $47,741 | $50,823 | $45,895 | $49,173 | $52,451 | 66.24% | $81,747 | $81,747 |
| 6) Customer Service Manager | 1 | 3.00% | $47,741 | $53,045 | $58,350 | $49,173 | $54,636 | $60,100 | 64.77% | $90,024 | $90,024 |
| 7) Human Resources Supervisor | 1 | 3.00% | $44,558 | $47,741 | $50,823 | $45,895 | $49,173 | $52,451 | 66.24% | $81,747 | $81,747 |
| 8) | | | $0 | $0 | $0 | $0 | $0 | $0 | | $0 | $0 |
| 9) | | | $0 | $0 | $0 | $0 | $0 | $0 | | $0 | $0 |
| 10) | | | $0 | $0 | $0 | $0 | $0 | $0 | | $0 | $0 |
| TOTAL EXEMPT EMPLOYEES | 15 | 3.00% | | | | | | | 56.53% | | $1,753,758 |

| DIRECT LABOR Job Title: Covered Employees | Total # Positions | Annual Inflation (%) | Total Labor Hours - Current Year Straight Time | Premium Time | Other* | Prior Year Labor Rates Straight Time $/Hr | Premium Time $/Hr | Other* Time $/Hr | Current Year Labor Rates Straight Time $/Hr | Premium Time $/Hr | Other* Time $/Hr |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1) Engineers | 53 | 3.00% | 101,912 | 17,037 | 28,053 | $33.23 | $49.84 | $16.61 | $34.22 | $51.34 | $17.11 |
| 2) Conductors | 51 | 3.00% | 98,315 | 17,009 | 28,280 | $28.93 | $36.73 | $12.24 | $27.73 | $37.83 | $12.61 |
| 3) Crew Dispatchers | 2 | 3.00% | 3,920 | 392 | | $25.50 | $38.25 | $0.00 | $26.27 | $39.40 | $0.00 |
| 4) Administration Clerk | 1 | 3.00% | 1,980 | 98 | | $22.95 | $34.43 | $0.00 | $23.64 | $35.46 | $0.00 |
| 5) Accounting / Payroll Clerk | 1 | 3.00% | 1,960 | 98 | | $20.40 | $30.60 | $0.00 | $21.01 | $31.52 | $0.00 |
| 6) | | | | | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7) | | | | | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 8) | | | | | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 9) | | | | | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 10) | | | | | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| TOTAL COVERED EMPLOYEES | 108 | 3.00% | 208,067 | 34,634 | 56,332 | | | | | | |

Metrolink Second BAFO

102204

| FRINGE BENEFITS: Covered Empl. (Vacation, Holiday, Benefits, FELA or Worker's Comp, Retirement) | Fringe Benefit Rates (%) | | | Covered Employee Rates Incl. Fringe | | | Covered Empl Labor Cost Incl. Fringe Ben. | | | Total Annual Covered Empl Labor $ |
|---|---|---|---|---|---|---|---|---|---|---|
| | Straight Time | Premium Time | Other* | Straight Time $/Hr | Premium Time $/Hr | Other* Time $/Hr | Straight Time $ | Premium Time $ | Other* Time $ | |
| 1) Engineers | 48.90% | 48.90% | 48.90% | $50.96 | $75.44 | $25.48 | $5,193,256 | $1,302,298 | $714,766 | $7,210,320 |
| 2) Conductors | 55.15% | 55.15% | 55.15% | $43.03 | $58.69 | $19.56 | $4,230,322 | $968,284 | $553,272 | $5,781,877 |
| 3) Crew Dispatchers | 61.31% | 61.31% | 61.31% | $42.37 | $63.56 | $0.00 | $166,097 | $24,914 | $0 | $191,011 |
| 4) Administration Clerk | 67.06% | 67.06% | 67.06% | $39.49 | $59.24 | $0.00 | $77,408 | $5,806 | $0 | $83,214 |
| 5) Accounting / Payroll Clerk | 69.08% | 69.08% | 69.08% | $35.53 | $53.29 | $0.00 | $69,639 | $5,223 | $0 | $74,862 |
| 6) | | | | $0.00 | $0.00 | $0.00 | $0 | $0 | $0 | $0 |
| 7) | | | | $0.00 | $0.00 | $0.00 | $0 | $0 | $0 | $0 |
| 8) | | | | $0.00 | $0.00 | $0.00 | $0 | $0 | $0 | $0 |
| 9) | | | | $0.00 | $0.00 | $0.00 | $0 | $0 | $0 | $0 |
| 10) | | | | $0.00 | $0.00 | $0.00 | $0 | $0 | $0 | $0 |
| TOTAL COVERED EMPLOYEES | 60.30% | 60.30% | 60.30% | | | | $9,736,721 | $2,336,524 | $1,268,038 | $13,341,284 |

* "Other labor" includes release time, guarantee, etc.

| TOTAL EXEMPT & COVERED EMPL | # Positions | Ave Inflation | | | | Total Annual Labor $ |
|---|---|---|---|---|---|---|
| TOTAL LABOR | 123 | 3.00% | | | | $15,095,042 |

Metrolink Second BAFO

102204

Page 147.

102204

## EXPLANATION OF COST AND BASIS OF ESTIMATE:

**DIRECT LABOR COSTS:**

$ | $15,095,042

**SUBCONTRACTS:**
("Form 60" required for each)

| | | |
|---|---|---|
| 1) Crew Transportation | $ | 324,822.00 |
| 2) Crew Lodging | $ | 377,400.00 |
| 3) BNSF - Training | $ | 859,366.38 |
| 4) | $ | - |
| 5) | $ | - |
| 6) | $ | - |
| 7) | $ | - |
| 8) | $ | - |

SUB-TOTAL SUBCONTRACTS: $1,561,588

**OTHER NON-LABOR COSTS:** $800,000

**TOTAL DIRECT COSTS PROPOSED** $17,456,630

Non-Labor Cost Mark-up @ 2.75%    Rate set by SCRRA    $54,944

G&A @    7.57%    Applies to Labor only.    $1,142,992

OVERHEAD @    0.94%    Applies to Labor only.    $142,055

COSTS INCLUDING G&A/OH & MARKUP    $18,806,621

PROFIT/FEE @    7.00%    Applies to Labor only.    $1,056,653

**GRAND TOTAL YEAR 4 PRICE** $19,863,274

Metrolink Second BAFO

Page 148.

| YEAR 4 | SUBCONTRACTOR COST PROPOSAL "FORM 60" |
|---|---|
| | Page 1 of 2 |

| Contract No. OP123-04 | Subcontractor Address: |
| Subcontractor: Burlington Northern Santa | 2600 Lou Meck Dr. |
| | Ft. Worth, Texas 76161-0034 |
| Services to be furnished: | Location(s) where work is to be performed: |
| Provide safety and training programs and | Los Angeles, CA; Overland Park, KS |

## DETAILED DESCRIPTION OF COST ELEMENTS

| 1. LABOR (specify function/title) | HOURS | LABOR RATE PER HOUR | COST | TOTAL COST |
|---|---|---|---|---|
| Director - Operations | 2,080.0 | $ 60.42 | $ 125,663.61 | $ 169,017.55 |
| Director - Safety and Training | 2,080.0 | $ 43.21 | $ 89,873.52 | $ 120,879.88 |
| Manager - Safety and Training | 80.0 | $ 36.18 | $ 2,894.43 | $ 3,893.01 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| TOTAL DIRECT LABOR: | 4,240.0 | | | $ 293,790.44 |
| 2. OVERHEAD RATE | | | 72% | |
| OVERHEAD AMOUNT | | | | $ 211,529.12 |
| 3. SUBTOTAL LABOR AND OVERHEAD | | | | $ 505,319.56 |
| LOWER TIER SUBCONTRACTORS (attach "Form 60" or similar supporting | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| TOTAL SUBCONSULTANTS: | | | | $ - |
| 4. OTHER DIRECT COSTS (itemize on Page 2 of Form 60) | | | | $ 339,357.30 |
| 5. PROFIT OR FEE | | | | $ 14,689.52 |
| 6. GRAND TOTAL COST: | | | | $ 859,366.38 |

| Contract No. OP123-04<br>Subcontractor: | SUBCONTRACTOR COST<br>PROPOSAL<br>"FORM 60" | Page    2 of<br>2 |
|---|---|---|
| | | YEAR 4 |

### SUPPORTING SCHEDULE

| ITEM NO | ITEM DESCRIPTION | COST |
|---|---|---|
| 4. | Other Direct Costs (attach supporting documentation) | |
| | Materials for emergency simulation | 5,004.69 |
| | Travel for 3 direct labor, 2 trips per year | 6,753.05 |
| | | |
| | Safety and training instruction | 327,599.55 |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | TOTAL OTHER DIRECT COSTS: | |
| | | 339,357.30 |

**Basis of Estimate:**



__DJ Mitchell II_____          _____
Printed Name of Authorized Signer*          Signature

Assistant Vice President, Passenger Operations

_____
Title

| YEAR 4 | SUBCONTRACTOR COST PROPOSAL<br>"FORM 60" |
|---|---|
| | Page 1 of 2 |

| Contract No. OP123-04<br>Subcontractor:<br>Renzenberger, Inc | Subcontractor Address:<br>P.O. Box 16150<br>Shawnee, KS 66203 |
|---|---|
| Services to be furnished:<br><br>Crew Transportation | Location(s) where work is to be performed:<br><br>Various |

## DETAILED DESCRIPTION OF COST ELEMENTS

| 1.  LABOR (specify function/title) | HOURS | LABOR RATE PER HOUR | COST | TOTAL COST |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| TOTAL DIRECT LABOR: | | | | |
| 2. OVERHEAD RATE | | | % | |
| OVERHEAD AMOUNT | | | | |
| 3. SUBTOTAL LABOR AND OVERHEAD | | | | |
| LOWER TIER SUBCONTRACTORS (attach "Form 60" or similar | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| TOTAL SUBCONSULTANTS: | | | | |
| 4. OTHER DIRECT COSTS (itemize on Page 2 of Form 60) | | | | 324,822 |
| 5. PROFIT OR FEE | | | | |
| 6. GRAND TOTAL COST: | | | | 324,822 |

Page 151.

| Contract No. OP123-04<br>Subcontractor: | SUBCONTRACTOR COST<br>PROPOSAL<br>"FORM 60" | Page 2<br>of 2 |
|---|---|---|
| | | YEAR 4 |

### SUPPORTING SCHEDULE

| ITEM NO | ITEM DESCRIPTION | COST |
|---|---|---|
| 4. | **Other Direct Costs** (attach supporting documentation) | |
| | *ANNUAL COST FOR CREW TRANSPORTATION SERVICES* | *324,822* |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | TOTAL OTHER DIRECT COSTS: | *324,822* |

**Basis of Estimate:**



*WILLIAM M. SMITH*
Printed Name of Authorized Signer*

*Signature*

*PRESIDENT*
Title

*8/9/04*

ONEXWEST                          2136  7614                    P. 8

| YEAR 4 | SUBCONTRACTOR COST PROPOSAL "FORM 60" |
|---|---|
| | Page 1 of 2 |

| Contract No. OP123-04 Subcontractor: | Subcontractor Address: 2400 N. SAN FERNANDO BLVD BURBANK, CA 91590 |
|---|---|
| Services to be furnished: LODGING | Location(s) where work is to be performed: SAME AS ABOVE |

## DETAILED DESCRIPTION OF COST ELEMENTS

| 1. LABOR (specify function/title) | HOURS | LABOR RATE PER HOUR | COST | TOTAL COST |
|---|---|---|---|---|
| CHECK IN / OUT | .25 | 11.81 | 2.95 | 2.95 |
| OPERABLE SVC | .05 | 11.81 | .59 | .59 |
| HOUSEKEEPING | .50 | 9.73 | 4.86 | 4.86 |
| MANAGEMENT / ACCT | .10 | 20.60 | 2.06 | 2.06 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| **TOTAL DIRECT LABOR:** | | | | 10.46 |
| 2. OVERHEAD RATE | | | % | |
| OVERHEAD AMOUNT | | | | 11.33 |
| 3. SUBTOTAL LABOR AND OVERHEAD | | | | 21.79 |
| LOWER TIER SUBCONTRACTORS (attach "Form 60" or similar | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| **TOTAL SUBCONSULTANTS:** | | | | |
| 4. OTHER DIRECT COSTS (itemize on Page 2 of Form 60) | | | | |
| 5. PROFIT OR FEE | | | | 7.81 |
| 6. GRAND TOTAL COST: | | | | 29.60 |

Page 153.

| Contract No. OP123-04<br>Subcontractor: | SUBCONTRACTOR COST<br>PROPOSAL<br>"FORM 60" | Page    2<br>of 2 |
|---|---|---|
| | | YEAR 4 |

**SUPPORTING SCHEDULE**

| ITEM NO | ITEM DESCRIPTION | COST |
|---|---|---|
| 4. | Other Direct Costs (attach supporting documentation) | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | TOTAL OTHER DIRECT COSTS: | |

Basis of Estimate:

_____
Printed Name of Authorized Signer*

_____
Title

*Per RFP Section 1C-26

_____
Signature

8/12/4
Date

Page 155.

RFP NO. OP123-04
METROLINK OPERATOR SERVICES
SECOND BAFO COST PROPOSAL SUBMITTED BY: _____ CONNEX RAILROAD LLC

CONTRACT YEAR 6 (JULY 1, 2009 TO JUNE 30, 2010)

Page 18 of 35

255 Operating Weekdays    52 Operating Saturdays    52 Operating Sundays

| DIRECT LABOR Job Title: Exempt Employees | Total # Positions | Annual Inflation (%) | Prior Year | | | Current Year Including Inflation | | | Fringe Benefit Rate (%) | Midpoint Salary Including Fringe Benefits | Total Annual Exempt Labor $ |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Salary Range Minimum | Salary Range Midpoint | Salary Range Maximum | Salary Range Minimum | Salary Range Midpoint | Salary Range Maximum | | | |
| 1.) General Manager | 1 | 3.00% | $120,200 | $131,127 | $142,055 | $123,806 | $135,061 | $146,316 | 38.70% | $187,326 | $187,326 |
| 2) Director of Finance | 1 | 3.00% | $78,491 | $81,995 | $87,418 | $78,786 | $84,413 | $90,041 | 53.08% | $129,219 | $129,219 |
| 3) Transportation Manager | 9 | 3.00% | $65,564 | $76,491 | $87,418 | $67,531 | $78,786 | $90,041 | 56.14% | $123,012 | $1,107,111 |
| 4) Road Foreman of Engines | 1 | 3.00% | $71,027 | $81,955 | $92,882 | $73,158 | $84,413 | $95,608 | 53.50% | $129,577 | $129,577 |
| 5) Admin Asst. to General Manag | 1 | 3.00% | $45,895 | $49,173 | $52,451 | $47,271 | $50,648 | $54,024 | 67.24% | $84,702 | $84,702 |
| 6) Customer Service Manager | 1 | 3.00% | $49,173 | $54,636 | $60,100 | $50,648 | $56,275 | $61,903 | 85.74% | $93,271 | $93,271 |
| 7) Human Resources Supervisor | 1 | 3.00% | $45,895 | $49,173 | $52,451 | $47,271 | $50,648 | $54,024 | 67.24% | $84,702 | $84,702 |
| 8) | | | $0 | $0 | $0 | $0 | $0 | $0 | | $0 | $0 |
| 9) | | | $0 | $0 | $0 | $0 | $0 | $0 | | $0 | $0 |
| 10) | | | $0 | $0 | $0 | $0 | $0 | $0 | | $0 | $0 |
| TOTAL EXEMPT EMPLOYEES | 15 | 3.00% | | | | | | | 57.38% | | $1,815,909 |

| DIRECT LABOR Job Title: Covered Employees | Total # Positions | Annual Inflation (%) | Total Labor Hours - Current Year | | | Prior Year Labor Rates | | | Current Year Labor Rates | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Straight Time | Premium Time | Other* | Straight Time $/Hr | Premium Time $/Hr | Other* Time $/Hr | Straight Time $/Hr | Premium Time $/Hr | Other* Time $/Hr |
| 1.) Engineers | 53 | 3.00% | 101,912 | 17,037 | 28,053 | $34.22 | $51.34 | $17.11 | $35.25 | $52.88 | $17.63 |
| 2.) Conductors | 51 | 3.00% | 98,315 | 17,009 | 28,280 | $27.73 | $37.83 | $12.61 | $28.57 | $38.97 | $12.99 |
| 3) Crew Dispatchers | 2 | 3.00% | 3,920 | 392 | | $26.27 | $39.40 | $0.00 | $27.06 | $40.58 | $0.00 |
| 4) Administration Clerk | 1 | 3.00% | 1,960 | 98 | 98 | $23.64 | $35.46 | $0.00 | $24.35 | $36.52 | $0.00 |
| 5) Accounting / Payroll Clerk | 1 | 3.00% | 1,960 | 98 | 98 | $21.01 | $31.52 | $0.00 | $21.64 | $32.47 | $0.00 |
| 6) | | | | | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7) | | | | | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 8) | | | | | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 9) | | | | | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 10) | | | | | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| TOTAL COVERED EMPLOYEES | 108 | 3.00% | 208,067 | 34,634 | 56,332 | | | | | | |

102204

Metrolink Second BAFO

Page 19 of 35

| FRINGE BENEFITS: Covered Empl. (Vacation, Holiday, Benefits, FELA or Worker's Comp, Retirement) | Fringe Benefit Rates (%) | | | Covered Employee Rates Incl. Fringe | | | Covered Empl Labor Cost Incl. Fringe Ben. | | | Total Annual Covered Empl Labor $ |
|---|---|---|---|---|---|---|---|---|---|---|
| | Straight Time | Premium Time | Other* | Straight Time $/Hr | Premium Time $/Hr | Other* Time $/Hr | Straight Time $ | Premium Time $ | Other* Time $ | |
| 1 ) Engineers | 49.63% | 49.63% | 49.63% | $52.75 | $79.12 | $26.37 | $5,375,403 | $1,347,974 | $739,836 | $7,463,212 |
| 2 ) Conductors | 55.98% | 55.98% | 55.98% | $44.58 | $60.78 | $20.28 | $4,380,463 | $1,033,715 | $572,908 | $5,987,086 |
| 3 ) Crew Dispatchers | 62.23% | 62.23% | 62.23% | $43.89 | $65.84 | $0.00 | $172,065 | $25,808 | $0 | $197,863 |
| 4 ) Administration Clerk | 68.07% | 68.07% | 68.07% | $40.92 | $61.39 | $0.00 | $80,211 | $6,016 | $0 | $86,226 |
| 5 ) Accounting / Payroll Clerk | 70.11% | 70.11% | 70.11% | $36.82 | $55.23 | $0.00 | $72,167 | $5,413 | $0 | $77,580 |
| 6 ) | | | | $0.00 | $0.00 | $0.00 | $0 | $0 | $0 | $0 |
| 7 ) | | | | $0.00 | $0.00 | $0.00 | $0 | $0 | $0 | $0 |
| 8 ) | | | | $0.00 | $0.00 | $0.00 | $0 | $0 | $0 | $0 |
| 9 ) | | | | $0.00 | $0.00 | $0.00 | $0 | $0 | $0 | $0 |
| 10 ) | | | | $0.00 | $0.00 | $0.00 | $0 | $0 | $0 | $0 |
| TOTAL COVERED EMPLOYEES | 61.20% | 61.20% | 61.20% | | | | $10,080,209 | $2,418,925 | $1,312,744 | $13,811,868 |

| TOTAL EXEMPT & COVERED EMPL | # Positions | Ave Inflation | | Total Annual Labor $ |
|---|---|---|---|---|
| TOTAL LABOR | 123 | 3.00% | | $15,827,877 |

* "Other labor" includes release time, guarantee, etc.

102204

Metrolink Second BAFO

Page 157.

102204

## EXPLANATION OF COST AND BASIS OF ESTIMATE:

| | $ | |
|---|---|---|
| **DIRECT LABOR COSTS:** | $15,627,877 | |
| **SUBCONTRACTS:**<br>(*Form 60" required for each) | | |
| 1) Crew Transportation | $ 334,566.00 | |
| 2) Crew Lodging | $ 377,400.00 | |
| 3) BNSF - Training | $ 885,147.38 | |
| 4) | $ . | |
| 5) | $ . | |
| 6) | $ . | |
| 7) | $ . | |
| 8) | $ . | |
| **SUB-TOTAL SUBCONTRACTS** | $1,597,113 | |
| **OTHER NON-LABOR COSTS:** | $600,000 | |
| **TOTAL DIRECT COSTS PROPOSED** | $18,024,990 | |
| Non-Labor Cost Mark-up @ 2.75% | $65,921 | |
| **G&A @** 7.53% | $1,177,282 | Rate set by SCRRA |
| **OVERHEAD @** 0.94% | $146,316 | Applies to Labor only |
| **COSTS INCLUDING G&A/OH & MARKUP** | $19,414,509 | Applies to Labor only |
| **PROFIT/FEE @** 7.25% | $1,133,021 | Applies to Labor only |
| **GRAND TOTAL YEAR 5 PRICE** | $20,547,530 | |

Page 158.

Metrolink Second BAFO

| YEAR 5 | SUBCONTRACTOR COST PROPOSAL "FORM 60" |
|---|---|
| | Page 1 of 2 |

| Contract No. OP123-04 | Subcontractor Address: |
|---|---|
| Subcontractor: Burlington Northern Santa | 2600 Lou Meck Dr. |
| | Ft. Worth, Texas 76161-0034 |
| Services to be furnished: | Location(s) where work is to be performed: |
| Provide safety and training programs and | Los Angeles, CA; Overland Park, KS |

### DETAILED DESCRIPTION OF COST ELEMENTS

| 1. LABOR (specify function/title) | HOURS | LABOR RATE PER HOUR | COST | TOTAL COST |
|---|---|---|---|---|
| Director - Operations | 2,080.0 | $ 62.23 | $129,433.52 | $ 174,088.08 |
| Director - Safety and Training | 2,080.0 | $ 44.50 | $ 92,569.73 | $ 124,506.28 |
| Manager - Safety and Training | 80.0 | $ 37.27 | $ 2,981.26 | $ 4,009.80 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| TOTAL DIRECT LABOR: | 4,240.0 | | | $ 302,604.16 |
| 2. OVERHEAD RATE | | | 72% | |
| OVERHEAD AMOUNT | | | | $ 217,875.00 |
| 3. SUBTOTAL LABOR AND OVERHEAD | | | | $ 520,479.16 |
| LOWER TIER SUBCONTRACTORS (attach "Form 60" or similar | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| TOTAL SUBCONSULTANTS: | | | $ - | |
| 4. OTHER DIRECT COSTS (itemize on Page 2 of Form 60) | | | | $ 349,538.02 |
| 5. PROFIT OR FEE | | | | $ 15,130.21 |
| 6. GRAND TOTAL COST: | | | | $ 885,147.38 |

Page 159.

| Contract No. OP123-04 Subcontractor: | SUBCONTRACTOR COST "FORM 60" | Page    2 of 2 |
|---|---|---|
| | | YEAR 5 |

| | SUPPORTING SCHEDULE | |
|---|---|---|
| **ITEM NO** | **ITEM DESCRIPTION** | **COST** |
| **4.** | **Other Direct Costs** (attach supporting documentation) | |
| | Materials for emergency simulation | 5,154.83 |
| | Travel for 3 direct labor, 2 trips per year | 6,955.64 |
| | Safety and training instruction | 337,427.54 |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | **TOTAL OTHER DIRECT COSTS:** | |
| | | 349,538.02 |

**Basis of Estimate:**

__DJ Mitchell II_____            _____
Printed Name of Authorized Signer*          Signature

Assistant Vice President, Passenger Operations
_____
Title

Page 160.

| YEAR 5 | SUBCONTRACTOR COST PROPOSAL<br>"FORM 60" |
|---|---|
| | Page 1 of 2 |

| Contract No. OP123-04<br>Subcontractor:<br>Renzenberger, Inc | Subcontractor Address:<br>P.O. Box 16150<br>Shawnee, KS 66203 |
|---|---|
| Services to be furnished:<br><br>Crew Transportation | Location(s) where work is to be performed:<br><br>Various |

### DETAILED DESCRIPTION OF COST ELEMENTS

| 1. LABOR (specify function/title) | HOURS | LABOR RATE PER HOUR | COST | TOTAL COST |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| TOTAL DIRECT LABOR: | | | | |
| 2. OVERHEAD RATE | | % | | |
| OVERHEAD AMOUNT | | | | |
| 3. SUBTOTAL LABOR AND OVERHEAD | | | | |
| LOWER TIER SUBCONTRACTORS (attach "Form 60" or similar | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| TOTAL SUBCONSULTANTS: | | | | |
| 4. OTHER DIRECT COSTS (itemize on Page 2 of Form 60) | | | | 334,566 |
| 5. PROFIT OR FEE | | | | |
| 6. GRAND TOTAL COST: | | | | 334,566 |

Page 161.

| Contract No. OP123-04<br>Subcontractor: | SUBCONTRACTOR COST<br>PROPOSAL<br>"FORM 60" | Page   2<br>of 2 |
|---|---|---|
| | | YEAR 5 |

### SUPPORTING SCHEDULE

| ITEM NO | ITEM DESCRIPTION | COST |
|---|---|---|
| 4. | **Other Direct Costs** (attach supporting documentation) | |
| | *ANNUAL COST FOR CREW TRANSPORTATION SERVICES* | $ 334,566 |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | **TOTAL OTHER DIRECT COSTS:** | 334,566 |

**Basis of Estimate:**

_William M. Smith_
**Printed Name of Authorized Signer***

_President_
**Title**

_William M. Smith_
Signature

_8/9/04_

NNEXWEST                          213    87614                    P. 10

| YEAR 5 | SUBCONTRACTOR COST PROPOSAL "FORM 60" |
|---|---|
| | Page 1 of 2 |

| Contract No OP123-04 Subcontractor: | Subcontractor Address: 2900 N. San Fernando Rv.D Burbank CA 91590 |
|---|---|
| Services to be furnished: LODGING | Location(s) where work is to be performed: SAME |

## DETAILED DESCRIPTION OF COST ELEMENTS

| 1. LABOR (specify function/title) | HOURS | LABOR RATE PER HOUR | COST | TOTAL COST |
|---|---|---|---|---|
| CHECK IN/OUT | .2 | 11.81 | 2.55 | 2.55 |
| OPERATIONAL SVC | .05 | 11.81 | .54 | .59 |
| HOUSEKEEPING | .50 | 9.73 | 4.86 | 486 |
| MGT / ACCT | .10 | 20.60 | 2.06 | 2.06 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| TOTAL DIRECT LABOR: | | | | 10.06 |
| 2. OVERHEAD RATE | | | % | |
| OVERHEAD AMOUNT | | | | 11.33 |
| 3. SUBTOTAL LABOR AND OVERHEAD | | | | 21.79 |
| LOWER TIER SUBCONTRACTORS (attach "Form 60" or similar | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| TOTAL SUBCONSULTANTS: | | | | |
| 4. OTHER DIRECT COSTS (itemize on Page 2 of Form 60) | | | | |
| 5. PROFIT OR FEE | | | | 7.81 |
| 6. GRAND TOTAL COST: | | | | 29.60 |

| Contract No. OP123-04<br>Subcontractor: | SUBCONTRACTOR COST<br>PROPOSAL<br>"FORM 60" | Page   2<br>of 2 |
|---|---|---|
| | | YEAR 5 |

### SUPPORTING SCHEDULE

| ITEM NO | ITEM DESCRIPTION | COST |
|---|---|---|
| 4. | Other Direct Costs (attach supporting documentation) | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | TOTAL OTHER DIRECT COSTS: | |

Basis of Estimate:


_Ricardo Worsham_
Printed Name of Authorized Signer*

_GM_
Title
* Per RFP Section 1C-26

_[signature]_
Signature

_8/12/14_
Date

RFP NO. OP123-04
METROLINK OPERATOR SERVICES
SECOND BAFO COST PROPOSAL SUBMITTED BY:

CONNEX RAILROAD LLC

CONTRACT YEAR 6 (JULY 1, 2010 TO JUNE 30, 2011)

Page 21 of 35

255 Operating Weekdays    52 Operating Saturdays    52 Operating Sundays

**DIRECT LABOR**

| Job Title: Exempt Employees | Total # Positions | Annual Inflation (%) | Prior Year Salary Range Minimum | Prior Year Salary Range Midpoint | Salary Range Maximum | Current Year Including Inflation Salary Range Minimum | Current Year Including Inflation Salary Range Midpoint | Current Year Including Inflation Salary Range Maximum | Fringe Benefit Rate (%) | Midpoint Salary Including Fringe Benefits | Total Annual Exempt Labor $ |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1.) General Manager | 1 | 3.00% | $123,806 | $135,061 | $146,316 | $127,520 | $139,113 | $150,706 | 39.28% | $193,753 | $193,753 |
| 2.) Director of Finance | 1 | 3.00% | $78,788 | $84,413 | $90,041 | $81,149 | $86,946 | $92,742 | 53.87% | $133,787 | $133,787 |
| 3.) Transportation Manager | 9 | 3.00% | $67,531 | $78,786 | $90,041 | $69,556 | $81,149 | $92,742 | 56.99% | $127,386 | $1,146,474 |
| 4.) Road Foremen of Engines | 1 | 3.00% | $73,158 | $84,413 | $95,668 | $75,353 | $86,946 | $98,538 | 54.31% | $134,162 | $134,162 |
| 5.) Admin Asst. to General Manag | 1 | 3.00% | $47,271 | $50,648 | $54,024 | $48,690 | $52,167 | $55,645 | 68.25% | $87,769 | $87,769 |
| 6.) Customer Service Manager | 1 | 3.00% | $50,648 | $56,275 | $61,903 | $52,167 | $57,954 | $63,760 | 66.73% | $96,641 | $96,641 |
| 7.) Human Resources Supervisor | 1 | 3.00% | $47,271 | $50,648 | $54,024 | $48,690 | $52,167 | $55,645 | 68.25% | $87,769 | $87,769 |
| 8.) | | | $0 | $0 | $0 | $0 | $0 | $0 | | $0 | $0 |
| 9.) | | | $0 | $0 | $0 | $0 | $0 | $0 | | $0 | $0 |
| 10.) | | | $0 | $0 | $0 | $0 | $0 | $0 | | $0 | $0 |
| TOTAL EXEMPT EMPLOYEES | 15 | 3.00% | | | | | | | 58.24% | | $1,880,357 |

**DIRECT LABOR**

| Job Title: Covered Employees | Total # Positions | Annual Inflation (%) | Total Labor Hours - Current Year Straight Time | Total Labor Hours - Current Year Premium Time | Total Labor Hours - Current Year Other* | Prior Year Labor Rates Straight Time $/Hr | Prior Year Labor Rates Premium Time $/Hr | Prior Year Labor Rates Other* Time $/Hr | Current Year Labor Rates Straight Time $/Hr | Current Year Labor Rates Premium Time $/Hr | Current Year Labor Rates Other* Time $/Hr |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1.) Engineers | 53 | 3.00% | 101,912 | 17,037 | 26,053 | $35.25 | $52.88 | $17.63 | $36.31 | $54.46 | $18.15 |
| 2.) Conductors | 51 | 3.00% | 98,315 | 17,009 | 28,280 | $28.57 | $38.97 | $12.99 | $29.42 | $40.13 | $13.38 |
| 3.) Crew Dispatchers | 2 | 3.00% | 3,920 | 392 | | $27.06 | $40.58 | $0.00 | $27.87 | $41.80 | $0.00 |
| 4.) Administration Clerk | 1 | 3.00% | 1,960 | 98 | | $24.35 | $36.52 | $0.00 | $25.08 | $37.62 | $0.00 |
| 5.) Accounting / Payroll Clerk | 1 | 3.00% | 1,960 | 98 | | $21.64 | $32.47 | $0.00 | $22.29 | $33.44 | $0.00 |
| 6.) | | | | | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7.) | | | | | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 8.) | | | | | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 9.) | | | | | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 10.) | | | | | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| TOTAL COVERED EMPLOYEES | 108 | 3.00% | 208,067 | 34,634 | 56,332 | | | | | | |

102204

Page 166.    Metrolink Second BAFO

Page 22 of 35

| FRINGE BENEFITS: Covered Empl. (Vacation, Holiday, Benefits, or Worker's Comp, FELA Retirement) | Fringe Benefit Rates (%) | | | Covered Employee Rates Incl. Fringe | | | Covered Empl Labor Cost Incl. Fringe Ben. | | | Total Annual Covered Empl $ |
|---|---|---|---|---|---|---|---|---|---|---|
| | Straight Time | Premium Time | Other* | Straight Time $/Hr | Premium Time $/Hr | Other* Time $/Hr | Straight Time $ | Premium Time $ | Other* Time $ | Labor $ |
| 1) Engineers | 50.37% | 50.37% | 50.37% | $54.60 | $81.90 | $27.30 | $5,564,211 | $1,395,321 | $765,822 | $7,725,354 |
| 2) Conductors | 56.82% | 56.82% | 56.82% | $48.14 | $62.94 | $20.98 | $4,536,185 | $1,070,458 | $563,272 | $6,199,896 |
| 3) Crew Dispatchers | 63.16% | 63.16% | 63.16% | $46.47 | $68.20 | $0.00 | $178,236 | $26,735 | $0 | $204,972 |
| 4) Administration Clerk | 69.09% | 69.09% | 69.09% | $42.41 | $63.61 | $0.00 | $83,119 | $8,234 | $0 | $89,353 |
| 5) Accounting / Payroll Clerk | 71.17% | 71.17% | 71.17% | $38.16 | $57.24 | $0.00 | $74,792 | $5,609 | $0 | $80,401 |
| 6) | | | | $0.00 | $0.00 | $0.00 | $0 | $0 | $0 | $0 |
| 7) | | | | $0.00 | $0.00 | $0.00 | $0 | $0 | $0 | $0 |
| 8) | | | | $0.00 | $0.00 | $0.00 | $0 | $0 | $0 | $0 |
| 9) | | | | $0.00 | $0.00 | $0.00 | $0 | $0 | $0 | $0 |
| 10) | | | | $0.00 | $0.00 | $0.00 | $0 | $0 | $0 | $0 |
| TOTAL COVERED EMPLOYEES | 62.12% | 62.12% | 62.12% | | | | $10,436,523 | $2,504,357 | $1,359,094 | $14,299,975 |

* "Other" labor includes release time, guarantee, etc.

| TOTAL EXEMPT & COVERED EMPL | # Positions | Ave Inflation | | Total Annual Labor $ |
|---|---|---|---|---|
| TOTAL LABOR | 123 | 3.00% | | $16,180,331 |

102204

Metrolink Second BAFO

Page 167.

Page 23 of 35

102204

## EXPLANATION OF COST AND BASIS OF ESTIMATE:

**DIRECT LABOR COSTS:** | $16,180,331

**SUBCONTRACTS:**
("Form 60" required for each)

| | |
|---|---|
| 1) Crew Transportation | $344,603.00 |
| 2) Crew Lodging | $377,400.00 |
| 3) BNSF - Training | $911,701.81 |
| 4) | $ . |
| 5) | $ . |
| 6) | $ . |
| 7) | $ . |
| 8) | $ . |

**SUB-TOTAL SUBCONTRACTS** | $1,633,705

**OTHER NON-LABOR COSTS:** | $800,000

**TOTAL DIRECT COSTS PROPOSED** | $18,614,036

Non-Labor Cost Mark-up @ 2.75% | $66,927

G&A @ 7.53% | $1,218,900 — Rate set by SCRRA

OVERHEAD @ 0.94% | $151,489 — Applies to Labor only.

**COSTS INCLUDING G&A/OH & MARKUP** | $20,051,352 — Applies to Labor only.

PROFIT/FEE @ 7.25% | $1,173,074 — Applies to Labor only.

**GRAND TOTAL YEAR 6 PRICE** | $21,224,428

Page 168.

Metrolink Second BAFO

| (YEAR 6) | SUBCONTRACTOR COST PROPOSAL "FORM 60" |
|---|---|
| | Page 1 of 2 |

Contract No. OP123-04
Subcontractor: Burlington Northern Santa

Subcontractor Address:
2600 Lou Meck Dr.
Ft. Worth, Texas 76161-0034

Services to be furnished:

Provide safety and training programs and

Location(s) where work is to be performed:

Los Angeles, CA; Overland Park, KS

## DETAILED DESCRIPTION OF COST ELEMENTS

| 1. LABOR (specify function/title) | HOURS | LABOR RATE PER HOUR | COST | TOTAL COST |
|---|---|---|---|---|
| Director - Operations | 2,080.0 | $ 64.09 | $ 133,316.53 | $ 179,310.73 |
| Director - Safety and Training | 2,080.0 | $ 45.84 | $ 95,346.82 | $ 128,241.48 |
| Manager - Safety and Training | 80.0 | $ 38.38 | $ 3,070.70 | $ 4,130.09 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| TOTAL DIRECT LABOR: | 4,240.0 | | | $ 311,682.29 |
| 2. OVERHEAD RATE | | | 72% | |
| OVERHEAD AMOUNT | | | | $ 224,411.25 |
| 3. SUBTOTAL LABOR AND OVERHEAD | | | | $ 536,093.54 |
| LOWER TIER SUBCONTRACTORS (attach "Form 60" or similar | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| TOTAL SUBCONSULTANTS: | | | | $          - |
| 4. OTHER DIRECT COSTS (itemize on Page 2 of Form 60) | | | | $ 360,024.16 |
| 5. PROFIT OR FEE | | | | $   15,584.11 |
| 6. GRAND TOTAL COST: | | | | $ 911,701.81 |

| Contract No. OP123-04 Subcontractor: | SUBCONTRACTOR COST "FORM 60" | Page 2 of 2 |
|---|---|---|
| | | YEAR 6 |

### SUPPORTING SCHEDULE

| ITEM NO | ITEM DESCRIPTION | COST |
|---|---|---|
| 4. | **Other Direct Costs** (attach supporting documentation) | |
| | Materials for emergency simulation | 5,309.48 |
| | Travel for 3 direct labor, 2 trips per year | 7,164.31 |
| | Safety and training instruction | 347,550.37 |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | **TOTAL OTHER DIRECT COSTS:** | |
| | | 360,024.16 |

Basis of Estimate:

__DJ Mitchell II_____

Printed Name of Authorized Signer*          _____
                                            Signature

Assistant Vice President, Passenger Operations

_____
Title

| OPTION YEAR 1<br>(YEAR 6) | SUBCONTRACTOR COST PROPOSAL<br>"FORM 60" |
|---|---|

Page 1 of 2

| Contract No. OP123-04<br>Subcontractor:<br>Renzenberger, Inc<br>Services to be furnished:<br><br>Crew Transportation | Subcontractor Address:<br>P.O. Box 16150<br>Shawnee. KS 66203<br>Location(s) where work is to be performed:<br><br>Various |
|---|---|

## DETAILED DESCRIPTION OF COST ELEMENTS

| 1. LABOR (specify function/title) | HOURS | LABOR RATE PER HOUR | COST | TOTAL COST |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
| TOTAL DIRECT LABOR: |  |  |  |  |
| 2. OVERHEAD RATE |  |  |  |  |
| OVERHEAD AMOUNT |  |  | % |  |
| 3. SUBTOTAL LABOR AND OVERHEAD |  |  |  |  |
| LOWER TIER SUBCONTRACTORS (attach "Form 60" or similar |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
| TOTAL SUBCONSULTANTS: |  |  |  |  |
| 4. OTHER DIRECT COSTS (itemize on Page 2 of Form 60) |  |  |  |  |
| 5. PROFIT OR FEE |  |  |  | 344,603 |
| 6. GRAND TOTAL COST: |  |  |  | 344,603 |

| Contract No. OP123-04<br>Subcontractor: | SUBCONTRACTOR COST<br>PROPOSAL<br>"FORM 60" | Page    2<br>of 2 |
|---|---|---|
| | | YEAR 6 |

### SUPPORTING SCHEDULE

| ITEM NO | ITEM DESCRIPTION | COST |
|---|---|---|
| 4. | **Other Direct Costs** (attach supporting documentation) | |
| | ANNUAL COST FOR CREW TRANSPORTATION SERVICES | $344,603 |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | **TOTAL OTHER DIRECT COSTS:** | $344,603 |

**Basis of Estimate:**

William M Smith

Printed Name of Authorized Signer*

PRESIDENT

Title

William M. Smith

Signature

8/9/04

Page 172.

NEXWEST                                 2136  7614                    p.10

| YEAR: 6 | SUBCONTRACTOR COST PROPOSAL "FORM 60" |
|---|---|
| | Page 1 of 2 |

| Contract No. OP123-04 Subcontractor: | Subcontractor Address: 2400 N. San Fernando Rd Burbank CA 91590 |
|---|---|
| Services to be furnished: LODGING | Location(s) where work is to be performed: SAME |

## DETAILED DESCRIPTION OF COST ELEMENTS

| 1.  LABOR (specify function/title) | HOURS | LABOR RATE PER HOUR | COST | TOTAL COST |
|---|---|---|---|---|
| CHCK IN/OUT | .25 | 11.81 | 2.95 | 2.95 |
| Operml Svc | .05 | 11.81 | .59 | .59 |
| Housekeepn | .50 | 9.73 | 4.86 | 4.86 |
| Mgt/Acct | .10 | 20.60 | 2.06 | 2.06 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| **TOTAL DIRECT LABOR:** | | | | 10.46 |
| 2. OVERHEAD RATE | | | % | |
| OVERHEAD AMOUNT | | | | 11.33 |
| 3. SUBTOTAL LABOR AND OVERHEAD | | | | 21.79 |
| LOWER TIER SUBCONTRACTORS (attach "Form 60" or similar | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| **TOTAL SUBCONSULTANTS:** | | | | |
| 4. OTHER DIRECT COSTS (itemize on Page 2 of Form 60) | | | | |
| 5. PROFIT OR FEE | | | | 7.81 |
| 6. GRAND TOTAL COST: | | | | 29.60 |

Page 173.

| Contract No. OP123-04<br>Subcontractor: | SUBCONTRACTOR COST<br>PROPOSAL<br>"FORM 60" | Page   2<br>of 2 |
|---|---|---|
| | | YEAR  6 |

## SUPPORTING SCHEDULE

| ITEM NO | ITEM DESCRIPTION | COST |
|---|---|---|
| 4. | Other Direct Costs (attach supporting documentation) | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | TOTAL OTHER DIRECT COSTS: | |

Basis of Estimate:

Ricardo Worsham
Printed Name of Authorized Signer*

GM
Title
* Per RFP Section IC-26

_Signature_

8/12/4
Date

RFP NO. OP123-04
METROLINK OPERATOR SERVICES
SECOND BAFO COST PROPOSAL SUBMITTED BY: _____ CONNEX RAILROAD LLC

CONTRACT YEAR 7 (JULY 1, 2011 TO JUNE 30, 2012)

255 Operating Weekdays     52 Operating Saturdays     52 Operating Sundays

| DIRECT LABOR Job Title: Exempt Employees | Total # Positions | Annual Inflation (%) | Prior Year | | | Current Year Including Inflation | | | Fringe Benefit Rate (%) | Midpoint Salary Including Fringe Benefits | Total Annual Exempt Labor $ |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Salary Range Minimum | Salary Range Midpoint | Salary Range Maximum | Salary Range Minimum | Salary Range Midpoint | Salary Range Maximum | | | |
| 1) General Manager | 1 | 3.00% | $127,520 | $139,113 | $150,706 | $131,346 | $143,286 | $155,227 | 39.87% | $200,410 | $200,410 |
| 2) Director of Finance | 1 | 3.00% | $81,149 | $86,946 | $92,742 | $83,584 | $89,554 | $95,524 | 54.68% | $138,525 | $138,525 |
| 3) Transportation Manager | 9 | 3.00% | $69,556 | $81,149 | $92,742 | $71,643 | $83,584 | $95,524 | 57.83% | $131,922 | $1,187,297 |
| 4) Road Foreman of Engines | 1 | 3.00% | $75,353 | $86,946 | $98,538 | $77,613 | $89,554 | $101,494 | 55.12% | $138,916 | $138,916 |
| 5) Admin Asst to General Manag | 1 | 3.00% | $48,690 | $52,167 | $55,645 | $50,150 | $53,732 | $57,315 | 69.27% | $90,953 | $90,953 |
| 6) Customer Service Manager | 1 | 3.00% | $52,187 | $57,984 | $63,760 | $53,732 | $59,703 | $65,673 | 67.73% | $100,138 | $100,138 |
| 7) Human Resources Supervisor | 1 | 3.00% | $48,690 | $52,167 | $55,645 | $50,150 | $53,732 | $57,315 | 69.27% | $90,953 | $90,953 |
| 8) | | | $0 | $0 | $0 | $0 | $0 | $0 | | $0 | $0 |
| 9) | | | $0 | $0 | $0 | $0 | $0 | $0 | | $0 | $0 |
| 10) | | | $0 | $0 | $0 | $0 | $0 | $0 | | $0 | $0 |
| TOTAL EXEMPT EMPLOYEES | 15 | 3.00% | | | | | | | 59.11% | | $1,947,192 |

| DIRECT LABOR Job Title: Covered Employees | Total # Positions | Annual Inflation (%) | Total Labor Hours - Current Year | | | Prior Year Labor Rates | | | Current Year Labor Rates | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Straight Time | Premium Time | Other* | Straight Time $/Hr | Premium Time $/Hr | Other* Time $/Hr | Straight Time $/Hr | Premium Time $/Hr | Other* Time $/Hr |
| 1) Engineers | 53 | 3.00% | 101,912 | 17,037 | 28,053 | $36.31 | $54.46 | $18.15 | $37.40 | $56.10 | $18.70 |
| 2) Conductors | 51 | 3.00% | 98,315 | 17,009 | 28,280 | $29.42 | $40.13 | $13.38 | $30.31 | $41.34 | $13.78 |
| 3) Crew Dispatchers | 2 | 3.00% | 3,920 | 392 | | $27.87 | $41.80 | $0.00 | $28.70 | $43.05 | $0.00 |
| 4) Administration Clerk | 1 | 3.00% | 1,960 | 98 | | $25.08 | $37.62 | $0.00 | $25.83 | $38.75 | $0.00 |
| 5) Accounting / Payroll Clerk | 1 | 3.00% | 1,960 | 98 | | $22.29 | $33.44 | $0.00 | $22.96 | $34.44 | $0.00 |
| 6) | | | | | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7) | | | | | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 8) | | | | | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 9) | | | | | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 10) | | | | | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| TOTAL COVERED EMPLOYEES | 108 | 3.00% | 206,067 | 34,634 | 56,332 | | | | | | |

102204

Metrolink Second BAFO

| FRINGE BENEFITS: Covered Empl. (Vacation, Holiday, Benefits, FELA or Worker's Comp, Retirement) | Fringe Benefit Rates (%) | | | Covered Employee Rates Incl. Fringe | | | Covered Empl Labor Cost Incl. Fringe Ben. | | | Total Annual Covered Empl Labor $ |
|---|---|---|---|---|---|---|---|---|---|---|
| | Straight Time | Premium Time | Other* | Straight Time $/Hr | Premium Time $/Hr | Other* Time $/Hr | Straight Time $ | Premium Time $ | Other* Time $ | |
| 1.) Engineers | 51.13% | 51.13% | 51.13% | $56.52 | $84.78 | $28.26 | $5,759,935 | $1,444,402 | $792,760 | $7,997,098 |
| 2.) Conductors | 57.67% | 57.67% | 57.87% | $47.778 | $65.18 | $21.73 | $4,697,642 | $1,108,563 | $614,391 | $6,420,597 |
| 3.) Crew Dispatchers | 64.11% | 64.11% | 64.11% | $47.10 | $70.66 | $0.00 | $184,849 | $27,897 | $0 | $212,347 |
| 4.) Administration Clerk | 70.12% | 70.12% | 70.12% | $43.95 | $65.92 | $0.00 | $86,137 | $8,460 | $0 | $592,597 |
| 5.) Accounting / Payroll Clerk | 72.23% | 72.23% | 72.23% | $39.55 | $59.32 | $0.00 | $77,516 | $5,814 | $0 | $83,330 |
| 6.) | | | | $0.00 | $0.00 | $0.00 | $0 | $0 | $0 | $0 |
| 7.) | | | | $0.00 | $0.00 | $0.00 | $0 | $0 | $0 | $0 |
| 8.) | | | | $0.00 | $0.00 | $0.00 | $0 | $0 | $0 | $0 |
| 9.) | | | | $0.00 | $0.00 | $0.00 | $0 | $0 | $0 | $0 |
| 10.) | | | | $0.00 | $0.00 | $0.00 | $0 | $0 | $0 | $0 |
| TOTAL COVERED EMPLOYEES | 63.05% | 63.05% | 63.05% | | | | $10,805,880 | $2,592,937 | $1,407,151 | $14,805,969 |

* "Other labor" includes release time, guarantee, etc.

| TOTAL EXEMPT & COVERED EMPL | # Positions | Avg Inflation | | Total Annual Labor $ |
|---|---|---|---|---|
| TOTAL LABOR | 123 | 3.00% | | $16,753,161 |

Metrolink Second BAFO

102204

102204

## EXPLANATION OF COST AND BASIS OF ESTIMATE:

**DIRECT LABOR COSTS:**

$ $16,753,161

**SUBCONTRACTS:**
(*Form 60* required for each)

| | |
|---|---|
| 1) Crew Transportation | $ 354,942.00 |
| 2) Crew Lodging | $ 390,150.00 |
| 3) BNSF - Training | $ 939,052.88 |
| 4) | $ - |
| 5) | $ - |
| 6) | $ - |
| 7) | $ - |
| 8) | $ - |

**SUB-TOTAL SUBCONTRACTS**   $1,684,145

**OTHER NON-LABOR COSTS:**   $800,000

**TOTAL DIRECT COSTS PROPOSED**   $19,237,305

Non-Labor Cost Mark-up @ 2.75%   $68,314   Rate set by SCRRA

G&A @   7.53%   $1,262,052   Applies to Labor only

OVERHEAD @   0.94%   $156,852   Applies to Labor only

**COSTS INCLUDING G&A/OH & MARKUP**   $20,724,523

PROFIT/FEE @   7.25%   $1,214,604   Applies to Labor only

**GRAND TOTAL YEAR 7 PRICE**   $21,939,128

Metrolink Second BAFO

Page 178.

| OPTION YEAR 2<br>(YEAR 7) | SUBCONTRACTOR COST PROPOSAL<br>"FORM 60" |
|---|---|

Page 1 of 2

| Contract No. OP123-04<br>Subcontractor: Burlington Northern Santa | Subcontractor Address:<br>2600 Lou Meck Dr.<br>Ft. Worth, Texas 76161-0034 |
|---|---|
| Services to be furnished:<br><br>Provide safety and training programs and | Location(s) where work is to be performed:<br><br>Los Angeles, CA; Overland Park, KS |

## DETAILED DESCRIPTION OF COST ELEMENTS

| 1. LABOR (specify function/title) | HOURS | LABOR RATE PER HOUR | COST | TOTAL COST |
|---|---|---|---|---|
| Director - Operations | 2,080.0 | $ 66.02 | $ 137,316.03 | $ 184,690.05 |
| Director - Safety and Training | 2,080.0 | $ 47.22 | $ 98,207.22 | $ 132,088.72 |
| Manager - Safety and Training | 80.0 | $ 39.54 | $ 3,162.82 | $ 4,253.99 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| TOTAL DIRECT LABOR: | 4,240.0 | | | $ 321,032.77 |
| 2. OVERHEAD RATE | | | 72% | |
| OVERHEAD AMOUNT | | | | $ 231,143.59 |
| 3. SUBTOTAL LABOR AND OVERHEAD | | | | $ 552,176.36 |
| LOWER TIER SUBCONTRACTORS (attach "Form 60" or similar supporting | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| TOTAL SUBCONSULTANTS: | | | | $ - |
| 4. OTHER DIRECT COSTS (itemize on Page 2 of Form 60) | | | | $ 370,824.88 |
| 5. PROFIT OR FEE | | | | $ 16,051.64 |
| 6. GRAND TOTAL COST: | | | | $ 939,052.88 |

Page 179.

| Contract No. OP123-04<br>Subcontractor: | SUBCONTRACTOR COST<br>PROPOSAL<br>"FORM 60" | Page   2 of<br>2 |
|---|---|---|
| | | YEAR 7 |

| SUPPORTING SCHEDULE | | |
|---|---|---|

| ITEM NO | ITEM DESCRIPTION | COST |
|---|---|---|
| 4. | **Other Direct Costs** (attach supporting documentation) | |
| | Materials for emergency simulation | 5,468.76 |
| | Travel for 3 direct labor, 2 trips per year | 7,379.24 |
| | | |
| | Safety and training instruction | 357,976.88 |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | TOTAL OTHER DIRECT COSTS: | |
| | | 370,824.88 |

Basis of Estimate:

__DJ Mitchell II_____

_____

Printed Name of Authorized Signer*          Signature

Assistant Vice President, Passenger Operations

_____

Title

Page 180.

| OPTION YEAR 2 (YEAR 7) | SUBCONTRACTOR COST PROPOSAL "FORM 60" |
|---|---|

Page 1 of 2

| Contract No. OP123-04<br>Subcontractor:<br>Renzenberger, Inc<br>Services to be furnished:<br><br>Crew Transportation | Subcontractor Address:<br>P.O. Box 16150<br>Shawnee, KS 66203<br>Location(s) where work is to be performed:<br><br>Various |
|---|---|

### DETAILED DESCRIPTION OF COST ELEMENTS

| 1.  LABOR (specify function/title) | HOURS | LABOR RATE PER HOUR | COST | TOTAL COST |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
| **TOTAL DIRECT LABOR:** |  |  |  |  |
| 2. OVERHEAD RATE |  |  |  |  |
| OVERHEAD AMOUNT |  |  | % |  |
| 3. SUBTOTAL LABOR AND OVERHEAD |  |  |  |  |
| LOWER TIER SUBCONTRACTORS (attach "Form 60" or similar |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
| **TOTAL SUBCONSULTANTS:** |  |  |  |  |
| 4. OTHER DIRECT COSTS (itemize on Page 2 of Form 60) |  |  |  |  |
| 5. PROFIT OR FEE |  |  |  | 35.7 9 7 2 |
| 6. GRAND TOTAL COST: |  |  |  | 35.7 9 7 2 |

| Contract No. OP123-04<br>Subcontractor: | SUBCONTRACTOR COST<br>PROPOSAL<br>"FORM 60" | Page   2<br>of 2 |
|---|---|---|
| | | YEAR 7 |

## SUPPORTING SCHEDULE

| ITEM NO | ITEM DESCRIPTION | COST |
|---|---|---|
| 4. | **Other Direct Costs** (attach supporting documentation) | |
| | *ANNUAL COST FOR CREW TRANSARTATION SERVICES* | $354,942 |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | **TOTAL OTHER DIRECT COSTS:** | $354,942 |

**Basis of Estimate:**

*WILLIAM M. SMITH*
Printed Name of Authorized Signer*

*PRESIDENT*
Title

*William M. Smith*
Signature

8/9/04

| OPTION YEAR 2 (YEAR 7) | | | SUBCONTRACTOR COST PROPOSAL "FORM 60" | |
|---|---|---|---|---|
| | | | | Page 1 of 2 |

| Contract No. OP123-04 | Subcontractor Address: |
|---|---|
| Subcontractor: RAMADA INN | 2900 N. SAN FERNANDO RD BURBANK CA 91504 |
| Services to be furnished: LODGING | Location(s) where work is to be performed: SAME |

### DETAILED DESCRIPTION OF COST ELEMENTS

| 1. LABOR (specify function/title) | HOURS | LABOR RATE PER HOUR | COST | TOTAL COST |
|---|---|---|---|---|
| CHECK IN / OUT | .21 | 12.16 | 3.04 | 3.04 |
| OPERATION SVC | .05 | 12.16 | .60 | .60 |
| HOUSEKEEPING | .50 | 10.02 | 5.01 | 5.01 |
| MGT / ACCT | .10 | 21.21 | 2.12 | 2.12 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| TOTAL DIRECT LABOR: | | | | 10.77 |
| 2. OVERHEAD RATE | | | % | |
| OVERHEAD AMOUNT | | | | 11.66 |
| 3. SUBTOTAL LABOR AND OVERHEAD | | | | 22.43 |
| LOWER TIER SUBCONTRACTORS (attach "Form 60" or similar | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| TOTAL SUBCONSULTANTS: | | | | |
| 4. OTHER DIRECT COSTS (itemize on Page 2 of Form 60) | | | | |
| 5. PROFIT OR FEE | | | | 8.17 |
| 6. GRAND TOTAL COST: | | | | 30.60 |

CONNEXWEST                              2136887614                    P. 15

| Contract No. OP123-04 Subcontractor: | SUBCONTRACTOR COST PROPOSAL "FORM 60" | Page 2 of 2 |
|---|---|---|
| | | YEAR 7 |

### SUPPORTING SCHEDULE

| ITEM NO | ITEM DESCRIPTION | COST |
|---|---|---|
| 4. | Other Direct Costs (attach supporting documentation) | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | TOTAL OTHER DIRECT COSTS: | |

Basis of Estimate:

_Ricardo Worseny_
Printed Name of Authorized Signer*

_GM_
Title
* Per RFP Section 1C-2G

_[signature]_
Signature

_8/12/4_
Date

RFP NO. OP123-04
METROLINK OPERATOR SERVICES
SECOND BAFO COST PROPOSAL SUBMITTED BY:

CONNEX RAILROAD LLC

CONTRACT YEAR 8 (JULY 1, 2012 TO JUNE 30, 2013)

Page 27 of 35

255 Operating Weekdays    52 Operating Saturdays    52 Operating Sundays

| DIRECT LABOR<br>Job Title: Exempt Employees | Total # Positions | Annual Inflation (%) | Prior Year Salary Range Minimum | Prior Year Salary Range Midpoint | Prior Year Salary Range Maximum | Current Year Including Inflation Salary Range Minimum | Current Year Including Inflation Salary Range Midpoint | Current Year Including Inflation Salary Range Maximum | Fringe Benefit Rate (%) | Midpoint Salary Including Fringe Benefits | Total Annual Exempt Labor $ |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1) General Manager | 1 | 3.00% | $131,346 | $143,286 | $155,227 | $135,286 | $147,585 | $159,884 | 40.46% | $207,305 | $207,305 |
| 2) Director of Finance | 1 | 3.00% | $83,584 | $89,554 | $95,524 | $86,091 | $92,241 | $98,390 | 55.50% | $143,437 | $143,437 |
| 3) Transportation Manager | 8 | 3.00% | $71,843 | $83,684 | $95,524 | $73,792 | $86,091 | $98,390 | 58.70% | $136,626 | $1,229,638 |
| 4) Road Foreman of Engines | 1 | 3.00% | $77,613 | $89,554 | $101,494 | $79,942 | $92,241 | $104,539 | 55.95% | $143,847 | $143,847 |
| 5) Admin Asst. to General Manag | 1 | 3.00% | $50,150 | $53,732 | $57,315 | $51,655 | $55,344 | $59,034 | 70.31% | $94,259 | $94,259 |
| 6) Customer Service Manager | 1 | 3.00% | $53,732 | $59,703 | $65,673 | $55,344 | $61,494 | $67,643 | 68.74% | $103,767 | $103,767 |
| 7) Human Resources Supervisor | 1 | 3.00% | $50,150 | $53,732 | $57,315 | $51,855 | $55,344 | $59,034 | 70.31% | $94,256 | $94,256 |
| 8) | | | $0 | $0 | $0 | $0 | $0 | $0 | | $0 | $0 |
| 9) | | | $0 | $0 | $0 | $0 | $0 | $0 | | $0 | $0 |
| 10) | | | $0 | $0 | $0 | $0 | $0 | $0 | | $0 | $0 |
| TOTAL EXEMPT EMPLOYEES | 15 | 3.00% | | | | | | | 60.00% | | $2,016,506 |

| DIRECT LABOR<br>Job Title: Covered Employees | Total # Positions | Annual Inflation (%) | Total Labor Hours - Current Year Straight Time | Total Labor Hours - Current Year Premium Time | Total Labor Hours - Current Year Other* | Prior Year Labor Rates Straight Time $/Hr | Prior Year Labor Rates Premium Time $/Hr | Prior Year Labor Rates Other* Time $/Hr | Current Year Labor Rates Straight Time $/Hr | Current Year Labor Rates Premium Time $/Hr | Current Year Labor Rates Other* Time $/Hr |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1) Engineers | 53 | 3.00% | 101,912 | 17,037 | 28,053 | $37.40 | $56.10 | $18.70 | $38.52 | $57.78 | $19.26 |
| 2) Conductors | 51 | 3.00% | 98,315 | 17,009 | 28,280 | $30.31 | $41.34 | $13.78 | $31.21 | $42.58 | $14.19 |
| 3) Crew Dispatchers | 2 | 3.00% | 3,920 | 392 | | $28.70 | $43.05 | $0.00 | $29.56 | $44.35 | $0.00 |
| 4) Administration Clerk | 1 | 3.00% | 1,960 | 88 | | $25.83 | $38.75 | $0.00 | $26.61 | $39.91 | $0.00 |
| 5) Accounting / Payroll Clerk | 1 | 3.00% | 1,960 | 98 | | $22.96 | $34.44 | $0.00 | $23.65 | $35.48 | $0.00 |
| 6) | | | | | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7) | | | | | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 8) | | | | | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 9) | | | | | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 10) | | | | | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| TOTAL COVERED EMPLOYEES | 108 | 3.00% | 208,067 | 34,634 | 56,332 | | | | | | |

102204

Page 186.

Metrolink Second BAFO

**FRINGE BENEFITS: Covered Empl.**
(Vacation, Holiday, Benefits, FELA or Worker's Comp, Retirement)

Page 28 of 35

| | Fringe Benefit Rates (%) | | | Covered Employee Rates Incl. Fringe | | | Covered Empl Labor Cost Incl. Fringe Ben. | | | Total Annual Covered Empl Labor $ |
|---|---|---|---|---|---|---|---|---|---|---|
| | Straight Time | Premium Time | Other* | Straight Time $/Hr | Premium Time $/Hr | Other* Time $/Hr | Straight Time $ | Premium Time $ | Other* Time $ | |
| 1.) Engineers | 51.90% | 51.90% | 51.90% | $58.51 | $87.76 | $29.26 | $5,962,841 | $1,495,284 | $820,687 | $8,278,811 |
| 2.) Conductors | 58.53% | 58.53% | 58.53% | $49.48 | $67.50 | $22.50 | $4,865,118 | $1,148,085 | $636,295 | $6,649,497 |
| 3.) Crew Dispatchers | 65.07% | 65.07% | 65.07% | $46.80 | $73.20 | $0.00 | $191,303 | $28,695 | $0 | $219,999 |
| 4.) Administration Clerk | 71.17% | 71.17% | 71.17% | $45.55 | $68.32 | $0.00 | $89,270 | $6,095 | $0 | $95,965 |
| 5.) Accounting / Payroll Clerk | 73.32% | 73.32% | 73.32% | $40.99 | $61.49 | $0.00 | $80,344 | $6,026 | $0 | $86,370 |
| 6.) | | | | $0.00 | $0.00 | $0.00 | $0 | $0 | $0 | $0 |
| 7.) | | | | $0.00 | $0.00 | $0.00 | $0 | $0 | $0 | $0 |
| 8.) | | | | $0.00 | $0.00 | $0.00 | $0 | $0 | $0 | $0 |
| 9.) | | | | $0.00 | $0.00 | $0.00 | $0 | $0 | $0 | $0 |
| 10.) | | | | $0.00 | $0.00 | $0.00 | $0 | $0 | $0 | $0 |
| TOTAL COVERED EMPLOYEES | 64.00% | 64.00% | 64.00% | | | | $11,188,875 | $2,684,785 | $1,456,982 | $15,330,642 |

* "Other labor" includes release time, guarantee, etc.

| TOTAL EXEMPT & COVERED EMPL | # Positions | Ave Inflation | | Total Annual Labor $ |
|---|---|---|---|---|
| TOTAL LABOR | 123 | 3.00% | | $17,347,148 |

Metrolink Second BAFO

102204

Page 187.

Page 29 of 35

102204

## EXPLANATION OF COST AND BASIS OF ESTIMATE:

| | $ |
|---|---|
| **DIRECT LABOR COSTS:** | $17,347,148 |

**SUBCONTRACTS:**
(*Form 60* required for each)

| | |
|---|---|
| 1) Crew Transportation | $ 365,590.00 |
| 2) Crew Lodging | $ 390,150.00 |
| 3) BNSF - Training | $ 967,224.46 |
| 4) | $      . |
| 5) | $      . |
| 6) | $      . |
| 7) | $      . |
| 8) | $      . |

| | |
|---|---|
| **SUB-TOTAL SUBCONTRACTS** | $1,722,964 |
| **OTHER NON-LABOR COSTS:** | $800,000 |

| | | |
|---|---|---|
| **TOTAL DIRECT COSTS PROPOSED** | $19,870,112 | |
| Non-Labor Cost Mark-up @ 2.75% | $69,382 | |
| G&A @ 7.53% | $1,308,799 | Rate set by SCRRA |
| OVERHEAD @ 0.94% | $162,413 | Applies to Labor only |
| **COSTS INCLUDING G&A/OH & MARKUP** | $21,408,705 | |
| PROFIT/FEE @ 7.25% | $1,257,668 | Applies to Labor only |
| **GRAND TOTAL YEAR 8 PRICE** | $22,666,374 | |

Metrolink Second BAFO

Page 188.

| OPTION YEAR 3 (YEAR 8) | SUBCONTRACTOR COST PROPOSAL "FORM 60" |
|---|---|
| | Page 1 of 2 |

| Contract No. OP123-04 | Subcontractor Address: |
|---|---|
| Subcontractor: Burlington Northern San | 2600 Lou Meck Dr. |
| | Ft. Worth, Texas 76161-0034 |
| Services to be furnished: | Location(s) where work is to be performed: |
| Provide safety and training programs at | Los Angeles, CA; Overland Park, KS |

### DETAILED DESCRIPTION OF COST ELEMENTS

| 1. LABOR (specify function/title) | HOURS | LABOR RATE PER HOUR | COST | TOTAL COST |
|---|---|---|---|---|
| Director - Operations | 2,080.0 | $ 68.00 | $141,435.51 | $ 190,230.76 |
| Director - Safety and Training | 2,080.0 | $ 48.63 | $101,153.44 | $ 136,051.37 |
| Manager - Safety and Training | 80.0 | $ 40.72 | $ 3,257.70 | $ 4,381.61 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| **TOTAL DIRECT LABOR:** | 4,240.0 | | | $ 330,663.75 |
| 2. OVERHEAD RATE | | | 72% | |
| OVERHEAD AMOUNT | | | | $ 238,077.90 |
| 3. SUBTOTAL LABOR AND OVERHEAD | | | | $ 568,741.64 |
| LOWER TIER SUBCONTRACTORS (attach "Form 60" or similar | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| **TOTAL SUBCONSULTANTS:** | | | | $ - |
| 4. OTHER DIRECT COSTS (itemize on Page 2 of Form 60) | | | | $ 381,949.63 |
| 5. PROFIT OR FEE | | | | $ 16,533.19 |
| 6. GRAND TOTAL COST: | | | | $ 967,224.46 |

| Contract No. OP123-04<br>Subcontractor: | SUBCONTRACTOR COST<br>PROPOSAL<br>"FORM 60" | Page    2 of<br>2 |
|---|---|---|

**OPTION YEAR 1 (YEAR 8)**

### SUPPORTING SCHEDULE

| ITEM NO. | ITEM DESCRIPTION | COST |
|---|---|---|
| 4. | **Other Direct Costs** (attach supporting documentation) | |
| | Materials for emergency simulation | 5,632.82 |
| | Travel for 3 direct labor, 2 trips per year | 7,600.62 |
| | | |
| | Safety and training instruction | 368,716.18 |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | **TOTAL OTHER DIRECT COSTS:** | |
| | | 381,949.63 |

Basis of Estimate:


__DJ Mitchell II_____
Printed Name of Authorized Signer*        _____
                                          Signature

Assistant Vice President, Passenger Operations
_____
Title

| OPTION YEAR 3 (YEAR 8) | SUBCONTRACTOR COST PROPOSAL "FORM 60" |
|---|---|
| | Page 1 of 2 |

| Contract No. OP123-04<br>Subcontractor:<br>Renzenberger, Inc | Subcontractor Address:<br>P.O. Box 16150<br>Shawnee, KS 66203 |
|---|---|
| Services to be furnished:<br><br>Crew Transportation | Location(s) where work is to be performed:<br><br>Various |

**DETAILED DESCRIPTION OF COST ELEMENTS**

| 1. LABOR (specify function/title) | HOURS | LABOR RATE PER HOUR | COST | TOTAL COST |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| TOTAL DIRECT LABOR: | | | | |
| 2. OVERHEAD RATE | | | % | |
| OVERHEAD AMOUNT | | | | |
| 3. SUBTOTAL LABOR AND OVERHEAD | | | | |
| LOWER TIER SUBCONTRACTORS (attach "Form 60" or similar | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| TOTAL SUBCONSULTANTS: | | | | |
| 4. OTHER DIRECT COSTS (itemize on Page 2 of Form 60) | | | | 365,530 |
| 5. PROFIT OR FEE | | | | |
| 6. GRAND TOTAL COST: | | | | 365,530 |

| Contract No. OP123-04<br>Subcontractor: | SUBCONTRACTOR COST<br>PROPOSAL<br>"FORM 60" | Page   2<br>of 2 |
|---|---|---|
| | OPTION YEAR 1 (YEAR 8) | |

### SUPPORTING SCHEDULE

| ITEM NO. | ITEM DESCRIPTION | COST |
|---|---|---|
| 4. | Other Direct Costs (attach supporting documentation) | |
| | ANNUAL COST FOR CREW TRANSPORTATION SERVICES | $365,550 |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | TOTAL OTHER DIRECT COSTS: | $365,550 |

Basis of Estimate:

WILLIAM M. SMITH
_____
Printed Name of Authorized Signer*

PRESIDENT
_____
Title

William M. Smith
_____
Signature

8/9/04
_____

| OPTION YEAR 2 (YEAR 8 | SUBCONTRACTOR COST PROPOSAL "FORM 60" |
|---|---|
| | Page 1 of 2 |

| Contract No. OP123-04 Subcontractor: RAMADA INN | Subcontractor Address: 2900 N. SAN FERNANDO BURBANK CA 91590 |
|---|---|
| Services to be furnished: LODGING | Location(s) where work is to be performed: SAME |

### DETAILED DESCRIPTION OF COST ELEMENTS

| 1. LABOR (specify function/title) | HOURS | LABOR RATE PER HOUR | COST | TOTAL COST |
|---|---|---|---|---|
| CHECK IN / OUT | .25 | 12.16 | 3.04 | 3.04 |
| OPERATOR SVC | .05 | 12.16 | .60 | .60 |
| HOUSEKEEPING | .50 | 10.02 | 5.01 | 5.01 |
| MGT / ACCT | .10 | 21.21 | 2.12 | 2.12 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| TOTAL DIRECT LABOR: | | | | 10.77 |
| 2. OVERHEAD RATE | | | % | |
| OVERHEAD AMOUNT | | | | |
| 3. SUBTOTAL LABOR AND OVERHEAD | | | | 11.66 |
| LOWER TIER SUBCONTRACTORS (attach "Form 60" or similar | | | | 22.43 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| TOTAL SUBCONSULTANTS: | | | | |
| 4. OTHER DIRECT COSTS (itemize on Page 2 of Form 60) | | | | |
| 5. PROFIT OR FEE | | | | 8.17 |
| 6. GRAND TOTAL COST: | | | | 30.60 |

ANNEXWEST                                    213 7614                    P.15

| Contract No. OP123-04<br>Subcontractor: | SUBCONTRACTOR COST<br>PROPOSAL<br>"FORM 60" | Page 2<br>of 2 |
|---|---|---|
| | | YEAR<br>8 |

### SUPPORTING SCHEDULE

| ITEM NO | ITEM DESCRIPTION | COST |
|---|---|---|
| 4. | Other Direct Costs (attach supporting documentation) | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | TOTAL OTHER DIRECT COSTS: | |

Basis of Estimate:

_Ficeros Wonsunn_
Printed Name of Authorized Signer*

_6 m_
Title
* Per RFP Section 1C-26

_[signature]_
Signature

_8/12/4_
Date

RFP NO. OP123-04
METROLINK OPERATOR SERVICES
SECOND BAFO COST PROPOSAL SUBMITTED BY: CONNEX RAILROAD LLC

CONTRACT YEAR 9 (JULY 1, 2013 TO JUNE 30, 2014)

Page 30 of 35

255 Operating Weekdays        52 Operating Saturdays        52 Operating Sundays

| DIRECT LABOR Job Title: Exempt Employees | Total # Positions | Annual Inflation (%) | Prior Year Salary Range Minimum | Prior Year Salary Range Midpoint | Salary Range Maximum | Current Year Including Inflation Salary Range Minimum | Salary Range Midpoint | Salary Range Maximum | Fringe Benefit Rate (%) | Midpoint Salary Including Fringe Benefits | Total Annual Exempt Labor $ |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1) General Manager | 1 | 3.00% | $135,286 | $147,585 | $159,884 | $139,345 | $152,012 | $164,680 | 41.07% | $214,447 | $214,447 |
| 2) Director of Finance | 1 | 3.00% | $86,091 | $92,241 | $98,390 | $88,674 | $95,008 | $101,342 | 56.34% | $148,531 | $148,531 |
| 3) Transportation Manager | 9 | 3.00% | $73,792 | $86,091 | $98,390 | $76,006 | $88,674 | $101,342 | 59.58% | $141,506 | $1,273,554 |
| 4) Road Foreman of Engines | 1 | 3.00% | $79,942 | $92,241 | $104,539 | $82,340 | $95,008 | $107,675 | 56.79% | $148,959 | $148,959 |
| 5) Admin Asst. to General Manag | 1 | 3.00% | $51,655 | $55,344 | $59,034 | $53,204 | $57,005 | $60,805 | 71.36% | $97,685 | $97,685 |
| 6) Customer Service Manager | 1 | 3.00% | $55,344 | $61,494 | $67,643 | $57,005 | $63,339 | $69,672 | 69.77% | $107,533 | $107,533 |
| 7) Human Resources Supervisor | 1 | 3.00% | $51,655 | $55,344 | $59,034 | $53,204 | $57,005 | $60,805 | 71.36% | $97,685 | $97,685 |
| 8) | | | $0 | $0 | $0 | $0 | $0 | $0 | | $0 | $0 |
| 9) | | | $0 | $0 | $0 | $0 | $0 | $0 | | $0 | $0 |
| 10) | | | $0 | $0 | $0 | $0 | $0 | $0 | | $0 | $0 |
| TOTAL EXEMPT EMPLOYEES | 15 | 3.00% | | | | | | | 60.90% | | $2,088,394 |

| DIRECT LABOR Job Title: Covered Employees | Total # Positions | Annual Inflation (%) | Total Labor Hours - Current Year Straight Time | Premium Time | Other* | Prior Year Labor Rates Straight Time $/Hr | Premium Time $/Hr | Other* Time $/Hr | Current Year Labor Rates Straight Time $/Hr | Premium Time $/Hr | Other* Time $/Hr |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1) Engineers | 53 | 3.00% | 101,912 | 17,037 | 28,053 | $38.52 | $57.78 | $19.26 | $39.68 | $59.51 | $19.84 |
| 2) Conductors | 51 | 3.00% | 98,315 | 17,009 | 28,280 | $31.21 | $42.58 | $14.19 | $32.15 | $43.86 | $14.62 |
| 3) Crew Dispatchers | 2 | 3.00% | 3,920 | 392 | | $29.56 | $44.35 | $0.00 | $30.45 | $45.68 | $0.00 |
| 4) Administration Clerk | 1 | 3.00% | 1,960 | 98 | | $26.61 | $39.91 | $0.00 | $27.41 | $41.11 | $0.00 |
| 5) Accounting / Payroll Clerk | 1 | 3.00% | 1,960 | 98 | | $23.65 | $35.48 | $0.00 | $24.36 | $36.54 | $0.00 |
| 6) | | | | | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7) | | | | | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 8) | | | | | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 9) | | | | | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 10) | | | | | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| TOTAL COVERED EMPLOYEES | 108 | 3.00% | 208,067 | 34,634 | 56,332 | | | | | | |

102204

Page 196.

Metrolink Second BAFO

| (YEAR 9) | SUBCONTRACTOR COST PROPOSAL "FORM 60" |
|---|---|
| | Page 1 of 2 |

| Contract No. OP123-04 | Subcontractor Address: |
|---|---|
| Subcontractor: Burlington Northern Sa | 2600 Lou Meck Dr. |
| | Ft. Worth, Texas 76161-0034 |
| Services to be furnished: | Location(s) where work is to be performed: |
| Provide safety and training programs a | Los Angeles, CA; Overland Park, KS |

## DETAILED DESCRIPTION OF COST ELEMENTS

| 1. LABOR (specify function/title) | HOURS | LABOR RATE PER HOUR | COST | TOTAL COST |
|---|---|---|---|---|
| Director - Operations | 2,080.0 | $ 70.04 | $ 145,678.58 | $ 195,937.68 |
| Director - Safety and Training | 2,080.0 | $ 50.09 | $ 104,188.04 | $ 140,132.92 |
| Manager - Safety and Training | 80.0 | $ 41.94 | $ 3,355.43 | $ 4,513.05 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| TOTAL DIRECT LABOR: | 4,240.0 | | | $ 340,583.66 |
| 2. OVERHEAD RATE | | | 72% | |
| OVERHEAD AMOUNT | | | | $ 245,220.23 |
| 3. SUBTOTAL LABOR AND OVERHEAD | | | | $ 585,803.89 |
| LOWER TIER SUBCONTRACTORS (attach "Form 60" or similar | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| TOTAL SUBCONSULTANTS: | | | | $          - |
| 4. OTHER DIRECT COSTS (itemize on Page 2 of Form 60) | | | | $ 393,408.12 |
| 5. PROFIT OR FEE | | | | $  17,029.18 |
| 6. GRAND TOTAL COST: | | | | $ 996,241.19 |

| Contract No. OP123-04<br>Subcontractor: | SUBCONTRACTOR COST<br>"FORM 60" | Page    2 of 2 |
|---|---|---|
| | | OPTION YEAR 1 (YEAR 9) |

### SUPPORTING SCHEDULE

| ITEM NO. | ITEM DESCRIPTION | COST |
|---|---|---|
| 4. | Other Direct Costs (attach supporting documentation) | |
| | Materials for emergency simulation | 5,801.81 |
| | Travel for 3 direct labor, 2 trips per year | 7,828.64 |
| | | |
| | Safety and training instruction | 379,777.67 |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | TOTAL OTHER DIRECT COSTS: | |
| | | 393,408.12 |

Basis of Estimate:

__DJ Mitchell II_____
Printed Name of Authorized Signer*

_____
Signature

Assistant Vice President, Passenger Operations

Title

**OPTION YEAR 4**
**(YEAR 9)**

**SUBCONTRACTOR COST PROPOSAL**
**"FORM 60"**

Page 1 of 2

| Contract No. OP123-04 | Subcontractor Address: |
|---|---|
| Subcontractor: | P.O. Box 16150 |
| Renzenberger, Inc | Shawnee, KS 66203 |
| Services to be furnished: | Location(s) where work is to be performed: |
| Crew Transportation | Various |

**DETAILED DESCRIPTION OF COST ELEMENTS**

| 1.  LABOR (specify function/title) | HOURS | LABOR RATE PER HOUR | COST | TOTAL COST |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
| **TOTAL DIRECT LABOR:** |  |  |  |  |
| **2. OVERHEAD RATE** |  |  | % |  |
| **OVERHEAD AMOUNT** |  |  |  |  |
| **3. SUBTOTAL LABOR AND OVERHEAD** |  |  |  |  |
| **LOWER TIER SUBCONTRACTORS** (attach "Form 60" or similar |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
| **TOTAL SUBCONSULTANTS:** |  |  |  |  |
| **4. OTHER DIRECT COSTS** (itemize on Page 2 of Form 60) |  |  |  | 376 558 |
| **5. PROFIT OR FEE** |  |  |  |  |
| **6. GRAND TOTAL COST:** |  |  |  | 376 558 |

| Contract No. OP123-04<br>Subcontractor: | SUBCONTRACTOR COST<br>PROPOSAL<br>"FORM 60" | Page    2<br>of 2 |
|---|---|---|

OPTION YEAR 1 (YEAR 9)

## SUPPORTING SCHEDULE

| ITEM NO. | ITEM DESCRIPTION | COST |
|---|---|---|
| 4. | Other Direct Costs (attach supporting documentation) | |
| | *Annual Cost For Crew Transportation Services* | $376,558 |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | TOTAL OTHER DIRECT COSTS: | $376,558 |

**Basis of Estimate:**

*William M. Smith*
Printed Name of Authorized Signer*

*President*
Title

*William M. Smith*
Signature

8/9/04

PRINEXWEST                    2136  7614                    P.14

| OPTION YEAR 2 (YEAR g | SUBCONTRACTOR COST PROPOSAL "FORM 60" |
|---|---|
| | Page 1 of 2 |

| Contract No. OP123-04<br>Subcontractor: RAMADA INN | Subcontractor Address:<br>2900 N. SAN FERNANDO RD<br>BURBANK CA 91590 |
|---|---|
| Services to be furnished:<br>LODGING | Location(s) where work is to be performed:<br>SAME |

### DETAILED DESCRIPTION OF COST ELEMENTS

| 1. LABOR (specify function/title) | HOURS | LABOR RATE PER HOUR | COST | TOTAL COST |
|---|---|---|---|---|
| CHECK IN / OUT | .25 | 12-16 | 3.04 | 3.04 |
| OPERATOR SVC | .05 | 12-16 | .60 | .60 |
| HOUSEKEEPING | .50 | 10.02 | 5.01 | 5.01 |
| MGT / ACCT. | .10 | 21.21 | 2.12 | 2.12 |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
| TOTAL DIRECT LABOR: |  |  |  | 10.77 |
| 2. OVERHEAD RATE |  |  | % |  |
| OVERHEAD AMOUNT |  |  |  | 11.66 |
| 3. SUBTOTAL LABOR AND OVERHEAD |  |  |  | 22.43 |
| LOWER TIER SUBCONTRACTORS (attach "Form 60" or similar |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
| TOTAL SUBCONSULTANTS: |  |  |  |  |
| 4. OTHER DIRECT COSTS (itemize on Page 2 of Form 60) |  |  |  |  |
| 5. PROFIT OR FEE |  |  |  | 8.17 |
| 6. GRAND TOTAL COST: |  |  |  | 30.60 |

Page 201.

ONNEXWEST                                   213  87614                    p. 15

| Contract No. OP123-04 Subcontractor: | SUBCONTRACTOR COST PROPOSAL "FORM 60" | Page 2 of 2 |
|---|---|---|
| | | YEAR 9 |

**SUPPORTING SCHEDULE**

| ITEM NO | ITEM DESCRIPTION | COST |
|---|---|---|
| 4. | Other Direct Costs (attach supporting documentation) | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | TOTAL OTHER DIRECT COSTS: | |

Basis of Estimate:

_Ricardo Wersum_
Printed Name of Authorized Signer*

_Gm_
Title

* Per RFP Section 1C-26

_[signature]_
Signature

_8/12/4_
Date

Page 203.

RFP NO. OP123-04
METROLINK OPERATOR SERVICES
SECOND BAFO COST PROPOSAL SUBMITTED BY:

CONNEX RAILROAD LLC

CONTRACT YEAR 10 (JULY 1, 2014 TO JUNE 30, 2016)

Page 33 of 35

255 Operating Weekdays          52 Operating Saturdays          52 Operating Sundays

| DIRECT LABOR / Job Title: Exempt Employees | Total # Positions | Annual Inflation (%) | Prior Year | | | Current Year Including Inflation | | | Fringe Benefit Rate (%) | Midpoint Salary Including Fringe Benefits | Total Annual Exempt Labor $ |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Salary Range Minimum | Salary Range Midpoint | Salary Range Maximum | Salary Range Minimum | Salary Range Midpoint | Salary Range Maximum | | | |
| 1) General Manager | 1 | 3.00% | $139,345 | $152,012 | $164,680 | $143,525 | $156,573 | $169,621 | 41.66% | $221,845 | $221,845 |
| 2) Director of Finance | 1 | 3.00% | $88,674 | $95,008 | $101,342 | $91,334 | $97,858 | $104,382 | 57.18% | $153,814 | $153,814 |
| 3) Transportation Manager | 9 | 3.00% | $76,006 | $88,674 | $101,342 | $78,286 | $91,334 | $104,382 | 60.47% | $146,567 | $1,319,107 |
| 4) Road Foreman of Engines | 1 | 3.00% | $82,340 | $95,008 | $107,675 | $84,810 | $97,858 | $110,906 | 57.64% | $154,262 | $154,262 |
| 5) Admin Asst. to General Manag | 1 | 3.00% | $53,204 | $57,005 | $60,805 | $54,800 | $58,715 | $62,629 | 72.43% | $101,244 | $101,244 |
| 6) Customer Service Manager | 1 | 3.00% | $57,005 | $63,339 | $69,672 | $58,715 | $65,239 | $71,763 | 70.82% | $111,442 | $111,442 |
| 7) Human Resources Supervisor | 1 | 3.00% | $53,204 | $57,005 | $60,805 | $54,800 | $58,715 | $62,629 | 72.43% | $101,244 | $101,244 |
| 8) | | | $0 | $0 | $0 | $0 | $0 | $0 | | $0 | $0 |
| 9) | | | $0 | $0 | $0 | $0 | $0 | $0 | | $0 | $0 |
| 10) | | | $0 | $0 | $0 | $0 | $0 | $0 | | $0 | $0 |
| TOTAL EXEMPT EMPLOYEES | 15 | 3.00% | | | | | | | 61.81% | | $2,162,957 |

| DIRECT LABOR / Job Title: Covered Employees | Total # Positions | Annual Inflation (%) | Total Labor Hours - Current Year | | | Prior Year Labor Rates | | | Current Year Labor Rates | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Straight Time | Premium Time | Other* | Straight Time $/Hr | Premium Time $/Hr | Other* Time $/Hr | Straight Time $/Hr | Premium Time $/Hr | Other* Time $/Hr |
| 1) Engineers | 53 | 3.00% | 101,912 | 17,037 | 28,053 | $39.68 | $59.51 | $19.84 | $40.87 | $61.30 | $20.43 |
| 2) Conductors | 51 | 3.00% | 98,315 | 17,009 | 28,280 | $32.15 | $43.86 | $14.62 | $33.12 | $45.17 | $15.06 |
| 3) Crew Dispatchers | 2 | 3.00% | 3,920 | 392 | | $30.45 | $45.68 | $0.00 | $31.36 | $47.05 | $0.00 |
| 4) Administration Clerk | 1 | 3.00% | 1,960 | 98 | | $27.41 | $41.11 | $0.00 | $28.23 | $42.34 | $0.00 |
| 5) Accounting / Payroll Clerk | 1 | 3.00% | 1,960 | 98 | | $24.38 | $36.54 | $0.00 | $25.09 | $37.64 | $0.00 |
| 6) | | | | | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 7) | | | | | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 8) | | | | | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 9) | | | | | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 10) | | | | | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| TOTAL COVERED EMPLOYEES | 108 | 3.00% | 208,067 | 34,634 | 56,332 | | | | | | |

102204

Page 204.

Metrolink Second BAFO

**FRINGE BENEFITS: Covered Empl. (Vacation, Holiday, Benefits, FELA or Worker's Comp, Retirement)**

| | Fringe Benefit Rates (%) | | | Covered Employee Rates Incl. Fringe | | | Covered Empl Labor Cost Incl. Fringe Ben. | | | Total Annual Covered Empl Labor $ |
|---|---|---|---|---|---|---|---|---|---|---|
| | Straight Time | Premium Time | Other* | Straight Time $/Hr | Premium Time $/Hr | Other* Time $/Hr | Straight Time $ | Premium Time $ | Other* Time $ | |
| 1.) Engineers | 53.46% | 53.46% | 53.46% | $62.71 | $94.07 | $31.36 | $6,391,303 | $1,802,726 | $879,858 | $8,873,889 |
| 2.) Conductors | 60.30% | 60.30% | 60.30% | $53.08 | $72.41 | $24.14 | $5,219,003 | $1,231,565 | $682,578 | $7,133,177 |
| 3.) Crew Dispatchers | 67.04% | 67.04% | 87.04% | $52.39 | $78.59 | $0.00 | $205,372 | $30,806 | $0 | $236,177 |
| 4.) Administration Clerk | 73.33% | 73.33% | 73.33% | $48.93 | $73.39 | $0.00 | $95,697 | $7,192 | $0 | $103,089 |
| 5.) Accounting / Payroll Clerk | 75.53% | 75.53% | 75.53% | $44.04 | $66.07 | $0.00 | $86,327 | $6,474 | $0 | $92,901 |
| 6) | | | | $0.00 | $0.00 | $0.00 | $0 | $0 | $0 | $0 |
| 7) | | | | $0.00 | $0.00 | $0.00 | $0 | $0 | $0 | $0 |
| 8) | | | | $0.00 | $0.00 | $0.00 | $0 | $0 | $0 | $0 |
| 9) | | | | $0.00 | $0.00 | $0.00 | $0 | $0 | $0 | $0 |
| 10) | | | | $0.00 | $0.00 | $0.00 | $0 | $0 | $0 | $0 |
| TOTAL COVERED EMPLOYEES | 65.93% | 65.93% | 65.93% | | | | $11,997,901 | $2,878,796 | $1,562,236 | $16,438,933 |

* "Other labor" includes release time, guarantee, etc.

| TOTAL EXEMPT & COVERED EMPL | # Positions | Ave Inflation | | Total Annual Labor $ |
|---|---|---|---|---|
| TOTAL LABOR | 123 | 3.00% | | $18,601,890 |

Page 35 of 35

102204

## EXPLANATION OF COST AND BASIS OF ESTIMATE:

**DIRECT LABOR COSTS:**

$16,601,890

**SUBCONTRACTS:**
(*From 60" required for each)

| | |
|---|---|
| 1) Crew Transportation | $ 387,854.00 |
| 2) Crew Lodging | $ 390,150.00 |
| 3) BNSF - Training | $ 1,026,128.43 |
| 4) | $ - |
| 5) | $ - |
| 6) | $ - |
| 7) | $ - |
| 8) | $ - |

SUB TOTAL SUBCONTRACTS          $1,804,132

**OTHER NON-LABOR COSTS:**          $800,000

**TOTAL DIRECT COSTS PROPOSED**          $21,206,023

Non-Labor Cost Mark-up @ 2.75%          $71,814          Rate set by SCRRA

G&A @          7.53%          $1,401,321          Applies to Labor only.

OVERHEAD @          0.94%          $174,160          Applies to Labor only (or other appropriate allocation base as identified in proposal)

COSTS INCLUDING G&A/OH & MARKUP          $22,853,118

PROFIT/FEE @          7.25%          $1,348,637          Applies to Labor only

**GRAND TOTAL YEAR 10 PRICE**          $24,201,755

Page 206.          Metrolink Second BAFO

| (YEAR 10) | **SUBCONTRACTOR COST PROPOSAL**<br>**"FORM 60"** | | |
|---|---|---|---|
| | | | Page 1 of 2 |

| Contract No. OP123-04<br>Subcontractor: Burlington Northern Sar | Subcontractor Address:<br>2600 Lou Meck Dr.<br>Ft. Worth, Texas 76161-0034 |
|---|---|
| Services to be furnished:<br><br>Provide safety and training programs a | Location(s) where work is to be performed:<br><br>Los Angeles, CA; Overland Park, KS |

**DETAILED DESCRIPTION OF COST ELEMENTS**

| 1. LABOR (specify function/title) | HOURS | LABOR RATE PER HOUR | COST | TOTAL COST |
|---|---|---|---|---|
| Director - Operations | 2,080.0 | $ 72.14 | $150,048.94 | $ 201,815.82 |
| Director - Safety and Training | 2,080.0 | $ 51.59 | $107,313.68 | $ 144,336.90 |
| Manager - Safety and Training | 80.0 | $ 43.20 | $ 3,456.09 | $ 4,648.44 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| **TOTAL DIRECT LABOR:** | 4,240.0 | | | $ 350,801.17 |
| 2. OVERHEAD RATE | | | 72% | |
| OVERHEAD AMOUNT | | | | $ 252,576.84 |
| 3. SUBTOTAL LABOR AND OVERHEAD | | | | $ 603,378.01 |
| LOWER TIER SUBCONTRACTORS (attach "Form 60" or similar | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| **TOTAL SUBCONSULTANTS:** | | | | $ - |
| 4. OTHER DIRECT COSTS (itemize on Page 2 of Form 60) | | | | $ 405,210.36 |
| 5. PROFIT OR FEE | | | | $ 17,540.06 |
| 6. GRAND TOTAL COST: | | | | $ 1,026,128.43 |

| Contract No. OP123-04 Subcontractor: | SUBCONTRACTOR COST "FORM 60" | Page    2 of 2 |
|---|---|---|
| | | OPTION YEAR 1 (YEAR 10) |

### SUPPORTING SCHEDULE

| ITEM NO. | ITEM DESCRIPTION | COST |
|---|---|---|
| 4. | **Other Direct Costs** (attach supporting documentation) | |
| | Materials for emergency simulation | 5,975.86 |
| | Travel for 3 direct labor, 2 trips per year | 8,063.50 |
| | | |
| | Safety and training instruction | 391,171.00 |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | **TOTAL OTHER DIRECT COSTS:** | |
| | | 405,210.36 |

**Basis of Estimate:**

__DJ Mitchell II_____

Printed Name of Authorized Signer*      _____
                                        Signature

Assistant Vice President, Passenger Operations

_____
Title

| OPTION YEAR 5 (YEAR 10) | SUBCONTRACTOR COST PROPOSAL "FORM 60" |
|---|---|
| | Page 1 of 2 |

| Contract No. OP123-04<br>Subcontractor:<br>Renzenberger, Inc | Subcontractor Address:<br>P.O. Box 16150<br>Shawnee, KS 66203 |
|---|---|
| Services to be furnished:<br><br>Crew Transportation | Location(s) where work is to be performed:<br><br>Various |

## DETAILED DESCRIPTION OF COST ELEMENTS

| 1. LABOR (specify function/title) | HOURS | LABOR RATE PER HOUR | COST | TOTAL COST |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| **TOTAL DIRECT LABOR:** | | | | |
| 2. OVERHEAD RATE | | | % | |
| OVERHEAD AMOUNT | | | | |
| 3. SUBTOTAL LABOR AND OVERHEAD | | | | |
| LOWER TIER SUBCONTRACTORS (attach "Form 60" or similar | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| **TOTAL SUBCONSULTANTS:** | | | | |
| 4. OTHER DIRECT COSTS (itemize on Page 2 of Form 60) | | | | |
| 5. PROFIT OR FEE | | | | 387,854 |
| 6. GRAND TOTAL COST: | | | | 387,854 |

| Contract No. OP123-04<br>Subcontractor: | SUBCONTRACTOR COST<br>PROPOSAL<br>"FORM 60" | Page 2<br>of 2 |
|---|---|---|

OPTION YEAR 1 (YEAR 10)

## SUPPORTING SCHEDULE

| ITEM NO. | ITEM DESCRIPTION | COST |
|---|---|---|
| 4. | Other Direct Costs (attach supporting documentation) | |
| | ANNUAL COST FOR CREW TRANSPORTATION SERVICES | $387,854 |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | TOTAL OTHER DIRECT COSTS: | $387,854 |

Basis of Estimate:


WILLIAM M. SMITH
_____
Printed Name of Authorized Signer*

PRESIDENT
_____
Title

William M. Smith
_____
Signature

8/9/04

Page 210.

ONNEXWEST                                2130 7614                    p.14

| OPTION YEAR 2 (YEAR 2) 10 | SUBCONTRACTOR COST PROPOSAL "FORM 60" |
|---|---|
| | Page 1 of 2 |

Contract No. OP123-04

Subcontractor: _RAMADA INN_

Subcontractor Address: 2900 N. SAN FERNANDO RD BURBANK CA 91590

Services to be furnished: _LODGING_

Location(s) where work is to be performed: SAME

## DETAILED DESCRIPTION OF COST ELEMENTS

| 1. LABOR (specify function/title) | HOURS | LABOR RATE PER HOUR | COST | TOTAL COST |
|---|---|---|---|---|
| CHECK IN /OUT | .25 | 12.16 | 3.04 | 3.04 |
| OPERATION SVC | .05 | 12.16 | .60 | .60 |
| HOUSEKEEPING | .50 | 10.02 | 5.01 | 5.01 |
| MGT / ACCT. | .10 | 21.21 | 2.12 | 2.12 |
| | | | | . |
| | | | | . |
| | | | | . |
| | | | | . |
| | | | | . |
| | | | | . |
| | | | | . |
| | | | | . |
| **TOTAL DIRECT LABOR:** | | | | 10.77 |
| 2. OVERHEAD RATE | | | % | |
| OVERHEAD AMOUNT | | | | 11.66 |
| 3. SUBTOTAL LABOR AND OVERHEAD | | | | 22.43 |
| LOWER TIER SUBCONTRACTORS (attach "Form 60" or similar | | | | . |
| | | | | . |
| | | | | . |
| | | | | . |
| | | | | . |
| | | | | . |
| **TOTAL SUBCONSULTANTS:** | | | | |
| 4. OTHER DIRECT COSTS (itemize on Page 2 of Form 60) | | | | . |
| 5. PROFIT OR FEE | | | | 8.17 |
| 6. GRAND TOTAL COST: | | | | 30.60 |

Page 211.

| Contract No. OP123-04<br>Subcontractor: | SUBCONTRACTOR COST<br>PROPOSAL<br>"FORM 60" | Page   2<br>of 2 |
|---|---|---|
| | | YEAR<br>10 |

### SUPPORTING SCHEDULE

| ITEM NO | ITEM DESCRIPTION | COST |
|---|---|---|
| 4. | Other Direct Costs (attach supporting documentation) | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | TOTAL OTHER DIRECT COSTS: | |

Basis of Estimate:

_Ricardo Wersony_
Printed Name of Authorized Signer*

_Signature_

6 m
Title
* Per RFP Section 1C-26

8/12/4
Date

Page 212.

Page 213.

RFP NO. OP1___-04
METROLINK OPERATOR SERVICES
SECOND BAFO COST PROPOSAL SUBMITTED BY: CONNEX RAILROAD LLC

SUMMARY OF SUBCONTRACTOR COSTS
Page 2 of 35

102204

| SUBCONTRACTOR NAME | SERVICES PROVIDED | MOB. | YEAR 1 | YEAR 2 | YEAR 3 | YEAR 4 | YEAR 5 | OPTION YEAR 1 (YEAR 6) | OPTION YEAR 2 (YEAR 7) | OPTION YEAR 3 (YEAR 8) | OPTION YEAR 4 (YEAR 9) | OPTION YEAR 5 (YEAR 10) | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 Rezenberger, Inc. | Crew Transportation | $    - | $ 297,258 | $ 306,176 | $ 315,361 | $ 324,822 | $ 334,566 | $ 344,603 | $ 354,942 | $ 365,590 | $ 376,558 | $ 387,854 | $ 3,407,730 |
| 2 Ramada Inn | Crew Lodging | $    - | $ 351,900 | $ 351,900 | $ 351,900 | $ 377,400 | $ 377,400 | $ 377,400 | $ 390,150 | $ 390,150 | $ 390,150 | $ 390,150 | $ 3,748,500 |
| 3 BNSF | Staff Training | $ 441,970 | $ 776,609 | $ 810,035 | $ 834,336 | $ 859,366 | $ 885,147 | $ 911,702 | $ 939,053 | $ 967,224 | $ 996,241 | $ 1,026,128 | $ 9,005,84 |
| 4 | | | | | | | | | | | | | $    . |
| 5 | | | | | | | | | | | | | $    . |
| 6 | | | | | | | | | | | | | $    . |
| 7 | | | | | | | | | | | | | $    . |
| 8 | | | | | | | | | | | | | $    . |
| | TOTALS | $ 441,970 | $ 1,425,767 | $ 1,468,111 | $ 1,501,597 | $ 1,561,588 | $ 1,597,113 | $ 1,633,705 | $ 1,684,145 | $ 1,722,984 | $ 1,762,949 | $ 1,804,132 | $16,162,073 |

Metrolink Second BAFO

Page 214.

**METROLINK PROPOSAL #OP123-04**
**SECOND BAFO 10/22/04**
**DIRECT COSTS OTHERS**

| | YEAR 1 | YEAR 2 | YEAR 3 | YEAR 4 | YEAR 5 |
|---|---|---|---|---|---|
| ial costs | | | | | |
| Relocation costs for General Manager and direct reports | | | | | |
| General Manager | | | | | |
| Director of Operation | | | | | |
| Director of Finance and Administration | | | | | |
| Director of Training and Safety | | | | | |
| Contracted services | | | | | |
| Training, cost of wages, salaries, benefits and expenses of attendees (by subcontractor or by operator), cost of course development by contractor personnel of new programs (not included in appendix 9), cost of course development by third parties | 535.125 | 299.650 | 180.961 | 180.961 | 180.961 |
| Employee travel, according to Authority guidelines | 24.000 | 24.000 | 24.000 | 24.000 | 24.000 |
| Facility charges | | | | | |
| Forms and supplies | 5.000 | 5.000 | 5.000 | 5.000 | 5.000 |
| License fees and expenses | 2.650 | 2.650 | 2.650 | 2.650 | 2.650 |
| Drug & Alcohol Testing | 15.000 | 15.000 | 15.000 | 15.000 | 15.000 |
| Office supplies, equipment and expenses | 20.000 | 20.000 | 20.000 | 20.000 | 20.000 |
| Vehicle and equipment expenses (rental, maintenance and supply) | 8.000 | 8.000 | 8.000 | 8.000 | 8.000 |
| Printing and photography | 2.000 | 2.000 | 2.000 | 2.000 | 2.000 |
| Radio and communications | 5.000 | 5.000 | 5.000 | 5.000 | 5.000 |
| Safety equipment | 12.000 | 12.000 | 12.000 | 12.000 | 12.000 |
| Service disruption expenses | 2.000 | 2.000 | 2.000 | 2.000 | 2.000 |
| Telephone, if no paid directly by Authority | 46.500 | 46.500 | 46.500 | 46.500 | 46.500 |
| Crew accommodation necessary to support split shifts | | | | | |
| Crew transportation cost to support the Service | | | | | |
| Number of employees | | | | | |
| Mystery Riders | 25.000 | 25.000 | 25.000 | 25.000 | 25.000 |
| Advisory Committee | 10.000 | 10.000 | 10.000 | 10.000 | 10.000 |
| Entertainment staff | 2.000 | 2.000 | 2.000 | 2.000 | 2.000 |
| Postage and courier | 3.000 | 3.000 | 3.000 | 3.000 | 3.000 |
| **SUBTOTAL** | 717,275 | 481,800 | 363,111 | 363,111 | 363,111 |
| Escalation | 0 | 14.454 | 22.113 | 33.670 | 45.574 |
| **TOTAL** | 717,275 | 496,254 | 385,224 | 396,781 | 408,685 |

**METROLINK PROPOSAL #OP123-04**

**OVERHEAD AND G&A COSTS**

**ATTACHMENT III**

| | YEAR 1 Overhead Costs | YEAR 1 G&A Costs | YEAR 2 Overhead Costs | YEAR 2 G&A Costs | YEAR 3 Overhead Costs | YEAR 3 G&A Costs | YEAR 4 Overhead Costs | YEAR 4 G&A Costs | YEAR 5 Overhead Costs | YEAR 5 G&A Costs |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 Administration of EEO and DBE programs | | | | | | | | | | |
| 2 Administration of procurement | | | | | | | | | | |
| 3 Affirmative action | | | | | | | | | | |
| 4 Consumer affairs | | | | | | | | | | |
| 5 Contract administration | | | | | | | | | | |
| 6 Corporate development and personnel development | 48 000 | 5 000 | 48 000 | 5 000 | 48 000 | 5 000 | 48 000 | 5 000 | 48 000 | 5 000 |
| 7 Division management and support | | | | | | | | | | |
| 8 Emergency procedures | | | | | | | | | | |
| 9 Finance and accounting - account payable support, budgeting, corporate accounting, material accounting support, payroll support | | 20 000 | | 20 000 | | 20 000 | | 20 000 | | 20 000 |
| 10 Audit | | 50 000 | | 50 000 | | 50 000 | | 50 000 | | 50 000 |
| 11 Fines and penalties assessed by FRA or others | | | | | | | | | | |
| 12 Government affairs | | | | | | | | | | |
| 13 Information systems computer hardware and software required for corporate systems and reports, corporate systems, electronic communication lines and interfaces | 70 000 | | 70 000 | | 70 000 | | 70 000 | | 70 000 | |
| 14 Insurance - General Liability (1) | | 8 000 | | 8 000 | | 8 000 | | 8 000 | | 8 000 |
| 15 Insurance-EPL | | 800 000 | | 800 000 | | 800 000 | | 800 000 | | 800 000 |
| 16 Insurance-Auto | | 50 000 | | 50 000 | | 50 000 | | 50 000 | | 50 000 |
| 17 Employee Incentives | | 20 000 | | 20 000 | | 20 000 | | 20 000 | | 20 000 |
| 18 Labor relations appeals and litigation claims and hearings, investigations, negotiations | | 25 000 | | 25 000 | | 25 000 | | 25 000 | | 25 000 |
| 19 Locomotive engineer certification | | | | | | | | | | |
| 20 Management reports corporate | | | | | | | | | | |
| 21 Medical program management | | | | | | | | | | |
| 22 Miscellaneous analys corporate | | 10 000 | | 25 000 | | 25 000 | | 25 000 | | 25 000 |
| 23 Operation lifesaver | | 6 000 | | 6 000 | | 6 000 | | 6 000 | | 6 000 |
| 24 Personnel and administration benefits plan | | 4 000 | | 4 000 | | 4 000 | | 4 000 | | 4 000 |
| 25 Workers comp administration | | 10 000 | | 15 000 | | 15 000 | | 15 000 | | 15 000 |
| 26 Planning corporate | 12 000 | | 12 000 | | 12 000 | | 12 000 | | 12 000 | |
| 27 Police and security liaison | | | | | | | | | | |
| 28 Preparation and printing of all plans and reports | | | | | | | | | | |
| 29 Public affairs | | | | | | | | | | |
| 30 Purchasing support | | | | | | | | | | |
| 31 Railroad liaison | | | | | | | | | | |
| 32 Relocation of management employees | | | | | | | | | | |
| 33 Risk examiner | | | | | | | | | | |
| 34 Rules program management | | | | | | | | | | |
| 35 Safety program management | | | | | | | | | | |
| 36 Safety rewards and incentives | | | | | | | | | | |
| 37 Salary, travel and expenses of all contractor staff other than positions in approved budget | | 12 000 | | 12 000 | | 12 000 | | 12 000 | | 12 000 |
| 38 Substance abuse detection | | 6 000 | | 6 000 | | 6 000 | | 6 000 | | 6 000 |
| 39 training, development and maintenance or contractor-provided leasing courses of appendix 3 development and modification by contractor personnel of leasing and future courses, wages, benefits, expenses and courses | | | | | | | | | | |
| 40 Contingencies | | | | | | | | | | |
| **TOTAL, non inflated** | 130 000 | 1,026,000 | 130,000 | 1,046,000 | 130,000 | 1,046,000 | 130,000 | 1,046,000 | 130,000 | 1,046,000 |
| Inflation @ 3% per year | 0 | 0 | 3,900 | 31,380 | 7,917 | 63,701 | 12,055 | 96,992 | 16,316 | 131,282 |
| Total G&A and Overhead | 130,000 | 1,026,000 | 133,900 | 1,077,380 | 137,917 | 1,109,701 | 142,055 | 1,142,992 | 146,316 | 1,177,282 |
| Base = Total Direct Labor | $13,832,000 | $13,832,000 | $14,318,108 | $14,318,108 | $14,712,543 | $14,712,543 | $15,095,042 | $15,095,042 | $15,627,877 | $15,627,877 |
| G&A / Overhead Rates | 0.94% | 7.42% | 0.94% | 7.52% | 0.94% | 7.54% | 0.94% | 7.57% | 0.94% | 7.53% |

Metrolink Second SAFO

1/22/04

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY**

This case has been assigned to District Judge George H. Wu and the assigned discovery Magistrate Judge is Jacqueline Chooljian.

The case number on all documents filed with the Court should read as follows:

## CV08- 6987 GW (JCx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

===================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| [X] **Western Division** <br> 312 N. Spring St., Rm. G-8 <br> Los Angeles, CA 90012 | [ ] **Southern Division** <br> 411 West Fourth St., Rm. 1-053 <br> Santa Ana, CA 92701-4516 | [ ] **Eastern Division** <br> 3470 Twelfth St., Rm. 134 <br> Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN CALIFORNIA REGIONAL RAIL
AUTHORITY DBA METROLINK

PLAINTIFF(S)

v.

CONNEX RAILROAD, LLC.

DEFENDANT(S).

CASE NUMBER

**CV08-06987 GW (JCx)**

**SUMMONS**

TO:   DEFENDANT(S): CONNEX RAILROAD, LLC

A lawsuit has been filed against you.

Within 20 _____ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached [X] complaint [ ] _____ amended complaint [ ] counterclaim [ ] cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, John H. Ernster, Esq. _____ , whose address is Ernster Law Offices, 70 South Lake Ave. Ste 750, Pasadena, CA 91101 _____ . If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: _____ OCT 2 2 2008 _____

By: _____ **NATALIE LONGORIA** _____

Deputy Clerk

(Seal of the Court)

1198

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

CV-01A (12/07)                                          **SUMMONS**

**COPY**

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| SOUTHERN CALIFORNIA REGIONAL RAIL AUTHORITY DBA METROLINK | CONNEX RAILROAD, LLC |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| JOHN H. ERNSTER, ESQ. (59338) MARILYN J. BACON, ESQ. (146839) RYAN K. MARDEN, ESQ. (217709) ERNSTER LAW OFFICES, P.C. 70 South Lake Avenue, Suite 750 Pasadena, California 91101 T. 626-844-8800 | DLA PIPER LLP (US) Jeffrey M. Shohet, Esq. (Bar No. 67529) Christopher Young, Esq. (Bar No. 163319) 401 B Street, Suite 1700 San Diego, California 92101 Telephone: (619) 699-2700 |

**II.   BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff     ☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant     ☐ 4 Diversity (Indicate Citizenship of Parties in Item III.)

**III.   CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV.   ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V.   REQUESTED IN COMPLAINT:   JURY DEMAND:** ☒ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☐ No          ☐ **MONEY DEMANDED IN COMPLAINT: $** _____

**VI.   CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

28 U.S.C § 1332. DECLARATORY RELIEF ACTION UNDER CONTRACT

**VII.   NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE/ PENALTY | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☒ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | | SOCIAL SECURITY |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | REAL PROPERTY | REAL PROPERTY | | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | IMMIGRATION | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety/Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | ☐ 462 Naturalization Application | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | ☐ 463 Habeas Corpus-Alien Detainee | | | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 240 Torts to Land | ☐ 465 Other Immigration Actions | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS - Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

FOR OFFICE USE ONLY:   Case Number: **CV08-06987**

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

CV-71 (05/08)                                      CIVIL COVER SHEET                                      Page 1 of 2

CCD-JS44

### UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
#### CIVIL COVER SHEET

**VIII(a).  IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? [X] No [ ] Yes
If yes, list case number(s):

**VIII(b).  RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? [X] No [ ] Yes
If yes, list case number(s):

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)   [ ]   A. Arise from the same or closely related transactions, happenings, or events; or
[ ]   B. Call for determination of the same or substantially related or similar questions of law and fact; or
[ ]   C. For other reasons would entail substantial duplication of labor if heard by different judges; or
[ ]   D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX.  VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
[ ]   Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| LOS ANGELES COUNTY | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
[ ]   Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | DELAWARE |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| LOS ANGELES COUNTY | |

* **Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

**X.  SIGNATURE OF ATTORNEY (OR PRO PER):**  _[signature]_                Date 10/22/08
JOHN H. ERNSTER, ESQ.

**Notice to Counsel/Parties:**  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |